UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

---

UNITED STATES OF AMERICA,

-against-

RICHARD LUTHMANN,

   Defendant.

2:22-cr-0021-SPC-NPM

---

**DECLARATION OF RICHARD LUTHMANN IN SUPPORT OF MOTION TO TERMINATE TERM OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 3583(e)(1), AND FOR ADDITIONAL AND ALTERNATIVE RELIEF**

RICHARD LUTHMANN, Defendant *Pro Se* herein, declares the truth of the following under the penalties of perjury contained in Title 18 of the United States Code:

1. I make this declaration in support of my application to end my supervised release pursuant to 18 U.S.C. § 3583(e)(1).

2. In September 2019, I pleaded guilty to conspiracy to commit fraud and extortionate collection of credit before the late U.S. District Court Judge Jack B. Weinstein. United States v. Luthmann, 17-CR-664, 2 (E.D.N.Y. Oct. 15, 2019) (see "Statement of Reasons" attached as **EXHIBIT "A."**).

3. Judge Weinstein recognized my mental and emotional limitations in his Statement of Reasons in United States v. Luthmann, 2019 U.S. Dist. LEXIS 184497; 2019 WL 5423570. A copy is enclosed herewith. Judge Weinstein found that I had long suffered from mental issues. My records and medications within the Federal Bureau of Prisons confirmed these mental and emotional problems and continue to the present day.

1

4. I have severe physical, mental, and emotional limitations. I have a pending application for permanent disability with the Fort Myers Disability Office. That determination is contingent upon the legal decisions made here by the Court.

5. I am actively treating my mental health issues at the David Lawrence Center in Naples, Florida. The current diagnosis has the indicia of Bipolar II Disorder, but my provider has recently changed, and they may reevaluate my diagnosis altogether. I am much improved today and have the proper medication, tools, and knowledge of my condition. I am at a stable point in my mental health and trying to take things slowly. I am concerned that overstimulation may set me back.

6. I have provided the same to the Social Security Disability Office regarding my pending disability claim under Federal law. 6. To the extent that the Court requires further personal medical information and/or confidential records, I would happily provide the same. See the enclosed.

7. In October 2019, I was sentenced to 48 months incarceration, followed by three years of supervised release." See the Judgment attached as **EXHIBIT "B."**

8. My incarceration was markedly much more difficult than normal. I was custodied at the Brooklyn Metropolitan Detention Center, in Brooklyn, New York, in January and February 2019. The Bureau of Prisons (BOP) facility had no heat, electricity, or hot water during an arctic freeze lasting several weeks, garnering international news coverage. See the attached **EXHIBIT "C."** I suffer from diabetes, obesity, hypolipidemia, obstructive sleep apnea, and severe orthopedic problems, and I went for weeks without using a C-PAP machine. To be clear, I am also physically disabled under Florida law with severe orthopedic problems. I have two replaced hips and the physical body of a 77-year-old man.

9. I was 260 pounds on the day of my arrest on December 15, 2017. After the stress of the indictment and three months of captivity, I ballooned up to 300 pounds. I was pre-diabetic with an A1C of 5.3. Within three months, I was a full-blown diabetic with an A1C of over 7.

10. The day I left prison, I was 340 pounds. My blood sugar was 386. My A1C was 7.5 with full-blown diabetes.

11. In January 2020, I was moved to Low-Security Correctional Institution – Allenwood, in White Deer, Pennsylvania. Almost the entire time I was housed there, the facility was under strict Covid-19 protocols. See the attached **EXHIBIT "D."** As noted by many courts, a day of incarceration under these circumstances is far more punishing than a day under normal circumstances, particularly given my underlying severe health conditions and the harsh prison conditions imposed to avoid contracting COVID-19. The pandemic rendered my sentence far more difficult and more punitive than the court had anticipated at sentencing.

12. I spent the better part of two months in the SHU at LSCI-Allenwood on unfounded charges, ultimately dismissed. SHU confinement violates international law norms and the Mandela Rules and causes irreparable and permanent harm after as few as fifteen (15) days. I wrote about my experiences for the Frank Report. See the attached **EXHIBIT "E."**

13. On March 4, 2022, this matter was opened in the Middle District of Florida under a Transfer of Jurisdiction. See **EXHIBIT "F."**

14. I have been looking for work, but there is not much I can do given my panoply of disabilities. My physical, mental, emotional, and legal disabilities are hamstringing my ability to get work.

15. I am on Obamacare, have an Obama phone, and collect food stamps. I live on the charity of my family. If I didn't have my family, I would be out on the street and homeless.

16. I have lost contact with much of my family and friends due to incarceration.

17. I was not allowed visits while incarcerated because of Covid-19 since 2020.

18. I have remained in the Middle District of Florida since my release from federal prison in 2021. I tried to get permission to go to the East Coast of Florida to see friends and family for Thanksgiving 2022, but that became too much of a hassle with US Probation. Now, I asked for permission to travel for six days to Chicago on March 17 – 23 to see friends and family there – at their expense – and US Probation denied this request. See **EXHIBIT "G."**.

19. I feel like I have lost contact with civil society. I think I am relegated to the sub-human class and still-existing American slavery by operation of the Thirteenth Amendment and the US Probation regulations. I cannot fully embrace my human dignity until my term of supervision ends.

20. I have become a bonafide journalist and have been accepted into the union as a member of the National Writers Union. See **EXHIBIT "H."**

21. I have published numerous articles in several forums, many as an intern for the Frank Report (www.frankreport.com) and my Substack (luthmann.substack.com). Hopefully, this will one day turn into paid work.

22. Since my release, I have been initiated as a member of the Knights of Columbus, a recognized religious order of the Catholic Church, and I have completed my Third Degree. See **EXHIBIT "I."**

23. I have also become an Altar Server at Saint Williams Church in Naples, Florida. See **EXHIBIT "J."**

24. I have been clean and sober since I went to prison, and I embrace a sober lifestyle.

25. I have severe physical, mental, and emotional limitations. I am disabled under Florida law. See **EXHIBIT "K."**

26. Luthmann has a federal disability application pending with the Fort Myers Social Security Disability Office. See **EXHIBIT "L."**

27. I have diabetes, obesity, hypolipidemia, sleep apnea, and severe orthopedic problems. I also have two replaced hips and the physical body of a 77-year-old man. See **EXHIBIT "M."**

28. I recently filed a <u>Notice and Declaration in Reservation of Rights of Richard Luthmann with Respect to Evidence of Unprecedented Governmental and Prosecutorial Misconduct</u> with the Clerk of Court in the Eastern District of New York. See **EXHIBIT "N."**

29. The filed document is based on several essential facts showing extraordinary and unprecedented misconduct, the destruction of evidence, and a cover-up by FBI Special Agent Paul Tambrino, Lead Prosecutrix Moira Kim Penza, and others working on behalf of the Government of the United States. I detail the irregularities and misconduct therein.

30. These facts include the litigation currently pending in the US District Court for the Eastern District of New York related to the matter of <u>United States v. Raniere</u>, 18-CR-204 (NGG) (VMS), (E.D.N.Y.), and in the US Court of Appeals for the Second Circuit in the matter of <u>United States v. Raniere</u>, No. 20-3520 (2d Cir. 2022). Moira Kim Penza was Lead Prosecutrix in both cases. The filed document declares my actual innocence.

31. I was convicted of the New York State "felony" of Free Speech. The prosecution violated the Interstate Agreement on Detainers Act. It was premised upon an indictment secured by multiple felonies by an incompetent Special Prosecutor and the perjury of a New York State Supreme Court Justice. I seek vindication in that case as well. See **EXHIBIT "O."** I may be

required to travel and remain in New York to defend/resolve this state case, which is pending in the New York State Supreme Court Appellate Division: Second Department.

32. I am indigent. I am unable to pay restitution. My expenses far outstrip my income, the only source of which is $250.00 monthly in EBT payments (food stamps). Without my parents and family's support, I would be homeless.

33. In the PSR and at sentencing, Judge Weinstein recognized that I did not have any ability to pay a fine.

34. My parents are now senior citizens living on a fixed income and cannot afford to support me and pay fines. The imposition of mandatory payments threatens to make me a ward of the state because I cannot pay and have no legitimate way to earn a living right now.

35. The travel-based restrictions incident to supervised release keep me from getting work and consequently paying restitution.

36. One of the reasons why investigative journalist and media publisher Frank Parlato cannot put me on payroll and why I remain an unpaid intern with the Frank Report is that I cannot travel outside the Middle District of Florida. See **EXHIBIT "P."**

37. The USPO has denied my travel requests. Mr. Paralto would need me to go to the Southern District of Florida to collaborate with him at his base of operations. Additionally, he has jobs in Los Angeles, California, Nashville, Tennessee, and South Carolina (among other places) that would be paid work for me if I could travel. But the USPO says no.

38. I can only pay restitution if I get work. And I can only get work if I can hit the pavement the way I know how.

39. I should be allowed to go to Chicago for six days in March. I intended to visit Chicago to see family and visit with friends, some of whom I planned to schmooze for potential work and work contacts.

40. I know no one in Southwest Florida to leverage for opportunities.

41. I lived and worked in Miami for five years and have a Rolodex full of contacts. But I am still waiting to take the hour-and-a-half ride to see if there are opportunities there.

42. I have zero ability to pay any restitution right now. I qualify for and collect government EBT benefits (food stamps).

43. I would like to embrace ableism and get my life on track. However, if the applicable rules state that I can do nothing other than apply for and then collect federal disability benefits until my term of supervision expires on August 5, 2024, I understand that is the Government's prerogative.

44. There was no real work in prison during COVID-19, and given my limitations, I haven't been able to work for the past five years.

45. Mr. Lawrence P. Almagno, Jr., an attorney with offices in Rhode Island, Massachusetts, and New York, wrote me a letter of support. See the attached **EXHIBIT "Q."**

46. I have offers to work as a legal researcher for lawyers if the travel and the supervised release issues relating to protecting the attorney-client privilege and the attorney work-product privilege are resolved. See **EXHIBIT "R."**

47. There are limits inherently imposed by supervised release terms to searches and confidentiality. I can only function as support staff in a law office like Judge Weinstein intended if the attorney-client privilege and attorney work product privilege effectively extend to protect my legitimate labor.

48. Similarly, I cannot effectively function as an investigative journalist if I cannot assert the reporter's privilege and assure would-be sources that their information given in confidence will not be divulged later by way of a Government search or seizure.

49. I believe that the assertion of the reporter's privilege by an individual on Supervised Release concerning the terms of supervision is also a novel issue of first impression in both the Second and Eleventh Circuits. I have not found any cases on this issue.

50. There are many jobs I cannot do because of the physical requirements.

51. I want to take appropriate productive part-time work given my needs and limitations and work past my disabilities - physical, mental, emotional, and legal. I want to contribute to society with fair labor, grow as an individual, and meet my obligations, including restitution.

52. Accordingly, I ask this Honorable Court for an Order:

A) Declaring the substantive law of the United States Court of Appeals for the Second Circuit applies to this matter; and

B) Terminating Defendant's term of supervised release under 18 U.S.C. § 3583(e)(1); or in the alternative

C) Reducing Defendant's term of supervised release; and

D) Modifying the terms of Defendant's supervised release to remove legal disabilities to employment Defendant is physically, mentally, and emotionally capable of; and

E) Modifying the terms of Defendant's supervised release to allow for unrestricted travel within the United States; and

F) Specifically allowing travel to Chicago, Illinois, from March 17 to 23, 2023, and travel to the Southern District of Florida as needed; and