UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

---

UNITED STATES OF AMERICA,   2:22-cr-0021-SPC-NPM

-against-

RICHARD LUTHMANN,

Defendant.

---

### DECLARATION OF RICHARD LUTHMANN IN SUPPORT OF EMERGENCY APPLICATION

RICHARD LUTHMANN, Defendant *Pro Se* herein, declares the truth of the following under the penalties of perjury contained in Title 18 of the United States Code:

1. I make this declaration in support of my instant emergency application to the Court.

2. I sent notice that I was presenting this application via email to the US Probation Office and to the US Attorney's Office for the Middle District of Florida. See the attached **EXHIBIT "A."**

3. The basis for this emergency application is to ask the Court for a hearing on the issue of my permission to travel to Chicago, Illinois, from March 17 – 23, 2023, for legitimate business, religious, and journalistic purposes based upon the arbitrary, capricious, pretextual, and unconstitutional denial by the US Probation Office. See the attached **EXHIBIT "B."**

4. I would like the Court to hear the travel issues on or before March 15, 2023, so that accommodations can be made either way, whether I can travel or not. If the Court does not hear my issues on an emergent basis, these issues I first raised a month ago will become moot and my ability to seek relief will be frustrated. This there is a real and compelling legal and factual basis to advance consideration on the travel issues.

1

5. I have attempted to exhaust all remedies with the US Probation Office. I asked for guidance on the additional information needed and reconsideration of their denial on numerous occasions. My dealings with them have been an exercise in futility. USPO Amadori has been openly hostile to my reasonable requests since I petitioned for Court intervention. In her email dated Thursday, March 2, 2023, at 10:04 am, she stated:

> [It] appears you are wishing for the Court to address the questions regarding travel and employment so if that is what you prefer and are reverting back to during our conversations, then I think it is best that you have this clarification from the Court.

6. I responded to USPO Amadori with a request to resolve the issues and pointed her to others that wished to help me help her:

> Does US Probation have the capacity to make a common sense ruling to help me make restitution to the victims in my case?
>
> Again, if we can resolve these issues and I can go work, I would not have to go to the Court with them. Can we resolve any issues short of Court intervention?
>
> Again, Mr. Parlato, Mr. Almagno, and Mr. Aidala are all copied hereto. They can provide and confirm additional facts, including their willingness to hire me so long as the traditional order of the practice of law and the practice of journalism are not upended by USPO "policy."

7. I fear retaliatory action by the US Probation Office because I am exercising my rights to petition the Court in good faith and for an opportunity to be heard.

8. I have asked the Court that pending the return date of this motion temporarily, and during the pendency of these proceedings preliminarily unless superseded by Order of the Court, the United States Probation Office shall not retaliate against Richard Luthmann in any way because he has petitioned the Court for declaration, determination, and relief pursuant to applicable law in good faith.

9. There is a question as to whether the Second or Eleventh Circuit law applies to my case, as addressed in the instant pending motion. No matter the Circuit, the rules for temporary and preliminary restraints are the same under Rule 65 of the Federal Rules of Civil Procedure.

10. First, the US Attorney and the USPO were given notice that I was filing for temporary and preliminary restraints as per **EXHIBIT "A."**

11. To obtain a preliminary injunction, the movant must sufficiently establish that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Forsyth Cnty. v. U.S. Army Corps of Eng'rs, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)); Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001).

12. For the second element, there is a substantial, irreparable injury to me if the USPO is allowed to remain hostile and retaliatory. As detailed already, the US Probation Office looks askance at my requests because I have elected to petition the Court, as is my right.

13. For the third element, there can be untold injury done to me by the USPO and the DOJ if they choose to remain in a retaliatory posture. I could be scooped up off the street pretextually and what liberty I have taken away unconstitutionally. The proposed injunction is important but is a small imposition on the USPO and the DOJ.

14. For the fourth element, it is in the public interest that they can trust their government and its officials will not act in a retaliatory manner and /or an arbitrary, capricious, and pretextual way.

15. With respect to the merits of the underlying motion the first element, the United States Probation Office has pretextually denied my request based on my present indigence and apparently has an official "position" that I cannot travel for any purpose. Their determination is dead wrong, and I will devote the remainder of the submission detailing why.

16. The reason why I have requested to travel is so that I can get on the payroll with Mr. Frank Parlato, a journalist with 40+ years' of experience, with whom I have been an unpaid intern since October 2022.[1] Mr. Parlato has arranged with me to have meetings that will further business, religious, and journalistic purposes. If the Court permits this travel to Chicago and to collaborate with Mr. Parlato by traveling to his headquarters in the Southern District of Florida, Mr. Parlato has offered to put me on the payroll. This means I will finally be able to make restitution payments in furtherance of repaying my victims pursuant to 18 USC § 3553(a)(7).

17. The proposed travel to Chicago, Illinois, furthers my work with Mr. Parlato, my burgeoning career in journalism, and my faith in the Catholic religion. Since my release, I have become an altar server at Saint William's Catholic Church in Naples, Florida. I have also joined and become a third-degree member of the Knights of Columbus, a recognized lay order of the Catholic Church answerable to the Archbishop and the Pope.

18. Because of my altar service and membership in the Knights of Columbus, I have an interest in comparative religion. Mr. Parlato likes the idea of me writing a series about comparative religion for his publications. I have a tentative interview, secured by Mr. Parlato's contact network, scheduled with Swami Ishatmananda at the Vivekananda Vedanta Society of Chicago, 3801 N Keeler Ave, Chicago, IL, on March 20, 2023, at 12:30 pm. Historically, Chicago

---

[1] I alerted US Magistrate Judge Nicholas P. Mizell to my employment with Mr. Parlato on the record on November 8, 2022, in connection with the pending Freedom of Information matter, Luthmann v. FBI et al., 2:21-cv-00716-JES-NPM

has been a center of Indian-American life and particularly monasticism. The Vivekananda Vedanta Society is one of the oldest and longest-established Hindu monastic orders in this country. My interview and tour will further my newsgathering for a series on comparative monasticism in the U.S., and particularly a comparison between Hindu monasticism and monasticism in the Roman Catholic Church.

19. I previously raised concerns that the Department of Justice is Anti-Catholic, and I rest upon those previous submissions.

20. Additionally, Mr. Parlato also has arranged for me to meet with the Indian Tribune of Chicago, 3302 West Peterson Avenue, Chicago, IL 60659. The Indian Tribune of Chicago is the chief U.S. outlet for the Indian Tribune. This will further my and his relationship with the Indian journalists there and allow for collaboration in furtherance of journalistic purposes.

21. I am a bonafide journalist. I have a union card with the National Writers Union, which I was able to gain because of published work that I have done while an intern and credited writer for Mr. Parlato. However, I am not valuable as an investigative journalist unless and until I can travel to and work with Mr. Parlato, and I can be assured I can offer sources the journalist's privilege. The pending motion with the Court addresses these issues.

22. The travel to Chicago also serves an important social purpose. It will allow me to reconnect with society and individuals in a way I have not been able to do in many years. While I was incarcerated, Covid-19 caused all visits to be canceled. I lost contact with many people. I also lost contact with the arts and culture. I am trying to reconnect, and Chicago is a great American city for arts and culture.

23. It would only be polite if I am taking time from Swami Ishatmananda's busy schedule for an interview, that if I am not able to go, I should be able to tell him in advance.

24. The Chicago trip is already paid for by others. The tickets have already been purchased by others for the plane flight and for shows. I would ask the Court to make a determination on this one way or another so that the people who laid out the money can try to make other plans if I am not allowed to go. The monies expended by others are helping me get back on my feet so that I can get this job and start to make restitution.

25. I had papers previously "bounced" from the Clerk of the Court because they did not comply with the Local Rules, even though I personally served all parties with the documents and they were uploaded to the CM/ECF. I provided a detailed itinerary with the papers that were bounced and are resubmitted here as **EXHIBIT "C"** to be deemed as properly filed *nunc pro tunc*.

26. I told USPO Amadori all of the facts and reasons stated above. On March 8, 2023, She responded as follows:

> As previously told to you by probation regarding your request to travel to Chicago, leisure trips will not be permitted if restitution is owed and no payments have been made. In addition to this, you have not provided me with a detailed itinerary of where and who you will be visiting during your trip. In your letter to the court you do not disclose this either.
>
> Due to this, your request will not be approved.

27. USPO's decision is arbitrary, capricious, pretextual, and is premised upon invidious discrimination.

28. USPO views my proposed trip as a "leisure trip" and does not take into account the substantial business, religious, and journalistic purposes of the trip. Even when these facts were re-presented upon reconsideration, these facts were not considered at all. USPO's determination is arbitrary and capricious. There are no facts I can offer to change USPO's mind.

6

29. USPO says that because I am indigent, I have no religious rights, no rights to engage in journalism, and no rights to try to work. USPO even has an official position on this, as stated by USPO Amadori in her email dated Thursday, March 2, 2023 at 10:04 AM:

> [P]robation's position is leisure travel cannot be granted if restitution payments have not been made.

USPO Amadori further says:

> Blanket permission will not be provided for travel by probation due to the fact that no restitution has been paid

30. USPO Amadori confirms: that there is an official US Probation position that the indigent cannot engage in travel. I ask the Court to compel the US Probation Office to produce, prior to the return date hereof, a written copy of the USPO's "position," and all documents, laws, rules, regulations, policy statements, and/or other things relied upon by the USPO, that reasonable business, religious, and/or journalistic travel is not permitted for indigent supervisees and/or those seeking to travel to try to earn a living and pay back restitution, as referenced by USPO Megan Amadori's email dated Thursday, March 2, 2023 at 10:04 AM. I previously asked USPO Amadori for a written copy of this US Probation "policy" in an email on Thursday, March 2, 2023, at 5:55 pm. Nothing has been produced to date.

31. Additionally, it appears the USPO's position that any travel is considered leisure travel until restitution payments are made. In my case, I need to be able to travel - to be hired – to no longer be indigent – to be able to make restitution payments. I raised this "chicken and egg problem" with the USPO:

> To clarify, the travel to Mr. Parlato is WORK TRAVEL. I am his unpaid intern right now.
>
> Mr. Parlato wants to HIRE me. If he hires me I can begin to pay restitution immediately. I need to be able to travel to be hired. US Probation states that I cannot travel because I can't pay.

> Do you understand my perception of the circular nature of the argument? If I have a job offer where I need to be able to travel to make money, and I am not allowed to travel because I can't make money to pay restitution, what do I do?
>
> US Probation does not have an answer. US Probation has policy, but I do not believe the policy is applicable. That is why I am going to the Court.
>
> I am formally asking US Probation to reconsider the decision. You stated in your previous email that you view travel to Mr. Parlato as "leisure travel." His intention is to put me on payroll. I would not make the trips otherwise. This is work travel.

32. The USPO policy does not give me credit for the fact that I am Mr. Parlato's unpaid intern for almost six (6) months. The Court and every attorney knows they have to pay to go to law school. Then, once they start working as a lawyer, they don't get paid much the first few years because they are learning the ropes. Journalism is a craft just like the law. I want to get paid. I can only get paid once I am valuable. Allowing me to travel to Chicago for these purposes, allows me to demonstrate value and get paid, so I can make money and pay back my victims consonant with 18 U.S.C. § 3553(a)(7).

33. I tried very hard to explain this to US Probation, but they will not change their "policy" – one that they have not produced to date.

34. The travel-based restrictions incident to supervised release keep me from getting work and consequently paying restitution.

35. One of the reasons why investigative journalist and media publisher Frank Parlato cannot put me on payroll and why I remain an unpaid intern with the Frank Report is that I cannot travel outside the Middle District of Florida.

36. The USPO has denied my travel requests. Mr. Paralto would need me to go to the Southern District of Florida to collaborate with him at his base of operations. Additionally, he has

jobs in Los Angeles, California, Nashville, Tennessee, and South Carolina (among other places) that would be paid work for me if I could travel. But the USPO says no.

37. I can only pay restitution if I get work. And I can only get work if I can hit the pavement the way I know how.

38. I should be allowed to go to Chicago for six days in March for business, religious, and journalistic purposes.

39. I have zero ability to pay any restitution right now. I qualify for and collect government EBT benefits (food stamps).

40. I would like to embrace ableism and get my life on track. However, if the applicable rules state that I can do nothing other than apply for and then collect federal disability benefits until my term of supervision expires on August 5, 2024, I understand that is the Government's prerogative.

41. This case is against a backdrop of disability. I am applying for federal disability. If I can get work, the application becomes moot. I have work that I am physically, mentally, and emotionally capable of doing. The impediment in the USPO's interpretation creates a legal disability. My case would truly be a watershed case because, to my knowledge, no one has demonstrated entitlement to federal disability based totally upon a legal disability, and I believe that the USPO's activities have made my case for me. No only will I lose the paying position with Mr. Parlato, but I have attorneys Lawrence Almagno and Arthur Aidala that want to give me writing work to do. They are waiting for the Court's determination on the issue because they are uncomfortable with hiring me given US Probation's "policies." Again – a legal disability to employment.

42. There are many jobs I cannot do because of the physical requirements.

43. I want to take appropriate productive part-time work given my needs and limitations and work past my disabilities - physical, mental, emotional, and legal. I want to contribute to society with fair labor, grow as an individual, and meet my obligations, including restitution.

44. Accordingly, I ask this Honorable Court for an Order:

   A. Declaring the papers filed with the Court on March 2, 2023, labeled as ECF Document 10, returned pursuant to Local Rule 3.01(j), and which are attached as an exhibit to the Declaration of Richard Luthmann shall be deemed cured and properly filed, *nunc pro tunc*, pursuant to the Federal Rules of Civil Procedure and the Local Rules; and

   B. Advancing the issue of Richard Luthmann's request to travel to Chicago, Illinois, for business, religious, and journalistic purposes from March 17 – 23, 2023, to be heard by the Court on or before March 15, 2023, so as to afford Mr. Luthmann an opportunity to be heard and not render the request for relief moot and/or frustrated in purpose; and

   C. Permitting Richard Luthmann to travel to Chicago, Illinois for business, religious, and journalistic purposes from March 17 – 23, 2023; and

   D. Such other and further relief as the Court shall deem just and proper.

Dated: Naples, Florida
       February 9, 2023,

Respectfully submitted,

*[signature]*

Richard Luthmann*
Defendant *Pro Se*
338 Sugar Pine Lane
Naples, FL 34108
(239) 631-5957

*Signed under penalties of perjury contained in Title 18 of the United States Code.