**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

--------------------------------------------------------

UNITED STATES OF AMERICA,                                       2:22-cr-0021-SPC-NPM

       -against-

RICHARD LUTHMANN,

          Defendant.

--------------------------------------------------------

## MOTION FOR A HEARING AND DECLARATORY JUDGMENT ON THE IMPROPER, ILLEGAL, AND UNCONSTITUTIONAL ACTIONS OF THE UNITED STATES PROBATION OFFICE FOR THE MIDDLE DISTRICT OF FLORIDA; TEMPORARY AND PRELIMINARY RESTRAINTS REQUESTED

**PLEASE TAKE NOTICE** that RICHARD LUTHMANN, Defendant *Pro Se* herein, moves this Honorable Court at 2110 First Street, Fort Myers, Florida 33901, in the above-captioned matter as follows:

A)  For a Preliminary Conference;

    a.  To address whether the Law of the Judgment – the substantive law of the United States Court of Appeals for the Second Circuit - applies to this matter; and

    b.  To address whether the U.S. District Court for the Middle District of Florida should be recused from the case and this matter should be transferred to the adjoining Southern District of Florida; and

    c.  To issue temporary and preliminary restraints on the United States Probation Office for the Middle District of Florida; and

1

d. To obtain Court-ordered subpoenas and discovery related to the U.S. Probation Office, the Federal Bureau of Investigation, and the Government's interaction related to these persons, including but not limited to:

    i. CHRISTOPHER AMBROSE, of Madison, Connecticut;

    ii. KEVIN BARRY LOVE, of Staten Island, New York;

    iii. KAMILLAH HANKS, of Staten Island, New York;

    iv. RONALD CASTORINA, of Staten Island, New York;

    v. ERIC NELSON, of Staten Island, New York;

    vi. JOHN TOBACCO, of Staten Island, New York;

    vii. MDFL USPO OFFICER HARMATY

    viii. MDFL USPO OFFICER AMADORI

B) For a hearing on and issuance by the Court of a declaratory judgment whether and to what extent the U.S. Probation Office for the Middle District of Florida has violated Richard Luthmann's rights; or, in the alternative

C) For an Order Terminating Richard Luthmann's term of supervised release pursuant to 18 U.S.C. § 3583(e)(1);

D) For such other and further relief as this Honorable Court may deem just or equitable.

## BASIS OF MOTION

Please see the attached letter to the Administrative Office of the United States Courts dated July 28, 2023, the attached exhibits, and all the additional enclosed materials. They detail the factual basis for this application. Additionally, I include other relevant items, and I reserve the right to supplement my application with additional evidence, including notes and records I have made.

2

I request a Preliminary Conference. Critical legal issues must be decided before the hearing, temporary and preliminary restraints requested, subpoenas, and other discovery necessary for fundamental fairness.

After that, I would like a hearing and explicit permission from the Court to engage in activity protected by the Bill of Rights of our Constitutional Republic.

Correlatively, I would like a declaration that my rights have been violated.

At the outset, I do not want to sue the USPO or any individual officers or Government officials. I just want to be able to enjoy my constitutional rights.

I believe the USPO and others in the Government were called by "connected" individuals and lied to in violation of 18 U.S.C. § 1001. Kevin Barry Love admitted he called the FBI and US Probation, and I have it all on tape. See the attached article, and the audio is available here:

https://luthmann.substack.com/p/nyc-councilwomans-association-with

I believe these lies and the peddled misinformation caused the USPO to improperly react because they thought the misinformation peddled was genuine. Officer Harmaty told me I was "under investigation" because I was "harassing witnesses."

Christopher Ambrose is a "psychopath" and "pedophile," that I have learned through my work as an investigative journalist. See the attached article as an example. It is available at:

https://luthmann.substack.com/p/child-molester-and-psychopath

I have strong feelings about pedophiles and child predators. But I believe in the rule of law and have previously stated: "I want to see justice run its course. Child predators sicken me, and my opinion is that if it is proved that Christopher Ambrose is a pedophile after a speedy and fair trial, the justice system should put him down, hopefully permanently."

Neither Kevin Barry Love nor Kamillah Hanks were ever witnesses against me. In fact, they avoided subpoenas and complained about having to have paid a small fortune to do so. They are also deadbeats. They will do anything and say anything not to put their hands in their pockets, including lying to a federal officer and engaging in interstate menacing against attorneys, as reported to the FBI in New York and Providence Offices and noted in the letter to the Administrative Office of the US Courts. Kevin Barry Love's thug-like tactics caused collections lawyers who legally opined that I had a valid claim to drop me as a client and withdraw pending and filed lawsuits without notice to me, based on Officer Harmaty's (misinformed) directive. See the attached Almagno Law opinion letters from October 2022 concerning Kamillah Hanks, Kevin Barry Love, John Tobacco, and Ronald Castorina.

Officer Harmaty told Almagno Law to stop collecting, even though a deal in principle with John Tobacco was being negotiated without litigation. NEWSMAX personality John Tobacco stood ready, willing, and able to resolve the legal claims. Because of the "stop collections" order, nothing was collected. This money was being collected to benefit the United States and its taxpayers. Why was I told not to obtain cash for Mr. Tobacco's matters? Was my debt obligation waived? Why should I and the US Taxpayers have to suffer?

Ronald Castorina is now a New York State trial court judge. He perjured himself before a grand jury in a state case. See the attached from a national news outlet, available at:

https://frankreport.com/?s=castorina

He owes me money. I rendered services. He even said, "I need your expertise." Now, he can pull strings? I know they say: "There are two things that don't pay, crime and judges." But this is beyond the pale.

Eric Nelson was the crooked prosecutor who suborned his perjury. I want him as a fact witness to confirm Ronald Castorina's relationship with me and to discuss his communications with federal law enforcement. I also want to ask him about his trustworthiness and recent dishonest activity.

I wouldn't blame anyone in the MDFL USPO if they relied in good faith on the criminal conveyance of misinformation violating 18 U.S.C. § 1001. I respect the hard work and day-in-and-day-out risks faced by professional law enforcement.

Nonetheless, I have a right to a hearing, and the U.S. Courts are compelled to get to the bottom of the problematic institutional issues this case presents. I want to enjoy the full panoply of my available constitutional rights. Given my restitution, I also want to make the Government whole and engage in journalism to become a productive member of society.

The last thing I want to do is have my lawyers file an unnecessary § 1983 action and needlessly burden good cops and probation officers if there are clearly other intervening superseding tortfeasors. I hope Your Honor will obviate that need by issuing a declaration that if my constitutional rights were violated, they were broken by professional law enforcement relying in good faith on misinformation improperly or criminally conveyed. That would open the door for me to pursue my collections claims and any additional torts in the appropriate forums, unburdening this Court, the USPO, and the Government. It would also help me to make the Government whole.

## THE LAW OF THE JUDGMENT APPLIES

The jurisdiction of my federal case was transferred to the Middle District of Florida, where I now reside. See _U.S. v. Luthmann_, 2:22-CF-00021-SPC-NPM, Dkt. 1.

Once I started going to the courthouse, filing motions, and investigating, US Probation tried returning the case to the EDNY. I believe the EDNY still retains jurisdiction in this case. I

am a published journalist and a member of the National Writers Union. The US Courts Security Service sticks a body on me if I walk into the Fort Myers Courthouse and Federal Building. If I decided I wanted to spend my time reporting on the happenings in that courthouse, I would not be permitted.

I have a right to have the law of the Judgment in my case applied to my case, here, Second Circuit law. Just because my *supervision* was transferred under 18 U.S.C. § 3605, that does not mean that the legal jurisdiction of the underlying case was moved as well. I have told this to the USPO since last December. See the attached email dated 12-14-2022. I raised this issue in an earlier motion to Judge Polster Chappell, but the problem was never addressed.[1]

If this matter were a civil matter, when a case is transferred under 28 U.S.C. § 1404(a), it is well settled that courts routinely apply the choice of law rules of the jurisdiction from which the case was transferred. See, e.g., *Ferens v. John Deere Co.,* 494 U.S. 516, 523, 110 S. Ct. 1274, 1279, 108 L. Ed. 2d 443 [1990]; *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 243 n. 8, 102 S. Ct. 252, 259 n. 8, 70 L. Ed. 2d 419 [1981]; *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S. Ct. 805, 821, 11 L. Ed. 2d 945 [1964]; *James Ventures, L.P. ex rel. Alpert v. Timco Aviation Servs, Inc.,* 315 F. App'x 885, 888 [11th Cir. Feb. 27, 2009]; *Roofing & Sheet Metal Serv., Inc. v. La Quinta Motor Inc.,* 689 F.2d 982, 991 [11th Cir. 1982].

Here, the Eastern District of New York Court is the transferer court, and the Middle District of Florida Court is the transferee court. Accordingly, the Middle District of Florida Court should apply the Eastern District of New York's substantive law, the law of the Second Circuit Court of Appeals, because it is the law that would have been applied if there had been no transfer of venue for supervision. See *Van Dusen,* 376 U.S. at 641, 84 S. Ct. at 821.

---

[1] Nor was any consideration given to the Law of the Case Doctrine.  See Dkt. # 18 and attachments.

6

The issue is essential factually as well. Concerning my changed circumstances, I have been trying to become an investigative journalist. I was recently admitted into the National Writers Union. While this is a matter of some significance, it would have great importance in the middle-class neighborhood where I grew up in the EDNY, Florida is a "right to work" state.

I would be prejudiced if the Court did not apply a body of law that took into account all of the facts and circumstances of my conditions and gave me the benefits that I would otherwise receive under the jurisdiction where the judgment was rendered.

**THE MDFL COURT SHOULD RECUSE AND TRANSFER THIS CASE TO AN ADJOINING FEDERAL DISTRICT, THE SDFL COURT, TO AVOID THE APPEARANCE OF IMPROPRIETY**

My argument is that since the MDFL U.S. Probation Department is a legally constituted arm of and has a confidential relationship with the MDFL U.S. District Court, the Court should recuse itself from this case and send it to an adjoining district. The appropriate transferee venue is the SDFL because it does not oversee the MDFL U.S. Probation Department, and the several divisions are within 2 hours of the Naples/Fort Myers area, to where the Defendant and any U.S Probation Officers/witnesses may have to travel for a hearing. The NDFL or another district is exceptionally far and onerous, except for the EDNY, the originator district where the judgment was promulgated and always retains concurrent jurisdiction.

The MDFL U.S. Courts are heavily deferential to the U.S. Probation Office. In the instant case, an earlier motion to terminate supervised release went unopposed by the Government. See Dkt. #13. The District Court relied almost exclusively on the U.S. Probation Department's recommendation to continue probation and deny travel. The Court's reasoning excluded consideration of specific glaring legal issues, inter alia, the law of the judgment, the law of the case, and an evident and apparent sentencing disparity under 18 U.S.C. § 3553(a)(6).

Under federal law, judges may be disqualified where their "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) "sets out an objective standard for recusal, creating the so-called 'appearance of justice' rule. DeLuca v. Long Island Lighting Co., 862 F.2d 427, 428 (2d Cir. 1988). The federal test of impartiality "is what a reasonable person, knowing and understanding all the facts and circumstances, would believe." In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1309 (2d Cir. 1988).

Recusal is required if "an objective, disinterested observer fully informed of the underlying facts would entertain significant doubt that justice would be done absent recusal. The pertinent trigger for recusal is the 'appearance of partiality." Cox v. Onondaga County Sheriff's Dep't, 760 F.3d 139, 150 (2d Cir. 2014). The ultimate inquiry is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality." United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003). Recusal is appropriate even though a judge's impartiality might not be reasonably questioned. Potashnick v. Port City Const. Co., 609 F.2d 1101 (5th Cir. 1980).

I do not believe the Court's integrity and impartiality are at issue. I personally think Your Honor is an outstanding judge and person. And, I don't believe the MDFL District Court's part in this "concert" is knowing, intentional, or willful.

However, the appearance of impropriety and partiality is the problem. The confidential relationship between the District Court and the USPO creates a *per se* presumption and a basis for disqualification. The public perception is that the MDFL District Court cannot be impartial when passing judgment on its own personnel. The United States Probation Office functions as a legally constituted arm of the judicial branch, with federal probation officers serving both as confidential advisors to and officers of the United States District Court. United States v. Reyes, 283 F.3d 446,

8

450 (2d Cir. 2002). The USPO is an independent professional organization, and the U.S. Probation

Officer works "under the direction" of the District Court. 18 U.S.C. § 3602; United States v.

Berzon, 16 Fla. L. Weekly Fed. D 605 (U.S. S.D. Fla. 2003).

There is also a factual question about the "Rules" of the MDFL USPO. These "Rules" have

been cited by MDFL USPO Officers and are evidently known to the District Court. However, these

"Rules" keep on changing. The USPO never provides a written copy of these "Rules." And any

time there is a question about these "Rules," the USPO Officer tells me to "come in" to the Federal

Building, where there are no recording devices, nothing is explained, and nothing is delivered in

writing.

I request that the Court tell the MDFL USPO to produce a copy of these "Rules." I want to

know who wrote them, who approved them, how long they had existed, when they were last

reviewed or amended, etc. The more I ask about the "Rules," the more I feel Franz Kafka wrote

them.

Congress has created within the judicial branch entities to assist the courts'

administration. The Administrative Office of the United States Court, the Federal Judicial Center,

the United States Probation Department, and the Judicial Conference of the United States are

vested with administrative powers, including, in some instances, the ability to promulgate rules to

further efficient administration. Such rulemaking delegations have been upheld as necessary "for

the effective and expeditious administration of the business of the courts…" Chandler v. Judicial

Council of Tenth Circuit of United States, 398 U.S. 74, 86 n.7, 26 L. Ed. 2d 100, 90 S. Ct. 1648

(1970).

However, the Florida Federal Courts have yet to recognize material examples of

substantive rulemaking by these entities, including the USPO. United States v. Bogle, 689 F. Supp.

1121, 1145 (S.D. Fla. 1988). We have one of two situations: there are Rules, but they are not made available for some reason. Or there are no Rules, and the USPO and the District Court are making it up as they go along. The second option is the most alarming because the USPO has repeatedly claimed there are Rules.

I asked about the Rules concerning travel. I had travel possibilities where there were work opportunities. The USPO characterized it as leisure travel. I wanted to know what the rules were so I could qualify for work travel. On March 2, 2023, MDFL USPO Officer Amadori said:

> As far as granting you permission to travel to Big Pine Key and elsewhere, you have not made any payment to the restitution payment, and probation's position is leisure travel cannot be granted if restitution payments have not been made. This was the reasoning as to why probation did not approve the request to travel to Chicago the first time you requested it.

Chicago and Big Pine Key were potential work travel. I had opportunities to make connections and work for others. I wanted to know the Rules, so I could properly qualify.[2] On March 2, 2023, I responded to MDFL USPO Officer Amadori:

> To clarify, the travel to Mr. Parlato is WORK TRAVEL. I am his unpaid intern right now.
>
> Mr. Parlato wants to HIRE me. If he hires me, I can begin to pay restitution immediately. I need to be able to travel to be hired. US Probation states that I cannot travel because I can't pay.
>
> Do you understand my perception of the circular nature of the argument? If I have a job offer where I need to be able to travel to make money, and I am not allowed to travel because I can't make money to pay restitution, what do I do?
>
> US Probation does not have an answer. US Probation has a policy, but I do not believe the policy is applicable. That is why I am going to the Court.

---

[2] I am now paying $25 per month towards restitution.

I am formally asking US Probation to reconsider the decision. You stated in your previous email that you view travel to Mr. Parlato as "leisure travel." His intention is to put me on the payroll. I would not make the trips otherwise. This is work travel.

Also, do you have a written copy of the US Probation policy so I can submit it to the Court to help in its determination?

Again, on March 7, 2023, I communicated with MDFL USPO Officer Amadori:

I renew my request to travel to Chicago, IL March 17 to 23. Today is ten days out.

My business itinerary and schedule are attached.

I have my interview with Swami Ishatmananda tentatively scheduled for 12:30 pm on Monday, March 20, pending approval.

Many people have spent money for tickets and other incidentals in the hope I will be permitted to travel.

Please let me know if I can receive approval, and either way, please send me a written copy of the MDFL Probation Office's Official Rules and Policy regarding travel for my reference.

Thank you in advance for your time.

And again on March 8, 2023, MDFL USPO Officer Amadori responded:

As previously told to you by probation regarding your request to travel to Chicago, leisure trips will not be permitted if restitution is owed and no payments have been made.

I swiftly replied:

I provided details to the Court. What additional details do you need so US Probation's decision can be reviewed by the Court, and a pretextual denial can be overruled if there is adequacy?

I am having business meetings with Indian journalists, and I am meeting with a well-respected Swami on an article about comparative monasticism, as stated below.

11

This trip has a business purpose. It is not a leisure trip. This trip would be deductible under the US tax code. And this trip passes business muster under US Probation rules.

Is the problem that I want to see shows or museums while in Chicago? Museums don't charge the indigent, and the show tickets are paid for. There are plenty of not-for-profits that also provide theater tickets for indigent people to see theater. Exposure to culture is a valid penological pursuit.[3]

The instant you can approve my travel to Chicago and the SDFL, I can get on the payroll and sign a payment agreement. I can't do that unless I know I can get on payroll and what I will get paid.
Is the US Probation Office's position that I cannot travel for business?

Can I get a copy of the US Probation Office's written policy?

Is the US Probation Office's position contrary to 18 USC sec. 3553(a)(7)? If I can travel, I have work, and I will get paid from the travel; what is the US Probation Office's problem with me earning money to make restitution payments?

Is the US Probation Office's position that I can only sit around, apply for, and collect federal disability where I have potential work that I am physically, mentally, and emotionally capable of doing, but US Probation says I am not legally able?

Will I have to be a legally disabled lie-about until August 4, 2024?

Am I being retaliated against because I filed for clarification with the Court and petitioned for relief within my rights?

I need to know all these things so I have the story straight for the press (copied), of which I am a member of the National Writers Union, unallowed to practice journalism.

To date, I have no written copy of the MDFL USPO Rules for leisure travel, business travel, or anything else. The objective, disinterested, lay observer fully informed of the facts would believe that no rules actually exist. The MDFL USPO is a legally constituted arm of the MDFL

_____

[3] And is also the LAW OF THE CASE, according to prior Order of the late Jack B. Weinstein, U.S.D.J.

District Court, with MDFL USPO federal probation officers serving both as confidential advisors to and officers of the District Court. Who could not conclude that the actions of the USPO and the existence and non-existence of specific "Rules" is not a glaring reflection of the laxity of the MDFL District Court and its oversight function? What is a Court if not an enforcer of the Rules? It is the most fundamental violation of procedural due process when the Rules are "we make it up as we go along." And sorry to say, that's what it looks like here.

There is an argument that the MDFL District Court should have a chance to "clean up its own mess." The problem is that Judge Polster Chappell already had an opportunity to do this. All these issues about the MDFL USPO's "unwritten Rules" and other serious concerns occurred before the Court made its March 15, 2023 Order. The problems having mushroomed since then, the Court had a chance to "nip it in the bud" five months ago. Instead, the MDFL Court "whistled past the graveyard" on these issues. And now, the appearance of impropriety and partiality is far too great for this matter not to be heard outside the MDFL district. It appears that laxity is not a mere mistake. Laxity may well be an institutional issue in the MDFL Courts. Akin to institutional racism or injustice, though not conscious, the laxity is exceedingly problematic.

I want a hearing to show that the MDFL USPO, an arm of the MDFL U.S. District Court, is continually moving the goalposts without any firm set of rules. What are the chances the MDFL U.S. District Court says it was wrong and punishes its own people?

Accordingly, the Court should recuse and refer this case to the SDFL or EDNY U.S. District Court.

## THE COURT SHOULD ISSUE TEMPORARY AND PRELIMINARY RESTRAINTS

As laid out below, temporary and preliminary restraints are necessary to protect my constitutional rights, which are ongoingly violated daily, and also ensure the MDFL USPO does

not retaliate. It's crass to think that anyone except mobsters would kill someone just so their claims don't make it to Court. Unless temporary and preliminary restraints issue, the MDFL USPO may effectively do just that. So long as I am under supervision, the MDFL USPO (an arm of the U.S. Courts) can take the position that the 13th Amendment allows me to be treated like a black slave before the Civil War. Preliminary and Temporary restraints must issue to protect my rights, personhood, and safety. Slaves are property and can be tortured and even killed with impunity.

For a preliminary injunction to issue, the movant must establish (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." Kelly v. Honeywell Int'l, Inc., 933 F.3d 173, 183-84 (2d Cir. 2019).

Alternatively, a party seeking a preliminary injunction must establish the following four factors: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury, (3) that its own injury would outweigh the injury to the nonmovant, and (4) that the injunction would not disserve the public interest. Tefel v. Reno, 180 F.3d 1286, 1295 (11th Cir. 1999); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).

"[T]he alleged violation of a constitutional right" generally results in a presumption of irreparable harm, Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996). Additionally, a prophylactic injunction to protect a violation of constitutional rights outweighs any injury to the Government perpetrating it and cannot disserve the public interest.

Under both standards and based on the factual record, the Court should grant the following restraints or explain why they are inappropriate.

**Violation of Fifth and Fourteenth Amendment Procedural Due Process Rights**

As discussed extensively above, SCOTUS says the MDFL USPO has the power to make rules. Florida federal courts have recognized that the USPO has yet to engage in rulemaking. And yet, it has been represented in emails and verbally that there are "Rules" and official MDFL USPO policies that I do not comply with. These "Rules" and policies are the basis for decisions that limit my fundamental liberties and ability to engage in civil society.

As I understand it, the only applicable " Rules " are the Standard, Mandatory, and Additional Conditions of Supervised Release contained in the EDNY U.S. District Court's October 23, 2023, Judgment. See Dkt. #1. And it appears these provisions are ignorable from the Court's record. The EDNY U.S. Court's Judgment and Transfer of Jurisdiction documents did not appear on the docket until March 4, 2022. I have been under the Supervision of the MDFL USPO since August 5, 2021. For seven months, the USPO was "winging it" and not considering the applicable law of the Judgment or the case. Even after the Judgment was on the docket, I had to present the applicable Rules contained in the Judgment to the MDFL USPO for "consideration." See the attached 4-3-2023 Memorandum.

The Court should understand how dangerous it is to the Rule of Law and the appearance of justice when the goalposts can be moved on a whim.

Accordingly, I ask the Court to temporarily and preliminarily restrain the USPO from applying unwritten and non-existent "Rules" other than those contained in the October 23, 2023, Judgment and Orders of the Court.

**Violation of the First Amendment Right to Engage in Free Expression, Practice Journalism, and Associate with Journalists**

I have the First Amendment right to free expression, the practice of journalism, and association with journalists. It is a fundamental right. I am a journalist. I am extensively published

and a member of the National Writers Union. The Government cannot use "appropriateness" of opinion or "third-party risk" to restrain my words, speech, and expression. And yet that is what they have done.

In <u>Procunier v. Martinez</u>, 416 U.S. 396, 408-09 (1974), the Supreme Court recognized that both prisoners and those with whom they correspond enjoy First Amendment rights. In certain circumstances, however, the right to free expression may be limited for reasons of prison security by activities such as opening prison mail and monitoring phone conversations. *See id.* at 413. But even in these cases, prison officials are constitutionally precluded from thwarting speech and retaliating against prisoners. And to my knowledge, the USPO does not open the mail or tap the phones of the individuals they supervise.

It is indisputable that prisoners (and therefore persons under supervision) are not completely outside the embrace of the Constitution. In particular, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495 (1974). Among those First Amendment rights are the right to receive political publications, <u>Walker v. Blackwell</u>, 411 F.2d 23 (5th Cir. 1969); the right to engage in political writing without punishment, <u>Sostre v. McGinnis</u>, 442 F.2d 178 (2d Cir. 1971); the right to correspond with legitimate representatives of the press, <u>Guajardo v. Estelle</u>, 580 F.2d 748 (5th Cir. 1978); the right to correspond with attorneys and officers of the court, <u>Taylor v. Sterrett</u>, 532 F.2d 462 (5th Cir. 1976); the right to furnish legal assistance to other inmates where the state fails to provide an alternative source of assistance, <u>Johnson v. Avery</u>, 393 U.S. 483, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969); and the right to engage in political discussions with other inmates, <u>Diamond v. Thompson</u>, 364 F. Supp. 659 (M.D.Ala.1973).

Each of these facets of the First Amendment reflects a consistent principle: that Government authorities (including the U.S. Courts and their "legal arms") may not censor speech "simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." Procunier v. Martinez, 416 U.S. 396, 413, 94 S. Ct. 1800, 1811, 40 L. Ed. 2d 224 (1974); Guajardo v. Estelle, 580 F.2d, at 761; The Luparar v. Stoneman, 382 F. Supp. 495 (D.Vt.1974).

Officer Harmaty has specifically directed me not to engage in journalism. She tried to tie my opinions, commentary, and practice of journalism to "mental illness." She told me the USPO could pick and choose which journalists I could associate with. In April, she said to me that Frank Parlato, an investigative journalist of 40 years, was "engaged in criminal activity," and I could not associate with him, hypothecating the judgment of an Article III judge.[4] I want the Court to rule on this critical issue. As a journalist, I believe the First Amendment rights of the free press, association, and free expression trump the authority of the Government (in this case, the USPO) to interpret the conditions of supervised release as to preclude *bonafide* journalism and newsgathering activity.

Based on my published articles, the FBI, MDFL USPO, Collier County Sheriff's Office, and others received complaints that I was "slandering" and "libeling" people. MDFL USPO told me I could not write or publish anymore based on the complaints. They told me not to affiliate with Frank Parlato, the publisher of the Frank Report (www.frankreport.com), a national outlet where I was regularly publishing because he was "engaged in criminal activity." The MDFL USPO told me I had no right to express my opinions. They presented me with a document where they

---

[4] Mr. Parlato was sentenced on July 31, 2023, to a non-carceral sentence for the failure to file a tax form in 2010. Nonetheless, the rights of the press and to associate with bonafide journalists are squarely at issue.

wanted me to agree to waive my rights to free speech. **See Exhibit "B" to the 7-28-2023 letter to the Administrative Offices of the U.S. Courts.**

I will repeat this. U.S. Probation, an arm of the U.S. Courts, wanted me to agree not to engage in any speech because select and favored people complained to the Government:

> "You must cease and desist making slanderous and libelous statements about other people, specifically Chris Ambrose, Kamillah Hanks, Kevin Love, and Ronald Castorina."

These were all the people I wrote about for the Frank Report. Castorina, Love, and Hanks owe me collectively over $150,000. I am owed over $500,000, and all proceeds will go to the U.S. Taxpayer (discussed in the Takings analysis below).

I want the chance to examine Officer Harmaty, procure her testimony, create a comprehensive factual record (above and beyond the attached emails), and ascertain which directives are the product of explicit USPO instruction and which are the result of institutional racism, injustice, and rot. I also want to establish which orders were based on Officer Harmaty and the USPO's good faith acceptance of false statements made to law enforcement, violating 18 U.S.C. § 1001. I reserve the right to introduce additional evidence, notes, and records on this point.

The USPO's attempt to silence my journalism in light of my articles critical of federal prisons, criminal justice, federal courts, and the Government smacks of impermissible viewpoint discrimination. In <u>Rosenberger v. Rectors and Visitors of the University of Virginia</u>, 515 U.S. 819 (1995), the Supreme Court declared:

> "When the government targets not subject matter but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."

18

I welcome the USPO's counterargument that there are valid concerns of appropriateness and third-party risk to be examined in the freedom of expression, right to association, and the practice of journalism of persons under supervision. That argument would necessarily mean that the whole of the United States is a prison plantation, and the millions of persons under supervision who wish to engage in free expression or association with *bonafide* journalists have the status of antebellum slaves. The US Courts are the plantation owners, and the USPO carries the bullwhip.



In light of the current trend of the weaponization of American Justice, if the Courts take the latter view, all the Government must do is criminalize those that engage in speech against the Government (for any reason). Then they will be precluded from future speech against the Government. This is not only viewpoint discrimination but an invitation to civil war. Our constitutional framers realized the wisdom of an instrumentalism reason for the First Amendment and its anti-censorship principle, particularly in the arena of political discourse. When words fly, bullets don't. When speech is suppressed, the discourse will likely boil over into violence. January 6, 2021, is an example and a warning. If free expression and political expression are systematically and institutionally stifled in America, violence becomes a more likely result. What happened at

the Capitol will look like a children's birthday party compared to what will come. And this view isn't controversial. It has been advanced in some form by multiple 2024 presidential candidates of both major political parties (e.g., Vivek Ramaswamy and Robert F. Kennedy, Jr.).

The Court should issue temporary and preliminary restraints against the USPO from interfering with my right to free expression, publication of reporting and opinions, practice of journalism, association with journalists, and related free speech, political expression, press, and association issues.

**<u>Violation of My First Amendment Right to Petition the Court for the Redress of Grievances</u>**

Persons under federal supervision can petition authorities and the Courts to redress grievances. Even prisoners have this right. In <u>Cruz v. Beto</u>, 319 U.S., at 321, 92 S. Ct., at 1081, the Supreme Court stated:

> "[P]ersons in prison, like other individuals, have the right to petition the Government for redress of grievances which, of course, includes "access of prisoners to the courts for the purpose of presenting their complaints.' " Clearly the term "Government" encompasses prison authorities. Moreover, if prisoners have a right to file a complaint with the courts, then *A fortiori* they must have a right to lodge complaints with the prison authorities as a matter of first resort. Cf. Givhan v. Western Line Consolidated School District, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979).

The MDFL USPO, an arm of this Court, interfered with my right to petition this Court to redress <u>constitutional violation</u>s. **See Exhibit "F" to the 7-28-2023 letter to the Administrative Offices of the U.S. Courts.** I had sought information about availability from AUSA Eth for a preliminary conference. Officer Harmaty responded: "Regarding the upcoming hearing, please refrain from contacting the government directly. I still need to notify the Court and seek its approval."

That was two months ago. I understand that I have a right to a hearing as a matter of right. Justice delayed is justice denied.

The Court should issue temporary and preliminary restraints such that the USPO shall not attempt to interfere with or stifle my access or opportunity to be heard by the U.S. Courts in any way.

**Violation of the Fifth Amendment's Takings Clause**

Castorina, Love, and Hanks owe me collectively over $150,000. I am owed over $500,000, and all proceeds will go to the U.S. Taxpayer The MDFL USPO told me Castorina, Hanks, and Love all called the FBI and the USPO to use the Government to stifle my protected speech and property rights. The Probation Department told me to stop my collections lawsuits. **See Exhibit "C" to the 7-28-2023 letter to the Administrative Offices of the U.S. Courts.** On May 9, 2023, I sent the MDFL USPO an email:

> I wanted to confirm that I have been directed by US Probation not to collect any past fees owed to me from 2017 when I was practicing law.
>
> The fees exceed $500,000.
>
> I owe @$600,000 in restitution, @$130,000 in forfeiture, @$200,000 in back US taxes, @$100,000 in back NYS taxes, and other miscellaneous debts.
>
> Time is of the essence because these claims must be commenced immediately because of the six (6) year statute of limitations, or they will be lost forever. Some claims begin to run next month in June.
>
> My contract with my former lawyers was interfered with by US Probation's directive. My collections lawyers dropped me after your emails to them directing them to stop work and discontinued prosecuting my valuable claims.
>
> You cited standard conditions of probation #13: "You must follow the instructions of the probation officer related to the conditions of

21

supervision." (A copy of the Judgment is attached herewith for your convenience).

I am confused for several reasons.

Obviously, I understand that the US Probation Office has directed me not to pursue the valuable claims/property rights.

And I will abide by US Probation's directive for fear of the pains of imprisonment.

The mandatory conditions of probation #4 states: "You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution." That box is not checked in the judgment.

Additional supervised release terms state: "The defendant shall comply with the forfeiture and restitution orders."

The Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law."

My questions are:

1. If I am precluded by US Probation from pressing valuable legal claims that would help pay back restitution, shouldn't the Federal Government credit me with their value under the fifth amendment's takings clause?

2. In the interim, can US Probation seek an official declaration as to my claims? Every day I am precluded from moving forward with my claims is a de facto taking.

3. Does US Probation's directive not to pursue valid property rights in order to satisfy restitution and forfeiture obligations operate as a *de facto* waiver of these provisions in the Judgment by the US Government? Does this mean the US Government has waived my requirement to comply with the forfeiture order and restitution order?

4. Has US Probation consulted with the US Attorney's Office or other counsel on these issues?

5. Can the US Probation office seek Federal Preemption from the US District Court (or join in my application for a declaratory

22

judgment) to toll the NY State statute of limitations on my claims based on the operation of federal law while these issues are being resolved?

6. US Probation granted permission for me to travel to New York for my pending 440 motion in my NY state case. Does the fact that I am indigent and US Probation expects me to spend thousands of dollars to travel to New York constitute a *de facto* waiver of my restitution obligations in order to pay for travel, lodging, and miscellaneous expenses related to that
directive?

7. Pursuant to Judge Polster-Chappell's recent Decision and Order, the Court was concerned I had not paid restitution and denied travel. Additionally, at our last meeting, you raised concerns about my health and my ability to travel to Chicago. Were these concerns considered when US Probation cleared me to travel to New York for the 440 motion appearance? I am concerned I might fall into a gutter in Brooklyn and die because of my serious health conditions and the fact I have no valid health insurance outside the State of Florida.

I would request a written response to these questions, just like the previous response to the Court's request to travel (see below), so that I am clear as to what is going on.

These are all good questions I would like the Court to address because its "arm," the MDFL

USPO, will not issue any written response or produce any "Rules."

On May 11, 2023, I again, under the good faith advice of counsel, requested details of what

Officer Harmaty stated was an "ongoing investigation":

My lawyer, Stephanie Jones, Esq. (copied), wants me to get a response in writing.

She says that I should be going to court to stop the clock on the statute of limitations running on the valuable claims that I have while the federal government continues its investigations that you said were going on.

The clock has to stop on these valuable claims so that I do not lose my rights to pursue them. You told me that the concern was witness tampering, witness intimidation, and harassment, but neither Kamillah Hanks, Kevin Barry Love, John Tabacco, nor several others were witnesses in my case. I have no list of "people to avoid"

like the government gives to organized crime figures. But then again, organized crime figures don't try to use the courts to collect debts.

I do not know how the investigation you referenced is being handled, who by, or when it will be complete, but I want to respect the process, so I need to protect the right to recovery. Anyone who doesn't want to pay their bills can say they are "harassed," and I suspect they are manipulating the federal system in order to end-run around the statute of limitations.

I had an attorney who had already filed cases. After you told them to stop work, they dropped me. Now, Stephanie Jones, Esq., is looking at the cases. She believes that they have merit, and there is a potential taking here. Her advice is that I must act to preserve my rights. The reason I have a lawyer helping me is that I cannot do this on my own.

Would it help if you spoke to her? Her phone number is 760-406-1657. I know you said you were not an email person. Is it better if she calls you, so these issues can be resolved?

I don't mind coming in to see you. But unless I am going to leave with the answers to the questions in writing to give to Attorney Jones, the exercise will be fruitless. Attorney Jones wants the information.

This is all an effort on my part to try to pay restitution. I want to get this sword of Damocles out from over my head.

Again, the MDFL USPO would not issue any written response or produce any "Rules." They had added to this a new and amorphous "Investigation" - though they wouldn't tell me any detail, like who was conducting it, what the issues were, or anything else substantive. Magically, they now decided it was OK for me to travel to New York, the ground zero of my addiction and charged criminality, and where all my enemies are. I would like to know what factors balance in favor of approved travel with those factual concerns.

MDFL USPO contacted my collections attorneys and told them that the MDFL USPO had to conduct an "appropriateness review" before I could seek redress in the state or federal courts to

collect debts. **See Exhibit "D" to the 7-28-2023 letter to the Administrative Offices of the U.S. Courts.** That email from Officer Haramaty states:

> I advised Mr. Luthmann that I wanted a list of all cases that you intended to pursue for outstanding attorney fees PRIOR TO SEEKING PAYMENT. Please provide the list at your earliest convenience, so that I may review them and see if they are appropriate for collection.

Officer Harmaty did not tell me that she went to law school or was qualified to opine on the "appropriateness" of the New York State-based debt collection. I thought that is what attorneys were for, and I have solid opinion letters from lawyers previously delivered to the MDFL USPO's possession.

The entire notion of the USPO, an arm of the U.S. Courts conducting "appropriateness review," smacks of something very authoritarian and very Soviet, something clearly in violation of the Bill of Rights, the Rule of Law, and the existence of an independent judiciary.



Then again, just let me know if my understanding is incorrect, and there is a separate system of justice for the remaining "American niggers" in incarceration and under supervision, which is

conducted with the modern-day bullwhip outside the plantation shed. I must be naïve to believe that there is equal justice under the law for all. I wonder where I saw that.



The collections lawyers dropped my pending cases without my consent and even a prior phone call or a letter for fear of "retribution" against them. The attached letters from October 2022 show that the collections lawyers opined that I had valid legal claims then. What changed? Tortious interference by Love, Hanks, Castorina, and others using the MDFL USPO as an unwitting accomplice.

Let's be clear that Kevin Barry Love is a brazen thug. He has lied to the MDFL USPO violating 18 U.S.C. § 1001. Additionally, in shades of Michael Avenatti's infamous extortion call to Nike, Kevin Barry Love made threatening phone calls to my former collections lawyers, smacking of interstate menacing. The New York and Providence FBI Offices have received complaints. **See Memo sent to Law Enforcement - Exhibit "E" to the 7-28-2023 letter to the Administrative Offices of the U.S. Courts.**

After everything that happened with Love and Officer Harmaty, one of the collections lawyers told me, "I don't want them doing to me what they do to Trump's lawyers," apologizing for dropping my case without telling me because of the "Government heat."

I have only recently discovered that statements made to coax law enforcement action were dishonest and violated 18 U.S.C. § 1001. Based on the false statements made, I am informed by my new attorney that US Probation Officers tortiously interfered with my collections contract to collect over $500,000 in debts.

The USPO's "stop-work" order to me and my collections attorneys constitutes a *de facto* taking under the Fifth Amendment. The U.S. Constitution itself affords persons deprived of constitutionally guaranteed rights a claim for damages. A property owner is entitled to compensation even for the temporary loss or abridgment of his property rights. Any Government action that works a taking of property rights necessarily implicates the constitutional obligation to pay just compensation. See <u>Knick v. Twp. of Scott</u>, 862 F. 3d 310 (1995).

Here, the USPO has frustrated my valuable property rights - my ability to collect on valid debts – and tortiously interfered with the attorney-client contract with former collections counsel. There are also issues of waiver, *de facto* taking, and destruction of valuable property rights, and other takings issues that must be litigated. I must be made whole so that my restitution can be paid and the U.S. Taxpayers can be made whole.

The Court should issue temporary and preliminary restraints such that the USPO shall not attempt to interfere with, impair, or stifle my property rights, my existing contracts, and my access or opportunity to validly pursue my property rights, including the collection of valid debts in the courts of the United States or the several states.

## THE COURT SHOULD ORDER DISCOVERY AND SUBPOENAS

To the extent that I am entitled to a hearing, I seek a preliminary conference to formally request discovery and inspection of the relevant files of the MDFL USPO and the FBI. These materials are necessary for a meaningful opportunity to be heard.

I also request the Court sign and Order the enclosed subpoenas to produce documents for the following persons:

     i.   CHRISTOPHER AMBROSE, of Madison, Connecticut;

    ii.   KEVIN BARRY LOVE, of Staten Island, New York;

   iii.   KAMILLAH HANKS, of Staten Island, New York;

   iv.   RONALD CASTORINA, of Staten Island, New York;

    v.   ERIC NELSON, of Staten Island, New York;

   vi.   JOHN TOBACCO, of Staten Island, New York;

These materials are necessary for a meaningful opportunity to be heard.

I want to establish a tentative witness list for the hearing at the Preliminary Conference, as well as deal with any reciprocal discovery requests by the Government.

## ALTERNATIVE RELIEF: TERMINATION OF THE TERM OF SUPERVISED RELEASE

Alternatively to the foregoing, I invite the Court to reconsider the Termination of my term of Supervised Release. I intend to invest my time and energy for the next year and beyond until August 5, 2024, litigating this case. Some issues are substantial to the constitutional republic and may be ripe for United States Supreme Court review. Even if the SCOTUS review is years away, these issues will never be moot because they are capable of repetition yet evading review. Roe v. Wade, 410 U.S. 113, 125, 93 S. Ct. 705, 713 (1973); Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515 (1911); see also Moore v. Ogilvie, 394 U.S. 814, 816 (1969); Carroll v. Princess

Anne, 393 U.S. 175, 178-179 (1968); United States v. W. T. Grant Co., 345 U.S. 629, 632-633 (1953).

I am geared up to be the champion of the forgotten men and women, the underclass of federal felons in this new American Era of Targeted and Weaponized Justice in service of elite and corrupt interests. I am a journalist and excited to tell the tale and create awareness of this significant threat to our constitutional republic, hopefully forestalling a subsequent Civil War.

However, I do invite the Court to reconsider its March ruling denying the request to terminate my term of supervised release in light of the reconsideration of specific legal issues, inter alia, the law of the judgment, the law of the case, and an evident and apparent sentencing disparity under 18 U.S.C. § 3553(a)(6). It may obviate my need to devote the next decade to this cause.

## NOTICE TO THE GOVERNMENT

The Government should have instant access to these papers. I make this submission through the MDFL US Courts website. Additionally, I have emailed AUSA Simon R. Eth, the Assistant United States Attorney listed on this case's docket, with a copy of all filed papers to: Simon.Eth@usdoj.gov.

## SUBMISSIONS TO THE ADMINISTRATIVE OFFICE OF THE U.S COURTS AND THE HOUSE JUDICIARY COMMITTEE

Because of the concerning and constitutional nature of the materials addressed in this submission, I have also noticed the Administrative Office of the U.S. Courts and the Judiciary Committee of the U.S. House of Representatives, who have oversight powers.

## <u>CONCLUSION</u>

For the reasons stated herein, I respectfully request that this Honorable Court grant the relief requested.

WHEREFORE, matter as follows:

A) For a Preliminary Conference;

    a. To address whether the Law of the Judgment – the substantive law of the United States Court of Appeals for the Second Circuit - applies to this matter; and

    b. To address whether the U.S. District Court for the Middle District of Florida should be recused from the case and this matter should be transferred to the adjoining Southern District of Florida; and

    c. To issue temporary and preliminary restraints on the United States Probation Office for the Middle District of Florida; and

    d. To obtain Court-ordered subpoenas and discovery related to the U.S. Probation Office, the Federal Bureau of Investigation, and the Government's interaction related to these persons, including but not limited to:

        i. CHRISTOPHER AMBROSE, of Madison, Connecticut;

        ii. KEVIN BARRY LOVE, of Staten Island, New York;

        iii. KAMILLAH HANKS, of Staten Island, New York;

        iv. RONALD CASTORINA, of Staten Island, New York;

        v. ERIC NELSON, of Staten Island, New York;

        vi. JOHN TOBACCO, of Staten Island, New York;

        vii. MDFL USPO OFFICER HARMATY

        viii. MDFL USPO OFFICER AMADORI

B) For a hearing on and issuance by the Court of a declaratory judgment whether and to what extent the U.S. Probation Office for the Middle District of Florida has violated Richard Luthmann's rights; or, in the alternative

C) For an Order Terminating Richard Luthmann's term of supervised release pursuant to 18 U.S.C. § 3583(e)(1);

D) For such other and further relief as this Honorable Court may deem just or equitable.

Dated: Naples, Florida
August 1, 2023,                                              Respectfully submitted,


_____
Richard Luthmann
Defendant *Pro Se*
338 Sugar Pine Lane
Naples, FL 34108
(239) 631-5957

TO:      Clerk of Court (electronic submission)
         U.S. Courthouse and Federal Building
         2110 First Street
         Fort Myers, Florida 33901

               U.S. Probation Office for the Middle District of Florida (electronic submission)
               US Courthouse and Federal Building
               2110 First Street
               Suite 4-182
               Ft. Myers, FL 33901-3011

         U.S. Attorney's Office (electronic submission)
         2110 First Street
         Suite 3-137
         Ft. Myers, FL 33901
         Attn: AUSA Simon R. Eth (Simon.Eth@usdoj.gov)