# "Child Molester" and "Psychopath"

Luthmann Submits Damning Evidence to CT Family Court About Christopher Ambrose



**RICHARD LUTHMANN**
JUL 30, 2023

♥ 1    💬    🔄                                          Share    •••

Richard Luthmann is a writer, investigative journalist, and member of the National Writers Union. Recently, he penned a letter to the Connecticut Family Court in Bridgeport, Connecticut, enclosing documents about disgraced Hollywood Writer Christopher Ambrose and allegations of pedophilia obtained in a newsgathering capacity.

# Child Molester and Psychopath?

Making an *amicus* (friend of the court) submission, Luthmann supplied daming evidence for the Fairfield County Superior Court to consider.



The words "child molester" and "psychopath" are used in connection with Christopher Ambrose, according to filed court documents.

"I believe Christopher Ambrose is a pedophile and not only allows but glorifies underage drinking, sex, and pedophilia in his home...I would ask the Court to consider the following documents, obtained by me in a newsgathering capacity," Luthmann wrote.

One document supplied is an email dated June 6, 2023, between Attorney Michael G. Curley of Murtha Cullina, LLP, and Nancy Stewart, Kelly Burke, and Michelle Peterson of the Connecticut Department of Children and Families (DCF). In this email, there is a reference to "a new allegation of penetration."



Luthmann asks the Family Court to get to the bottom of what appears not to be the first allegation of penetration related to Christopher Ambrose. "Attorney Curley is an officer of the Court, and DCF is also answerable to the Court," Luthmann writes.

Also included is a Report dated May 29, 2023, by New York City Private Investigator Manuel Gomez and addressed to Prosecutor Charles Kruly in the Western District of New York US Attorney Trini Ross's Office and Special Agent Brian Burns of the FBI Office-Buffalo. PI Gomez describes the video evidence he transmitted to the authorities detailing child molestation by Christopher Ambrose.



Richard Luthmann

Luthmann's letter also includes a report dated May 3, 2023, from Dr. Bandy Lee, MD, MDiv, warning of Christopher Ambrose's dangerousness where his children are involved.  Dr. Lee's medical opinion on Christopher Ambrose is "strongly suggestive that a diagnosis of psychopathy is present and justified—or, at the very least, that disturbing levels of psychopathic features are present."

# Mia Ambrose's Statement of Christopher Ambrose's Abuse

The *Amicus* submission also contains a signed statement from Mia Ambrose (16) detailing her adoptive father, Christopher Ambrose's cruel, racist, and abusive words and actions.

"My father, who is white, called me a beaner because of my Guatemalan heritage...He called me fat. He questioned my gender. He called me a bitch. He would say I'm dumb and a horrible sister to my brothers. One day, he told me to kill myself," Mia Ambrose's affidavit reads.



Mia Ambrose

Mia Ambrose recounts inappropriate sexual contact.

"[I]t got to the point where he would grab my butt or my breasts. When I objected, he said, 'Stop being a baby. It's just a prank.' I would walk to the bathroom. The next thing I knew, I was getting grabbed from behind. My father would grab my butt with his hand and squeeze it. I told my father I was uncomfortable with him touching me. He would say, 'it's just a joke. You're being a baby'," the statement says.

Mia Ambrose recounts that Christopher Ambrose would try to watch his daughter shower and change.

"My room was in the basement at my dad's house, which had no lock. My father started to come down when I was changing or taking a shower. It happened almost every day...It got to the point where I would change in a locked bathroom because he would otherwise come in just when I was changing," the statement says.

The statement also claims Christopher Ambrose incessantly allows underage drinking, drug use, and sex in his Madison, Connecticut, home. Ambrose is fully aware of the activities and does not stop them. He glorifies them.

"[Christopher Ambrose] knew there was alcohol. One day, he said he heard older male voices in the basement. Then he said, 'I found a condom under your bed. I just want to make sure you and your friends are being safe. I'm glad you guys are using protection.' He permitted this behavior, knowing the boys were over 18, some men were in their twenties, and the girls were as young as 14," the complaint says.

Luthmann included a previously-published article with pictures of the underage alcohol, drugs, and sex parties, corroborated by Mia Ambrose's statement.

Luthmann says the evidence shows Christopher Ambrose has allowed and encouraged his home to become a den of iniquity. Men aged 23 regularly have sex with children aged 14 and 15 after plying them with alcohol and drugs.



Social Media pictures show men in their 20s sleeping in beds at the Ambrose house, where they are allegedly having sex with girls as young as 14 years old.

# Will Chris Ambrose Get Busted?

Allowing an underage drinking party in your Connecticut home can get you busted under CS section 30-89a - Permitting a Minor to Illegally Possess Alcohol, a class A misdemeanor.

Section 53-21 makes it a felony for an adult to place a child in a situation where their health or morals are likely to be impaired.

These laws are often enforced. Connecticut parents were recently arrested for serving alcohol to minors at a house party where a 17-year-old was stabbed to death.

The allegations that Christopher Ambrose knowingly allowed underage drinking, sex, and drug use are more than serious. Mia Ambrose claims that her father supplies the alcohol and that girls as young as fourteen are having sex with men as old as twenty-three.

In Connecticut, consensual sexual intercourse over a 3-year age difference (where the minor is 13 to 15 years old) would subject the older party to a charge of Sexual Assault, 2nd Degree, in violation of *C.G.S. § 53a-71(a)(1)*. A guilty verdict would result in conviction of a Class B felony sex offense, with a mandatory minimum of 9 months and maximum 20 years imprisonment.

Ambrose may have some concerted action liability if knew statutory rape was happening in his home. But the greatest risk is to Ambrose's band of 20-something statutory rapists, none of whom, to the reporter's knowledge as of press time, have been questioned by Connecticut law enforcement to date.

# How is Luthmann Involved with Ambrose?

Christopher Ambrose, a well-known sleazoid, seems to blame everyone but himself for his troubles, including journalist Frank Parlato. The Hollywood plagiarist unsuccessfully petitioned the Connecticut Family Court to put a gag order on Parlato.

Ambrose's latest tact in his assault on reporters who tell the truth is shameful. When you don't like their opinions, you don't disagree, request a retraction, or even sue for libel. If you're Christopher Ambrose, you call the cops and try to get them arrested.

On March 17, 2023, Luthmann wrote an article entitled Christopher Ambrose Fails at Everything But One Special Talent.

The article detailed, by citing numerous examples in court filings and other evidence, Ambrose's tendency towards trickery.

Luthmann argues Ambrose makes various claims and continues assorted actions in different aspects of his life that are all tied together by a common thread: duplicity. These include his role as a father, his controversial career as a Hollywood screenwriter, and his legal disputes, including his federal court lawsuit against Frank Parlato.

In his article, Luthmann suggests Ambrose's claims are questionable.

Ambrose didn't like Luthmann's reporting, commentary, or opinions. But unhappy as Ambrose was, Luthmann written statements and opinions are shielded by the First Amendment. The US Supreme Court was clear in the 1990 case of Milkovich v. Lorain Journal Co. A statement of opinion relating to which is not provably false will receive complete constitutional protection where a media defendant is involved.

How did Ambrose, a lawyer, respond to the published article? Did Ambrose alert Luthmann or the Frank Report with an email or letter to false or objectionable

statements? Did he communicate with Luthmann, Parlato, or anyone else requesting a retraction? Not at all.



Madison, CT Police Chief Jack Drumm's department investigates reporters at Christopher Ambrose's behest?

Ambrose called the Madison, Connecticut, Police Department claiming Luthmann's published opinions were "libel" and "harassing." He lodged an official complaint calling for the Madison police to investigate the reporter and his article.

## Ambrose Tries To Get Luthmann Arrested For Practicing Investigative Journalism

Luthmann lives in Naples, Florida. In May, he was contacted by the Collier County Sheriff based on an "official complaint" against him in Connecticut.

The Madison police called the Florida authorities to chase down a reporter writing unflattering (but accurate) things about Ambrose.

The Collier County Sheriff's Office told Luthmann he was being investigated for libel under Florida law, a misdemeanor crime. Section 836.01 of the Florida Statutes says, "Any person convicted of the publication of a libel shall be guilty of a misdemeanor of the first degree."

Luthmann met with a deputy Collier County Sheriff.

"Her jaw literally dropped once I showed her what was going on," Luthmann said when called for comment. "Not only is this whole thing a waste of police time and resources, but it has a chilling effect on the press. I'm not even sure the Florida criminal libel statute would withstand First Amendment scrutiny with this Supreme Court," said Luthmann, a recovering attorney.

Luthmann filed his own criminal complaint against Ambrose.

Luthmann's complaint alleges, "CHRISTOPHER AMBROSE did violate F.S. § 837.05 by knowingly and maliciously making a false statement that was caused to be sent to Florida Law Enforcement."

# Were Ambrose's Actions Motivated By Actual Malice?

Because Ambrose is a lawyer, Luthmann alleges he knew or should have known better than to create a "waste of scarce FLORIDA LAW ENFORCEMENT RESOURCES."

He says Ambrose's actions are a "strategic complaint against PUBLIC PARTICIPATION."

Luthmann made allegations of child endangerment and underage sex at Ambrose's Madison, Connecticut, home:

> **LUTHMANN believes AMBROSE has engaged in CHILD ENDANGERMENT in his home in Madison, CT, based upon the information available in the public record and other materials received from protected journalist sources.**
>
> **LUTHMANN believes AMBROSE's complaint against him is little more than retribution and an "ALIBI" against the rampant underage drinking, drug use, and sex that occurs in AMBROSE's home on Horsepond Road in Madison, CT, on a regular basis.**
>
> **LUTHMANN has seen evidence and spoken to witnesses that AMBROSE is aware that MEN as old as 23 years old are supplying drugs and alcohol to children as young as 14 and 15 and having sex with them.**

"I want to see justice run its course. Child predators sicken me, and my opinion is that if it is proved that Christopher Ambrose is a pedophile after a speedy and fair trial, the justice system should put him down, hopefully permanently," Luthmann said.

Luthmann said Connecticut law enforcement already possesses the shocking evidence he has seen.

Luthmann's biggest concern wasn't Ambrose's use of law enforcement to attack free speech and the press. It was Ambrose's ability to manipulate the system and continue to abuse children.

"Maybe there's something to this Hollywood Pedophile Ring. Maybe there is one in Connecticut too."

Richard Luthmann is a writer, commentator, satirist, and investigative journalist with degrees from Columbia University and the University of Miami. Once a fixture in New York City and State politics, Luthmann is a recovering attorney who lives in Southwest Florida and a proud member of the National Writers Union.

"I am a journalist who writes about justice, the courts, government officials, prisons, and reform. You find some questionable players in all these places and often outright crooks. Exposing these bottom feeders from the outside is sometimes the only way to make them pay the price for their injustice and misdeeds."

"I use satire and opinion to make my point. I have already been told to 'stop writing about the Government' by the U.S. Government, so I must be doing something right."

"If you're a victim of the system, maybe the press is the right forum for you. If you have experienced injustice and are tired of dropping tens of thousands of dollars without results, maybe it's time to try the digital pen."

Contact Richard Luthmann at 239-631-5957 or richard.luthmann@protonmail.com.



---

*"Nihil est incertius vulgo, nihil obscurius voluntate hominum, nihil fallacius ratione tota comitiorum."* (Nothing is more unpredictable than the mob, more obscure than public

*opinion, and more deceptive than the whole political system.)*

*~ Marcus Tullius Cicero*

---

The news media is a critical check on the powerful, serving as a watchdog to hold elected officials and other public figures accountable for their actions. The media was first called the fourth estate in 1821 by Edmund Burke, who wanted to point out the power of the press. The press plays a crucial role in providing citizens with access to information about what is happening in government and by shining a light on corruption, abuse of power, and other forms of wrongdoing.

---

 1 Like

## Comments

 Write a comment...

---

© 2023 Scrivener, LLC  · Privacy · Terms · Collection notice
Substack is the home for great writing

# NYC Councilwoman's Association with Kevin Barry Love Under Scrutiny

Love, "Husband" of NYC Councilmember Kamillah Hanks, Made Threatening Calls, May Lead to Federal Investigation

APR 20, 2023



Kevin Barry Love just can't behave.



Kevin Barry Love (center) flanked by Special Assistant to NYC Mayor Eric Adams, Diane Savino (right), and Richmond County Surrogate Matthew J. Titone (rear left).

Love, a millionaire real estate investor, is the "husband" of NYC Councilmember Kamillah Hanks.

Hanks, her political campaign, and Love are all being sued by former attorney Richard Luthmann for over $86,000 in unpaid legal fees from 2017.

In a stroke of "genius," Kevin Barry Love decided to take the matter into his own hands.

Recently, Love telephoned Luthmann's lawyers and had a conversation - over a cell phone and across state lines - smacking of extortion of the FEDERAL variety.

In what can only be described as "shades of Michael Avennati," Kevin Barry Love called Luthmann's lawyers. He threatened them with criminal charges and attorney grievances, using the largesse of his wife's elected office.





Is NYC Councilmember Kamillah Hanks' "husband," Kevin Barry Love,
under federal investigation for interstate menacing?

While Love may think he's the smartest person in any room, his actions show he
assuredly is not. His conduct may very well amount to federal criminal extortion
charges.

Kevin Barry Love was miffed that Luthmann made him look like a total idiot in
front of the entire NYC Council, the Mayor's Office, and the "Elections
Department" by showing the world that the Councilmember and her "husband"
were deadbeats.

Trying to outsmart Luthmann's lawyer, Love admitted that Luthmann did work for
Councilmember Hanks, her political campaign, and him and that they were, in fact,
deadbeats.



**1×**   0:00 ◯                              -0:34   ▶

The "Elections Department," properly known as the NYC Campaign Finance Board, is tasked under the NYC Charter with policing shady political deals and is a named defendant in Luthmann's lawsuit.

Love admitted that Hanks' campaign paid a $1,650 partial retainer for over 100 hours worth of work. Millionaire Kevin Barry Love thinks lawyers should work for $1.65 an hour.

And Love has a pattern of labor-related abuses from his time as the chairman of the Downtown Staten Island Council, where at least one six-figure settlement was paid to a former employee.



NYC Councilmember Kamillah Hanks (center) with lobbyist Jon Del Giorno (left) and NYC Mayor Eric Adams (right). Hanks sits on the

NYC Council Land Use Committee, while her husband, Kevin Barry
Love, is a millionaire real estate investor.

Allegations of non-payment continue to mount against the Hanks campaign. Love pressed one worker to take $1,250 for over 100 hours of work, or $1.25 an hour.

A complaint was filed with the NYC Campaign Finance Board. Sources say the investigation is stalled due to pressure from City Hall. It is unclear whether it is from the Mayor's Office or the Speaker's Office.

Councilmember Hanks is the Chair of the Committee on Public Safety and serves as a member of the Committees on Civil Service and Labor, Education, Environmental Protection, Finance, Land Use, and the Subcommittee on Zoning and Franchises.

Love is apoplectic that Luthmann would have the audacity to call attention to apparent campaign finance violations, fraud, and other serious transgressions in his "wife," Council Member Kamillah Hank's campaign filings.



Kevin Barry Love is notorious in the truest sense of the word. The man appears to be a total buffoon, a cartoon character. Any credibility of his wife, the Staten Island Councilwoman, quickly dissipates when he enters the room.



NYC Mayor Eric Adams (seated) and Councilmember Kamillah Hanks (right).

Sources close to the NYC Mayor's Office have said that plans for Eric Adams to campaign with Kamillah Hanks this year have been put "on hold" based on recent controversies, including the Luthmann lawsuit.

In a profanity-laced tirade, Kevin Barry Love told Luthmann's lawyers to serve him and that they "better come big."

 0:00 ⚪     -0:18 

This is the second time Luthmann has made Kevin Barry Love look like a fool. The first time was when Love told the NY Post Luthmann had no proof. Within hours,

Luthmann published the evidence, including court documents and emails.

As comical as Love's actions may seem, they are very serious. This man is using the power of his wife's office to threaten people.

While attorneys can defend themselves, what is Kevin Barry Love doing to regular people?

Allegations have already been made that Love and Hanks were complicit in criminal activity related to Hanks' failed 2017 City Council Campaign against Debi Rose.

No one should be able to use a public office as part of a pattern of extortion or personal enrichment.



Is millionaire Kevin Barry Love using his wife, NYC Councilmember Kamillah Hanks' political office to extort the weak and enrich himself?

An Official Complaint was filed based on Kevin Barry Love's threats, which smack of federal crimes.

Apparently, Kevin Barry Love is right about one thing. The FBI and the DOJ are involved because the complete audio was sent to both of them.

Read the Official Complaint below:

## OFFICIAL COMPLAINT

18 U.S.C. § 875. Interstate communications

(d) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

On April 4, 2023, KEVIN BARRY LOVE ("Love") called ALMAGNO LAW, INC., the law office of Lawrence P. Almagno, Jr., Esq. ("Almagno"). Also present was Jesse Duarte, Esq. The law office is located in Cranston, Rhode Island. The law firm's telephone number is (401) 946-4529. Almagno returned the call to Love, who proceeded to threaten Almagno.

A recording is attached.

During the conversation, Love made specific threats using the telephone and knowingly did so across state lines.

Love admits he is in the State of New York while making the call.

The sole purpose of the call was a communication threatening to injure the property and reputation of Almagno and accuse Almagno of a crime.

Love states the FBI and DOJ have already been contacted and insinuates that he can cause these governmental agencies to act on his behalf.

Love threatens Almagno's law license and livelihood because he practiced his profession, by filing a collections action.

There was no attempt to settle or resolve the case. Love's entire purpose was to extort, threaten, and intimidate.

Love has a history of threats and intimidation.

Love's paramour (who he falsely claims is his wife), Kamillah Hanks, is an NYC Councilwoman.

Love is her *de facto* agent and "enforcer."

Love has already engaged conduct that smacks of extortion on numerous occasions. One witness [NAME WITHHELD] worked on Hank's 2017 campaign and was owed $14,000. [NAME WITHHELD] suffered a heart attack. Days later, Love "took [NAME WITHHELD] for a ride" in Brooklyn and tried to force him to take $1,250 to "settle" the debt. [NAME WITHHELD] couldn't leave the car because of his health conditions.

Because of Love's extortionate threats, [NAME WITHHELD] is fearful and has never been paid for his work.

Love's statements to Almagno, witnessed by Duarte, are clearly threatening and an attempt at extortion across state lines.

Focus in determining whether threat has been made is on whether defendant reasonably should have foreseen that statement he uttered would be taken as threat by those to whom it was made. *United States v. Fulmer*, 108 F.3d 1486, 46 Fed. R. Evid. Serv. (CBC) 411, 1997 U.S. App. LEXIS 5869 (1st Cir. 1997).

Defendant made at least two threats to operator of hotline dedicated to finding missing children, where during eight telephone calls over two-day period he told operator continuing saga of how he had abducted and sexually forced himself on his fourteen-year-old stepdaughter, though he was only playing

elaborate prank. *United States v. Freeman*, 176 F.3d 575, 1999 U.S. App. LEXIS 9316 (1st Cir. 1999).

First Circuit saw no reason to depart from its prior law that objective test of defendant's intent was used from defendant's vantage point under this statute. *United States v. Clemens*, 738 F.3d 1, 2013 U.S. App. LEXIS 24488 (1st Cir. 2013).

Objective of party employing fear of economic loss or damage to reputation will have bearing on lawfulness of its use, and it is material whether defendant had claim of right to money demanded; where threat of harm to person's reputation seeks money or property to which threatener does not have, and cannot reasonably believe she has, claim of right, or where threat has no nexus to plausible claim of right, threat is inherently wrongful and its transmission in interstate commerce is prohibited by 18 USCS § 875(d). *United States v. Jackson*, 180 F.3d 55, 52 Fed. R. Evid. Serv. (CBC) 639, 1999 U.S. App. LEXIS 11906 (2d Cir.).

It is not whether means of communication chosen by defendant caused threat to reach "indefinite and unknown audience," but whether defendant intended to communicate threat to victim through chosen means. *United States v. Kelner*, 534 F.2d 1020, 1976 U.S. App. LEXIS 11878 (2d Cir.).

Although jury was erroneously instructed that communicating threat only required that reasonable person would regard communication as threat, error was harmless since evidence clearly showed that defendant had subjective intent to issue threat or knowledge that communication would be viewed as threat. *United States v. Choudhry*, 649 Fed. Appx. 60, 2016 U.S. App. LEXIS 9215 (2d Cir. 2016).

TO:

Providence Rhode Island FBI Office

10 Dorrance Street, 900

Providence, Rhode Island, 02903

New York City FBI Office

26 Federal Plaza, 23rd Floor

New York, NY 10278-0004

Richard Luthmann is a writer, commentator, satirist, and investigative journalist with degrees from Columbia University and the University of Miami. Once a fixture in New York City and State politics, Luthmann is a recovering attorney who lives in Southwest Florida and a proud member of the National Writers Union.



Drop me a line if you are a victim of the "Swamp" of corrupt politicians, lawyers, judges, or courts. I write about criminal justice, courts, prisons, and reform.

---

*"Nihil est incertius vulgo, nihil obscurius voluntate hominum, nihil fallacius ratione tota comitiorum." (Nothing is more unpredictable than the mob, nothing more obscure than public opinion, nothing more deceptive than the whole political system.)*

*~ Marcus Tullius Cicero*

For Article Ideas, Tips, or Help: richard.luthmann@protonmail.com or call 239-287-6352.

The news media is a critical check on the powerful, serving as a watchdog to hold elected officials and other public figures accountable for their actions. The media was first called the fourth estate in 1821 by Edmund Burke, who wanted to point out the power of the press. The press plays a crucial role in providing citizens with access to information about what is happening in government, as well as shining a light on corruption, abuse of power, and other forms of wrongdoing.

 2 Likes

## Comments



# Judge Castorina Distinguishes 'Not Good Speech,' Kitchen Speech and Perjury

🕐 February 16, 2023





## Judge Castorina's Testimony vs Facebook Mesages

New York State Supreme Court Justice Ronald Castorina Jr is potentially on the hot seat.

His challenge is the stark contrast between his 2018 grand jury testimony as a witness in the People of NYS v Richard Luthmann and the Facebook Messenger message he exchanged with Luthmann two to three years earlier.

## Does It Rise to the Level of Perjury?

His calling his female opponent, Janine Materna, a "rotten cunt" or a "phony bitch" in Facebook Messenger messages to Luthmann is not the issue.



Attorney Janine Materna ran against Ronald Castorina in a 2016 N.Y.S. Assembly primary election.

What is an issue is that in the grand jury, Judge Castorina said Luthmann was the vulgar one, he found it offensive and certainly would not talk like Luthmann – at least not at the kitchen table.

Luthmann asked Judge Marina Cora Mundy to refer Castorina and attorney Eric Nelson, who acted as special prosecutor in the Luthmann case, to NYS Attorney General Letitia James for potential prosecution.

FR's purpose here is to compare Castorina as he speaks in Facebook Messenger conversations, and how he speaks in the grand jury, to make it easy for Judge Mundy, Letitia James and possibly federal prosecutors considering conspiracy charges to evaluate the matter.

The Facebook Messenger conversations are not newly discovered evidence. Nelson subpoenaed them in 2018, and it appears also suppressed them to enjoy what might be the subornation of perjury to get an indictment.

# Smiling Jack

## Castorina on Facebook September 11-12 2015:

In 2015, Luthmann created a fake Facebook page for Democratic District Attorney Candidate Michael McMahon.

Luthmann referred to McMahon as "Smiling Jack" and McMahon's advisor, former Judge Carmen Cognetta, as "Girl Get On Your Back."

The latter reference was sexual harassment allegations that forced Cognetta to resign from the Family Court bench in 1993.





**Castorina:** Lmfao- fucking hysterical ha ha ha. Your the best rich. I just got home and saw this and cracked up. It's spot on. Lol

*Luthmann sent another image from the fake Facebook page:*





‹                              💬  f  🐦  📌  in                              ›

**Castorina:** Wow- lmfao girl get on your back— holy shit – I'm fucking pissing my pants lmfao- wow ha ha ha



**Luthmann:** 😃

Fuck him.

Smiling Jack ain't too happy with me.



**Castorina:** what happened



**Luthmann:** I am responsible for all his problems apparently.



**Castorina:** i love the smiling jack reference and "girl get on your back" fuckin amazing

<     💬   f   𝕏   📌   in     >

In extraordinary testimony, Judge Castorina in somber tones was shown and asked to describe the Grinch and McMahon photos.

Castorina neglected to state his first reaction was "Lmfao- fucking hysterical."



**CASTORINA [shown the Grinch and McMahon photos]:** He **[Luthmann]** compared D.A. McMahon to a Dr. Seuss character in a photograph. He put two photographs side by side. It shows D.A. McMahon looked like he was in a frowning — has a frowning face on, and then the Dr. Seuss character has a similar frowning face.



**NELSON:** Now does that fairly and accurately represent what you observed around the time period of September of 2015, which would be several months before the District Attorney's general election?



**CASTORINA:** And at least seven months before my first election, yes. It does accurately represent a **—** a message **—** I mean a message, if you will, because it's two photographs that was transmitted to me by Mr. Luthmann.



**NELSON:** And how about the next photograph, sir?



*reference and "girl get on your back" fuckin amazing.*



**CASTORINA:** The next one had — it says, Smiling Jack and Girl Get On Your Back. Meet Team McMahon. Is this who you want keeping Staten Island safe?

I don't know who he's referring to as well. I guess he's referring to D.A. McMahon as Smiling Jack, I guess. I don't know. I would be speculating to say.

But clearly there are two photographs, one of what appears to be D.A. McMahon and another which looks like former Judge Cognetta.

*[It "looks like" Judge Cognetta? He's not sure? But in 2015, Castorina was sure. He messaged Luthmann, "I love the smiling jack reference and "girl get on your back" fuckin amazing."*

# Fake Janine Page

## Castorina Messenger October 11, 2015:

Eleven months before the election, Castorina learned Janine Materna would run against him in a primary for the New York State Assembly.

Castorina reached out by Facebook Messenger to tell Luthmann and get his help.





**Castorina:** Janine Materna filed a committee **–** shes going to primary me for sure

she was roming around richmond town with that guy ron lauria yesterday too



**Luthmann:** Fuck them. Time for a fake Janine Materna site.



**Castorina:** that bitch has had a URL for assembly congress and senate for 5 years – she's fucking nuts



**Luthmann:** Facebook…

Castorina: "Yes."



Castorina: I need to talk to you about that race, and I'm going to need your expertise."



Luthmann *[advising him how to win in this heavily Republican district of Staten Island:]* Then turn it into RINO *[Republican In Name Only campaign]* Janine Materna. FLIP FLOP FLIPPITY FLOPPITY FLOOP



Castorina: shes a republican, but she took the working fam parties endorsement and worked for hillary [Clinton]



Luthmann: Republican today...Dem yesterday. Is there a picture of her with Hillary?



Castorina: yes, so much bullshit- shes a first year law student- its like legally blond im looking for one **[of Materna with Hillary Clinton]**, but theres a few with chucky schumer

## Castorina's Grand Jury Testimony

As their Facebook messages show, Castorina and Luthmann collaborated on a search for a picture of Materna with Hillary Clinton to be used on Facebook. Castorina called her a "bitch" and "legally blond." He knew Luthmann's intent was to smear Materna and he wanted to help him with a fake Facebook page.

Let's see what Judge Castorina said in the grand jury three years later, on August 1, 2018.



**SPECIAL PROSECUTOR NELSON:** At one point, if you recall, did he **[Luthmann]** say that it's time for a Janine Materna page?



**CASTORINA:** Yes. Yes, he did.



**NELSON:** And — and in your opinion, when you received that **[message]**, did you form any opinion in your mind as to what he meant from his words as to a Janine Materna page?



<    💬  f  🐦  📌  in                                                >

**CASTORINA:** Well, you know, you never know what to believe when this individual, Mr. Luthmann, says something.

So, frankly, I would assume at that point that he may have been talking about either a fake page or a page where he would — a satirical page where he would clearly be making fun of her to people and not in a way that was subterfuge, you know, either/or, or probably what he was talking about in that type of message.

\*\*\*

*Castorina did not know what to believe? Then how come he did not testify that he sought Luthmann's expertise?*

# 'Not Good Speech'

## Castorina's Messages on October 11, 2015:

Luthmann shared links with Castorina from the Janine Materna fake Facebook page he created.



**Luthmann:** shared a link entitled "Poop Shoot Princess"



**Castorina:** Ha ha ha



**Luthmann:** We'll get her about 500 likes…

*Luthmann sent a link to this image*



*Castorina approved the link: SeeYouNextTuesdaySI. – which is also spelled* ***C U N*** *[ext]* ***T*** *[Tuesday]*



**Castorina**: I want to crush her – such a phony bitch
She's such a phony self serving bitch. Can't stand her

## Castorina's Statements August 30, 2016:

On August 30, 2016, two weeks before the Primary Election, Luthmann sent a message to Castorina.



Luthmann: I think we have to do a new video.
Janine Materna is not a democrat. Janine Materna is a cunt.





**Castorina:** She's a rotten one at that.



**Luthmann:** Janine Materna XXX?



*Castorina Materna XXX Pearl Necklace*

*Luthmann sends lewd photoshopped picture to Castorina*

She will jump in front of a bus.



**Castorina:** Lmfaooo omg. Her and wiener there's her pearl necklace she always wears...



< 💬 f 🐦 📌 in >

**Luthmann:** "Carlos Danger and me."



**Castorina:** That's just terrible OMG lol

## Castorina's Grand Jury Testimony:



NELSON: And you're also aware of the fact that there's constitutional protections for free speech?



CASTORINA: That's correct.



NELSON: I'm not going to ask you to characterize this, but would it be accurate to say that the line political speech, free political speech and other actions in this case that there certainly could be a



**Castorina:** Well, certainly I — I don't believe that I can characterize the speech as either political or –or anything other than what it is. It's lewd. It's lascivious. It's outrageous at times.

It's not the type of conversation that I'd want to have at my kitchen table clearly.

So it's — it's not good speech. It's not the type of speech that I welcome or that I wish to participate in in any way, and certainly I would characterize it generally as unwelcome.

**\*\*\***

Castorina calls Luthmann's speech unwelcome, and to get away with this, he had to know that Nelson would suppress the equally offensive speech Castorina made in response to Luthmann.

Nelson only showed Luthmann's vulgarity and scrupulously avoided showing the grand jury Castorina's vulgarity.

Castorina and Nelson may be subject to felony indictment and prosecution. Luthmann filed an official complaint with New York State Attorney General Letitia James' Public Integrity Unit.

If ethical violations are found, Castorina and Nelson, both licensed attorneys, may be disbarred.

As a sitting New York State Supreme Court Justice, Castorina also faces sanctions from the New York State Commission on Judicial Conduct. A formal complaint was filed.

FR called Judge Castorina on his cell phone for a comment for this story. A man answered the phone, and when this writer identified himself, the call suddenly "dropped."

A immediate follow up went to voicemail. A message was left.

Calls to Eric Nelson, Perry Reich, Thomas Tormey, and Lucien Chalfen from the New York State Office of Court Administration were not returned.

A phone call to Janine Materna was answered by a man who identified himself as her fiance. He stated she was not inclined to comment on the matter.



Frank Parlato

About the author



**Frank Parlato**

# Please leave a comment: Your opinion is important to us! (Email & username are optional)

Enter your comment here...



**Castorina is a Bad Dude**

February 18, 2023 at 8:35 am

Luthmann's no angel, and he went to jail. Castorina was right there with him, and now he's a Judge?

All you have to prove for perjury is a knowing and intentional lie. There are at least 10 counts of Ronald Castorina's perjury from what I have seen so far.

The sad part is about how disloyal Castorina is to Luthmann, who was his friend. Luthmann wrote all about this on his Substack page:

**Ronald Castorina – Disloyal**

If you want the back story on my dealings with Ron Castorina, it is out there. Read Frank Parlato's ongoing exposé.

I let Ron have it in a letter I wrote him dated October 27, 2022. The proof there is daming.

---

men. And all three need to be triggered.

What triggered Ron as my prey (in the legal arena) is reading the transcript from the August 1, 2018, grand jury in the Kangaroo Court Case that was People v. Luthmann. The real story that no one knows is that Ron and I were colleagues and friends. Ron has even admitted this to political people saying, "You know politics as well as I do, I had to distance myself from Rich."

I had no problem with Ron doing that. In fact, the August 25, 2017, Facebook post that "cleared" Ron politically was something I did for my friend.

I closed that post like this:

> From Plato to Machiavelli to Hannah Arendt, the practice of politics has never been tied to truth. It is tied to distributive justice whereby there are great "noble lies" to borrow a Platonic term. And the Supreme Court of the United States agrees:
>
> http://time.com/.../on-your-mark-get-set-lie-supreme.../
>
> And finally, Ron Castorina has no knowledge of the contents of this email. Nor does any other elected official. This is all me – setting the record straight for my friend. If you're with me, I'm with you to the Gates of Hell.
>
> "We few, we happy few, we band of brothers;
>
> For he to-day that sheds his blood with me
>
> Shall be my brother"
>
> -Henry V, Act IV

In one paragraph, I said politics has nothing to do with truth, and quote a Time Magazine article: On Your Mark, Get Set, Lie: Supreme Court Weighs Truth in Politics.

In the next paragraph, I lied. Vintage Luthmann.

"Ron Castorina has no knowledge of the contents of this email." This statement is false, and demonstrably so.

I made the Facebook post from Lake Placid, New York. I was at the NYS Kiwanis Convention. I was sitting on the hockey arena floor where they played the Miracle on Ice. Ron was on the phone with me crying about how they were calling for him to resign the

Republican Party Chairmanship and that he needed "cover." I drafted the Facebook post on my smartphone. Attorney Sean O'Sullivan was sitting next to me helping. O'Sullivan –



In fact, Sean O'Sullivan is the lynchpin to much of what is going to happen. Sean has been around Republican Party politics for a long time. He's seen a lot of people come and go. He's lasted because he generally tells the truth. And in the case my lawyers are filing this week, Sean has already received a spoliation notice. Sean is Ron's "cut-out." Sean and Ron are business partners. And lawyers know, in many situations, the actions and knowledge of one partner can be imputed to the other.

I don't think Sean is going to lie for Ron. Sean isn't going to get his ticket pulled. In fact, I'm pretty sure Sean and Ron have already had a conversation about just how screwed Ron really is. Sean is getting subpoenaed right away – and you watch the legal maneuvering that will go on to try to block and/or delay his testimony. Once Sean goes on the record, Ron will lose his black robe, if he hasn't already.

Back to the Facebook post above. In the grand jury transcript, the Special Schmuck, Eric Nelson, goes through the entire August 25, 2017, Facebook post – co-authored by Luthmann, Castorina, and O'Sullivan on the record. Ron's sworn testimony is a lie. He denies involvement with the post, including its authorship or collaboration.

The problem is that Eric Nelson, an incompetent-by-design special prosecutor, had subpoenaed all of my Facebook and Verizon Phone records. We know this because Nelson billed and bilked NYC taxpayers out of hundreds of thousands of dollars claiming he read them.

If anyone looks at the phone records from August 25, 2017, they see numerous calls between Luthmann and Castorina that day. Castorina initiated the calls. Luthmann was at a convention. He wasn't calling Ron from Lake Placid because he was a "crazy person" that needed to talk to an Assemblyman. Anyone who knew me then knows I felt a greater need to talk to the bartender than an elected official, particularly on the weekend.

Ron wasn't "placating Luthmann" on the call Ron initiated. Ron was in tears they were calling for his resignation as Party Leader. For example, Ron had choice words about Letitia Remauro telling him it must have been a "dark time" for him to have consulted with Luthmann. I told Ron not to worry. I was a warrior. I would take the blows for my friend and my client. I grabbed Sean O'Sullivan, and we got to work.

But don't take Luthmann's word for it. Look at the phone records. They don't lie. The FBI gets warrant applications, arrests, and indictments on less "coordination." Nelson had the phone records. They contradicted Castorina's sworn testimony. Both sets of evidence were offered to the grand jury. One set is necessarily false.

And therein lies why I have to destroy Ronald Castorina legally and politically. Loyalty. Not to me, but to THE TRUTH.

---

Indictment. The sitting Assemblyman and Judicial Candidate would have defended Luthmann's actions as within the purview of the First Amendment because Luthmann's actions were also Castorina's.

Instead, the lawmaker and his accomplice, the incompetent-by-design Special Prosecutor, proceeded to bastardize the facts and the law.

Staten Island, New York. Where the Judges, the Lawmakers, and the Prosecutors tell you what speech is "not good speech." There are other places where they do that too. Beijing, Tehran, and Pyongyang.

But wait, there's more. What about grand jurors that might have questions about the First Amendment given Castorina's testimony? Eric Nelson, whose job as a prosecutor was to truthfully advise the grand jury, squarely told them he wasn't "going to give a lecture about Free Speech."

**NYS Supreme Court Justice Ronald Castorina, Jr.: Disloyal to the Facts; Disloyal to the Law; Disloyal to his Friends; Disloyal to the End.**

This is your Supreme Court Justice, Staten Island, New York. Don't worry. I intend to take out the trash. Maybe Tish James will get there first.

But because of the Castorina-Nelson-Smiling Jack "Fake Facebook" felony, I am a multiple felon. With a single felony, I could get a mortgage broker, real estate, insurance, or a multitude of other licenses to have a craft and/or a trade to focus on day in and day out. Because of the pile-on felony, the fake felony, the felony based on felonies and perjury, I can't even get a license to pilot a shrimp boat like Forrest Gump.

I have plenty of time and plenty of patience. I am a monster, and I am in control.

REPLY



**Joseph Pulitzer**
February 18, 2023 at 8:31 am

‹                    💬    f    🐦    📌    in                    ›

muckraking.

REPLY



**WTF**
February 17, 2023 at 3:57 pm

Yeah...it does seem like downplaying and distancing, but not lying. Unless I am missing something, it seems to me like there is nothing there regarding this judge.

REPLY



**ModernThomasNast**
February 18, 2023 at 8:31 am

Downplaying????

It is flat out lying. Castorina lied about knowing about the fake facebook pages. Luthman told him "Facebook", and he replied "yeah" and "I need your expertise". He flat out lied about participating in the input for the fake facebook pages. He not only went looking for a photo with Hillary, but he sent Luthman the photo with Eric Holder.

Finally, Nelson as the Special Prosecutor had a duty to present "Truthful" evidence to the Grand Jurors. By very purposefully leaving out the Castorina end of the Facebook Messages, he is surborning Castorina's Lying. Nelson had an obligation to confront Castorina about those lies in front of the Garand Jury.

Furthermore, One of the jobs of the Prosecutor presenting to a grand jury is to explain the law and how it applies to the case. When one of the Grand Jurors asked him about the 2nd Amendment, instead of answering the question Neson replied "I'm not going to give a class on the 2nd Amendment." Where the hell did he go to law school "Whatsamatter U."

REPLY



**Anonymous**
February 17, 2023 at 2:04 pm

What's the definition of perjury and does this really qualify ? He's just kind of Downplaying but not really lying

 **ModernThomasNast**

February 17, 2023 at 4:36 pm

He's not downplaying. The Prosecutor is intentionally withholding half of the Conversations inorder to allow Castorina to lie!!

Last tike I checked the Prosecutor is duty bound to present true facts to the Grand Jury. Nelson knew Castorina was lying through his teeth, and he did nothing to present the truth or expose those lies.

I can't believe that Judge Mundy hasn't dragged both of them in to her courtroom and and held both I contempt.

REPLY

 **Peaches**

February 17, 2023 at 10:30 am

I'm sorry, this is ridiculous, imo of course. I'll try to read the next article. I can't get past the boring shmuck shit.

REPLY

 **Woodward and Bernstein**

February 18, 2023 at 9:08 am

Boring Shmuck Shit is what broke Watergate.

REPLY

  🇺🇸👑 **Patriot God** 👑🇺🇸

February 16, 2023 at 11:24 pm

Dear stupid Ginzo!

 Gmail

Richard L <luthmannrichard@gmail.com>

**Update**
5 messages

**Richard L** <luthmannrichard@gmail.com>                    Wed, Dec 14, 2022 at 11:22 AM
To: "megan_amadori@flmp.uscourts.gov" <Megan_Amadori@flmp.uscourts.gov>
Cc: Lawrence Almagno <la@almagno-law.com>, "mlepizzera@leplap.com" <mlepizzera@leplap.com>
Bcc: richard.luthmann@gmail.com, richard.luthmann@protonmail.com

Officer Amadori,

By way of update, I have attached the new scheduling notice for my disability hearing, which is now scheduled for February 14, 2023.

Additionally, Mr. Almagno (copied along with Attorney Lepizzera) contacted me earlier and said that you had concerns about my potential employment with him. I am including my Judgment ordered by Judge Weinstein in the EDNY. Please note on page 5 where it states in typewritten language: "The defendant is permitted to assist attorneys with legal work but not as an attorney."

It is my reading of the four corners of the Judgment that this language supercedes all other language because it was clearly the final amendment placed on the document. This would mean that Judge Weinstein never intended for US Probation's general powers to encroach upon important and specific policies concerning law firms, such as the attorney client privilege or the work product privilege.

In Judge Weinstein's wisdom, the inclusion of the language appears to allow me to work for lawyers AND allows lawyers to employ me without compromising core safeguards of the legal profession. There was a discussion on the record in the colloquy that addressed this point, that I have the ability to work in the law in some capacity so that my legal mind would not go to waste.

Unfortunately, we can't ask Judge Weinstein now, because he's dead. But if necessary, we can ask
United States District Judge Sheri Polster Chappell, who accepted jurisdiction of my supervision from Judge Dearie in the EDNY. Pursuant to

the transfer order, the MDFL has the authority to interpret the provisions of, modify, and terminate my Supervise Release sua sponte.

I still think there is a legal issue that is not addressed, whether Second Circuit or Eleventh Circuit law applies. It is my position that the law of the Second Circuit applies to the entire Judgment, and thus to determinations regarding supervision, based on conflicts of law principles.

What is the USPO's position in this issue and the others raised here? I do not want to put you in a bad spot. It may very well be best if I seek the District Court's direction on this irregular and complex issue.

Additionally, I can ask the court to address additional concerns about my activities as an aspiring journalist and the interplay between the terms of Supervision and the First Amendment's free press clause. This is squarely important to my ability to newsgather and assert the journalist's source privilege.

Finally, if trying to take actual employment is problematic, I do remind you that I am disabled under Florida law and I am seeking adjudication and benefits under Federal law. Under the Thirteenth Amendment, so long as I am under supervision, the choice is not mine. I understand that. Federal law explicitly provides that I cannot be compelled to work if I am disabled, even as part of supervision. But I want to work, if possible, at an appropriate job.

Though I would like to embrace ableism and get my life on track, if it is preferable for the USPO that I do nothing other than apply for and then collect federal disability benefits until my term of supervision expires on August 5, 2024, I understand that is your prerogative. There was no real work in prison during COVID-19, and given my limitations, I haven't been able to work for the past five years.

Please know that I do want to try to take appropriate part time work given my needs and limitations and work past my disabilities, physical, mental, emotional, and legal. I want the opportunity to contribute to society with

legitimate labor, grow as an individual, and meet all of my obligations, including restitution.

Please let me know if this is something that the USPO is considering because I believe due process and the ADA give me a right to ableism, a right to try and not just wait.

Please let me know if you have any further questions or concerns.

Regards,

Richard Luthmann
239-631-5957

---

**2 attachments**

📄 **Disability_Hearing_Scheduling_Letter.pdf**
3053K

📄 **Ex._A_-_Federal_Court_Judgment_Redacted.pdf**
371K

---

**Megan Amadori** <Megan_Amadori@flmp.uscourts.gov>                    Wed, Dec 14, 2022 at 11:43 AM
To: Richard L <luthmannrichard@gmail.com>

Good Afternoon,

I can see from your previous email that it might be easier to have a face to face conversation regarding some of your concerns. I will be in the office on 12/21 as well as 12/22 from 9am – 2pm both days. Since I was not the one who originally instructed you, I think it might be helpful to review your conditions together, speak about my responsibilities as the probation officer, and to better understand what expectations are in place while on supervision.

Please let me know what date and time works best for you so that I can make sure that I am available to meet with you.

Thank you,



**Megan Amadori**

United States Probation Officer

2110
First
Street,
Suite 4-
182

Fort
Myers,
Florida
33901

**Phone**
(239)
461-2104

**Mobile**
(941)
899-
4038

---

**From:** Richard L <luthmannrichard@gmail.com>
**Sent:** Wednesday, December 14, 2022 11:23 AM
**To:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Cc:** Lawrence Almagno <la@almagno-law.com>; mlepizzera@leplap.com
**Subject:** Update

**CAUTION - EXTERNAL:**

[Quoted text hidden]

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

---

**Richard L** <luthmannrichard@gmail.com>                                    Wed, Dec 14, 2022 at 12:07 PM
To: Megan Amadori <Megan_Amadori@flmp.uscourts.gov>

Officer Amadori,

I am available any time on the 21st. Let me know what time is good for you.

Regards,

Richard Luthmann

Regards,

Richard Luthmann

---

**From:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Sent:** Wednesday, December 14, 2022 11:43:45 AM
**To:** Richard L <luthmannrichard@gmail.com>
**Subject:** RE: Update

[Quoted text hidden]

---

**Megan Amadori** <Megan_Amadori@flmp.uscourts.gov>                    Wed, Dec 14, 2022 at 12:34 PM
To: Richard L <luthmannrichard@gmail.com>

Does 10am work for you?

[Quoted text hidden]

---

**Richard L** <luthmannrichard@gmail.com>                              Wed, Dec 14, 2022 at 1:13 PM
To: Megan Amadori <Megan_Amadori@flmp.uscourts.gov>

Yes. I will see you then.

Regards,

Richard Luthmann

---

**From:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Sent:** Wednesday, December 14, 2022 12:34:45 PM
[Quoted text hidden]

[Quoted text hidden]

# Re: Request to travel to Chicago, IL March 17-23

| From | luthmannrichard@gmail.com <luthmannrichard@gmail.com> |
| --- | --- |
| To | Megan Amadori<Megan_Amadori@flmp.uscourts.gov> |
| CC | 'Arthur Aidala'<arthur@aidalalaw.com>, Lawrence Almagno<la@almagno-law.com>, Stephanie A. Jones Esq, LL.M, MPH<sthea1914@gmail.com>, Frank Parlato<frankparlato@gmail.com>, nwu@nwu.org |
| Date | Wednesday, March 8th, 2023 at 10:37 AM |

Officer Amadori,

I am looking for a second chance in life. All I am facing is legal obstacles to get work.

I am an unpaid intern learning journalism. I joined the National Writers Union. I am trying.

I have good and legitimate journalism work offered by 40 plus year investigative journalist Frank Parlato, and the only legal impediment is the US Probation Office. These impediments violate the press clause of the First Amendment to the US Constitution and applicable law. I have a right to work and work as a journalist.

Can you please reconsider the decision given this information and tell me what other information you need?

The apartment belongs to Joni Moscrop.

I really want and need this job. Why can't I work?

I provided details to the Court. What additional details do you need so US Probation's decision can be reviewed by the Court, and a pretextual denial can be overruled if there is adequacy?

I am having business meetings with Indian journalists and I am meeting with a well-respected Swami on an article about comparative monastacism as stated below.

This trip has business purpose. It is not a leisure trip. This trip would be deductible under the US tax code. And this trip passes business muster under US Probation rules.

Is the problem that I want to see shows or museums while in Chicago? Museums don't charge the indigent and the show tickets are paid for. There are plenty of not for profits that also provide theater tickets for indigent people to see theater. Exposure to culture is a valid penological pursuit.

The instant you can approve my travel to Chicago and to the SDFL, I can get on payroll and sign a payment agreement. I can't do that unless I know I can get on payroll and what I will get paid.

Is the US Probation Office's position that I cannot travel for business?

Can I get a copy of the US Probation Office's written policy?

Is the US Probation Office's position contrary to 18 USC sec. 3553(a)(7)? If I can travel, I have work and I will get paid from the travel, what is the US Probation Office's problem with me earning money to make restitution payments?

Is the US Probation Office's position that I can only sit around, apply for, and collect federal disability where I have potential work that I am physically, mentally, and emotionally capable of doing, but US Probation says I am not legally able?

Will I have to be a legally disabled lie about until August 4, 2024?

Am I being retaliated against because I filed for clarification with the Court and petitioned for relief within my rights?

I need to know all these things so I have the story straight for the press (copied), of which I am a member of the National Writers Union unallowed to practice journalism.

I need to hear from you by tomorrow morning, as I will be filing an emergency application with the District Court tomorrow afternoon if I do not. I would like an opportunity to be heard and the merits of my application properly evaluated.

Again, I have nothing personal against you. I know you have superiors and a book you have to go by.

Regards,


Richard Luthmann

---

**From:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Sent:** Wednesday, March 8, 2023, 9:43 AM
**To:** Richard L <luthmannrichard@gmail.com>
**Subject:** RE: Request to travel to Chicago, IL March 17-23

Good Morning,

As previously told to you by probation regarding your request to travel to Chicago, leisure trips will not be permitted if restitution is owed and no payments have been made. In addition to this, you have not provided me with a detailed itinerary of where and who you will be visiting during your trip. In your letter to the court you do not disclosure this either.

Due to this, your request will not be approved.

Thank you,



**Megan Amadori**

United States Probation Officer

2110 First Street, Suite 4-182

Fort Myers, Florida 33901

**Phone** (239) 461-2104

**Mobile** (941) 899-4038

---

**From:** Richard L <luthmannrichard@gmail.com>
**Sent:** Tuesday, March 7, 2023 11:32 AM
**To:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Cc:** Frank Parlato <frankparlato@gmail.com>; Arthur Aidala <arthur@aidalalaw.com>; Lawrence Almagno <la@almagno-law.com>
**Subject:** Request to travel to Chicago, IL March 17-23

<mark>**CAUTION - EXTERNAL:**</mark>


Officer Amadori,

I renew my request to travel to Chicago IL March 17 to 23. Today is ten days out.

My business itinerary and schedule is attached.

I have my interview with Swami Ishatmananda tentatively scheduled for 12:30pm on Monday, March 20, pending approval.

Many people have spent money for tickets and other incidentals on the hope I will be permitted to travel.

Please let me know if I can receive approval, and either way please send me a written copy of the MDFL Probation Office's Official Rules and Policy regarding travel for my reference.

Thank you in advance for your time.

Regards,

Richard Luthmann

---

**From:** Richard L <luthmannrichard@gmail.com>
**Sent:** Thursday, March 2, 2023, 5:57 PM
**To:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Cc:** Frank Parlato <frankparlato@gmail.com>; Arthur Aidala <arthur@aidalalaw.com>; Lawrence Almagno <la@almagno-law.com>
**Subject:** Re: Follow up from field visit

All parties are copied hereto.

---

**From:** Richard L <luthmannrichard@gmail.com>
**Sent:** Thursday, March 2, 2023, 5:55 PM
**To:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Subject:** Re: Follow up from field visit

Officer Amadori,

Please see the attached that was filed with the Court today.

To clarify, the travel to Mr. Parlato is WORK TRAVEL. I am his unpaid intern right now.

Mr. Parlato wants to HIRE me. If he hires me I can begin to pay restitution immediately. I need to be able to travel to be hired. US Probation states that I cannot travel because I can't pay.

Do you understand my perception of the circular nature of the argument? If I have a job offer where I need to be able to travel to make money, and I am not allowed to travel because I can't make money to pay restitution, what do I do?

US Probation does not have an answer. US Probation has policy, but I do not believe the policy is applicable. That is why I am going to the Court.

I am formally asking US Probation to reconsider the decision. You stated in your previous email that you view travel to Mr. Parlato as "leisure travel." His intention is to put me on payroll. I would not make the trips otherwise. This is work travel.

Also, do you have a written copy of the US Probation policy so I can submit it to the Court to help in it's determination?

My Federal Disability hearing is rescheduled for May. Should I just sit on my hands until then, and thereafter?

I am trying to work.

Also, as a matter of law, Mr. Parlato is not a convicted felon as a matter of law until the imposition of judgment by the Court. That has not occurred yet.

Does US Probation have the capacity to make a common sense ruling to help me make restitution to the victims in my case?

Again, if we can resolve these issues and I can go work, I would not have to go to the Court with them. Can we resolve any issues short of Court intervention?

Again, Mr. Parlato, Mr. Almagno, and Mr. Aidala are all copied hereto. They can provide and confirm additional facts, including their willingness to hire me so long as the traditional order of the practice of law and the practice of journalism are not upended by USPO "policy."

On a personal note, I appreciate your continued hard work on my case. In the attached letter, I mentioned to the Judge it was a pleasure dealing with you.

Please let me know:

1) if USPO has official, written policy and if so, please provide me with a copy of the same or ask the US Attorney to file a copy with the Court to aid it's resolution of the outstanding issues,

2) if USPO can reconsider it's denial of allowing me to travel for work with Mr. Parlato so I can get hired, make money, pay restitution, and repay the victims.

3) if the Chicago itinerary and description filed with the Court is sufficient to approve my trip.

Regards,

Richard Luthmann

---

**From:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Sent:** Thursday, March 2, 2023, 10:04 AM
**To:** Richard L <luthmannrichard@gmail.com>
**Subject:** RE: Follow up from field visit

Good Afternoon,

As far as granting you permission to travel to Big Pine Key, and elsewhere, you have not made any payment to the restitution payment and probation's position is leisure travel cannot be granted if restitution payments have not been made. This was the reasoning to why probation did not approve the request to travel to Chicago the first time you requested it. In addition to this, if Mr. Parlato is a convicted felon, it is your responsibility to notify me of such as to get permission from probation to have contact with him.

I do see that the government requested an extension of time due to be newly assigned to your case.

As it has been the conversation before, it appears you are wishing for the Court to address the questions regarding travel and employment so if that is what you prefer and are reverting back to during our conversations, then I think it is best that you have this clarification from the Court. As I have told you in the past, probation's policy is that you need to be detailed in your requests regarding travel out of district or out of the state. At this time blanket

permission will not be provided for travel by probation due to the fact that no restitution has been paid and details of destination and names of those you will be seeing have not yet been provided.

Please let me know if any further clarification is needed regarding what probation requires for travel.

Thank you,



**Megan Amadori**
United States Probation Officer
2110 First Street, Suite 4-182
Fort Myers, Florida 33901
**Phone** (239) 461-2104
**Mobile** (941) 899-4038

---

**From:** Richard L <luthmannrichard@gmail.com>
**Sent:** Wednesday, March 1, 2023 3:31 PM
**To:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Cc:** Frank Parlato <frankparlato@gmail.com>; Lawrence Almagno <la@almagno-law.com>
**Subject:** Re: Follow up from field visit

<mark>**CAUTION - EXTERNAL:**</mark>

Officer Amadori,

Mr. Parlato's case is available on Pacer. It is in the Western District of New York. He has yet to be sentenced.

Here is his Wikipedia page:

https://en.m.wikipedia.org/wiki/Frank_Parlato_Jr.

One of the issues in the filed motion before the Court is the interplay between the First Amendment, the press clause, my right to practice journalism, and the US Probation Rules and Regulations. I expect Judge Polster Chappell to rule on this issue before Mr. Parlato is sentenced.

Mr. Parlato is copied hereto. His phone number is 305-783-7083.

Is it US Probation's position I cannot work with Mr. Parlato at his headquarters in Big Pine Key, Florida? I would like clarification going into Tuesday's hearing. The US Attorney did not respond in the time

allotted by Court Order. I have no idea what the Government or US Probation's position is on these issues.

I will prepare the proposed Chicago itinerary. Permission was specifically requested for the trip in the motion to the Court. I do not know what the Government's position is on that or any other issue.

As always, let me know if there are any questions or concerns.

Regards,

Richard Luthmann

---

**From:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Sent:** Tuesday, February 28, 2023, 12:30 PM
**To:** Richard L <luthmannrichard@gmail.com>
**Subject:** RE: Follow up from field visit

Good Afternoon,

Please refer back to my pervious email requesting the current status of Mr. Parlato's case. From what I remember in our previous conversation, Mr. Parlato was being charged with a Federal offense. If he is convicted and results in him being convicted as a felon, it is your responsibility to notify me of this and I will need to provide you with permission to have contact with him.

In regards to the request for travel to Chicago please provide me a brief itinerary of the trip as well as the names of the friends that you will be staying with. Once I have that I can review your request.

Thank you,



**Megan Amadori**
United States Probation Officer
2110 First Street, Suite 4-182
Fort Myers, Florida 33901
**Phone** (239) 461-2104
**Mobile** (941) 899-4038

**From:** Richard L <luthmannrichard@gmail.com>
**Sent:** Monday, February 27, 2023 11:52 PM
**To:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Cc:** Lawrence Almagno <la@almagno-law.com>; Frank Parlato <frankparlato@gmail.com>
**Subject:** Re: Follow up from field visit

**CAUTION - EXTERNAL:**

Officer Amadori,

Thank you for trying Mr. Almagno. I alerted him you are trying to reach him and he is copied hereto.

I have also copied Mr. Parlato. I want to request permission to go down and stay with him for a few days so we can work together side by side. He operates out of Big Pine Key, Florida.

Mr. Parlato says that once I can travel to him and collaborate AND I can be assured my journalistic sources are protected, he can change my internship over from unpaid to paid, and then hopefully to part time work.

Mr. Parlato also has individuals he would like me to see in the Indian community in Chicago. I would like to renew that request for travel from March 17 to the 23rd. Let me know what information you will need. I will be doing interviews, newsgathering, and collecting information to write several articles for Mr. Parlato's media properties. I intend to stay with friends at 5555 N Sheridan Rd, Chicago, IL
https://maps.app.goo.gl/vhXWRBbJfvddUoKM9

If you would like to speak to Mr. Parlato, his phone number is 305-783-7083.

Let me know what information you will need to approve this.

I am still pursuing my federal disability claim because of my limitations and in case legal restrictions create further limiting impossibility of employment.

Regards,

Richard Luthmann

---

**From:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Sent:** Wednesday, February 22, 2023 1:30:21 PM
**To:** Richard L <luthmannrichard@gmail.com>
**Subject:** RE: Follow up from field visit

Good Afternoon,

I have reached out to Mr. Almagno twice now via email regarding the parameters of your work for his office and have not yet received a response. As we have previously discussed, I must investigate if there are any 3rd party risks

regarding any future employment as it applies to your instant offense. Until I receive a response from Mr. Almagno I cannot approve this employment.

In relation to you unpaid internship with Mr. Frank Parlato, as we discussed previously, writing on his website does not appear to have any 3rd party risk associated with it. As with any travel you will need to make a request to me a week prior via email with your departure date and return date. You will also need to provide me with the address of where you are planning on staying during your visit. Once I review I will notify you by email regarding my response to your request. From what I remember in our previous conversation, Mr. Parlato was being charged with a Federal offense. If he is convicted and results in him being convicted as a felon, it is your responsibility to notify me of this and I will need to provide you with permission to have contact with him. That would result in me speaking with Mr. Parlato regarding your function within the company and your responsibilities.

As it goes with your request to go to Miami and "knock on doors" as it relates to finding employment, again you will need to provide me a written request via email a week before you would wish to go. Again I would need to know where you are requesting to go and who you are planning to see during your visit. Permission to travel outside the district will not be approved without such information.

Please let me know if you have any further questions or need any further clarification of what is needed,

Thank you,



**Megan Amadori**
United States Probation Officer
2110 First Street, Suite 4-182
Fort Myers, Florida 33901
**Phone** (239) 461-2104
**Mobile** (941) 899-4038

---

**From:** Richard L <luthmannrichard@gmail.com>
**Sent:** Wednesday, February 22, 2023 1:07 PM
**To:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Cc:** Lawrence Almagno <la@almagno-law.com>; Frank Parlato <frankparlato@gmail.com>
**Subject:** Re: Follow up from field visit

<mark>**CAUTION - EXTERNAL:**</mark>

Officer Amadori,

I am trying to get myself on track, as you know, despite my limitations.

Judge Weinstein's EDNY Judgment says I can work for attorneys.

The attorney is Lawrence Almagno in Rhode Island. He wants to hire me, but he has concerns inherent to the practice of law, as outlined in the pending motion before the Court.

He is trying to get clearance from the state authorities as well. Because of Federalism and Tenth Amendment issues, the states also have the power to regulate attorney conduct and how legal services are rendered. I'm sure the Government and the Probation Office have a position on this.

Mr. Almagno is copied hereto. His number is 401-255-8201.

I also have joined organized labor by being accepted into the National Writers Union. I am establishing myself as a journalist and a writer.

Frank Parlato has been a journalist and publisher for 40 years. Presently, I am an unpaid intern for him. He is showing me the ropes of the trade so I can be of value one day. Mr. Parlato operates out of Big Pine Key in Florida. Mr. Parlato has told me that if I can travel regularly to Big Pine Key, he can put me on part time payroll. He has lodging for me.

I'm sure the Government and the Probation Office also have a position on the First Amendment and the journalist's privilege, as discussed in the pending court motion.

Mr. Parlato's number is 305-783-7083. He is copied hereto. He has no problem talking to you about the proposed setup if I can get permission to work.

I am also actively working towards Federal Disability if I can't get work, or am limited to part time work. My hearing was scheduled for February 14, but it was adjourned because I was exposed to Covid-19.

I used to live in Miami and have a substantial contact network there I haven't been able for work because I can't travel there. If I can knock on doors there, I believe I could pick something appropriate up given my limitations.

Let me know what other information you need.

Regards,

Richard Luthmann

---

**From:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Sent:** Thursday, February 16, 2023 10:03:53 AM
**To:** Richard L <luthmannrichard@gmail.com>
**Subject:** RE: Follow up from field visit

Good Morning,

From the conversation it was my understanding that you had an attorney in the Southern District of FL as well as in RI, however I only see one attorney given below. Does this attorney have two office locations that you are asking to work in both locations? Or are they two separate attorneys?

Thank you,



**Megan Amadori**
United States Probation Officer
2110 First Street, Suite 4-182
Fort Myers, Florida 33901
**Phone** (239) 461-2104
**Mobile** (941) 899-4038

---

**From:** Richard L <luthmannrichard@gmail.com>
**Sent:** Friday, February 10, 2023 1:13 PM
**To:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>; Richard Luthmann <richard.luthmann@gmail.com>
**Cc:** Lawrence Almagno <la@almagno-law.com>; Lawrence Almagno <la@almagno-law.com>;
frankparlato@gmail.com
**Subject:** Re: Follow up from field visit

<mark>CAUTION - EXTERNAL:</mark>


The attorney is Lawrence Almagno - la@almagno-law.com

The Investigative Journalist is Frank Parlato - frankparlato@gmail.com

Both are copied hereto.

---

**From:** Megan Amadori <Megan_Amadori@flmp.uscourts.gov>
**Sent:** Friday, February 10, 2023 11:22:39 AM
**To:** Richard Luthmann <richard.luthmann@gmail.com>; luthmannrichard@gmail.com
<luthmannrichard@gmail.com>
**Subject:** Follow up from field visit


Good Afternoon,

I just wanted to send a follow up email from our conversation yesterday. If you could please provide me the email addresses of both attorneys that you are asking to work with so I can prepare and send them an email to determine if

the position will be acceptable to probation. Once I receive both, I will reach out sometime next week.

Thank you,



**Megan Amadori**

United States Probation Officer

2110 First Street, Suite 4-182

Fort Myers, Florida 33901

**Phone** (239) 461-2104

**Mobile** (941) 899-4038

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**20.21 KB**   1 embedded image

image001.jpg  20.21 KB

## MEMORANDUM

**By E-mail and Hand**

TO:     US Probation Office, MDFL

FROM:       Richard Luthmann
            338 Sugar Pine Lane
            Naples, FL 34108
            Tel: (239) 631-5957
            E: Richard.luthmann@gmail.com
            E: LuthmannRichard@gmail.com

DATE:   April 3, 2023

Prepared for April 3, 2023, 11:00 a.m. meeting with US Probation Officer Katrina Harmaty, USPO MDFL, Katrina_Harmaty@flmp.uscourts.gov,

Through this memorandum, I am attempting to give an update and raise concerns about my particular challenges to further aid the US Probation Office in accomplishing the valid penological goals and congressional commands embodied in 18 U.S.C. § 3553(a) and elsewhere.

## Part-Time Remote Writing Job Offers

I have two part-time remote job offers right now.

James Hufnagel, Managing Editor, Niagara Falls Reporter, 716-930-1043
- Part-time job offer as a writer for the newspaper
- Want to explore the transfer of supervision to WDNY, depending on whether I am capable of working there.

J. Gary DiLaura, FBI Special Agent (ret.), 716-628-9003
- Part-time job offer as a writer/editor/website manager for his column/newsletter

USPO Amadori previously sent me a few links to try with job leads through disability. A few of the links were broken, and the rest were not suitable because of transportation and/or disability limitations.

## Journalism Union

I joined the National Writers Union as a writer and a journalist. I am trying to develop my skills so I can make more than $15 an hour. Much of my work to date has been as an unpaid income, just to get my name out there, establish a publication history, and get "free" training and education in the writing and journalism trade.

1

**New Medical Provider**

Dr. Yamilet Oliver – Psychiatric Intake Session 4/11/2023

Dr. Oliver wants to start from the beginning with me because I have not been able to see a mental health professional since last December. Jason (forgot the last name), my nurse practitioner, left David Lawrence Center. There was trouble finding a new provider for several reasons, one of which was my Primary Physician dropping Florida Blue coverage. I finally found a new Primary Care Physician, who referred me to Florida Personal Management, and Dr. Oliver, who wants to "begin again" from the baseline and reassess my medication and treatment plan.

I have been taking my proscribed medication, but I have had big issues with anxiety and mood swings since January. I have had no nurse practitioner to speak to, and until recently, I did not have a General Physician because of a change in coverage. I only have come to learn that David Lawrence Center and the Nurse Practitioners took me off of mood stabilizers, and I haven't been proscribed them for many months. This is not mental health best practices. I have been suffering because of it.

The US Government gave me a bipolar disorder diagnosis. See the Statement of Reasons in US v. Luthmann, 17-CR-664:

> Defendant has been an abuser of alcohol and cocaine. PSR ¶ 99; Def. Sent. Mem. 4-5. He reports drinking 1.75 liters of scotch each day throughout 2017 and spending "a couple of hundred [dollars]" on cocaine each week. PSR ¶ 99. The drug and alcohol use appears to have compounded Luthmann's existing mental health issues. He was diagnosed with anxiety and depression in 2012, and prescribed drugs which interact poorly with alcohol and drugs. PSR ¶ 96; Def. Sent. Mem. 4.
>
> His mental health problems persisted after his arrest for the instant offenses. While released on bail in April 2018, Defendant admitted himself to a hospital because he believed he has having a nervous breakdown resulting from his marital problems. PSR ¶ 97. He was diagnosed with Bipolar I Disorder and hospitalized for 11 days. Id. Following his return to detention, this court ordered Luthmann to undergo a forensic mental health evaluation for a determination of his competency to stand trial. PSR1198. The evaluator concluded that a more appropriate diagnosis for Defendant is Bipolar II Disorder. Id. He spent several months at a mental health treatment facility for purposes of this evaluation.

I have just come to learn that mood stabilizers and a bipolar diagnosis are not a good thing. Hopefully, this will all be rectified next week when I see Dr. Oliver.

Earlier in my supervision, I spoke regularly with Casey Portner about my issues, and he was a big help. I believe that if I was still able to speak with someone, this medical issue could have been caught months ago. USPO Officer Amber Jean discontinued my sessions with Casey Portner, after USPO Monica Holsteen left. It was Officer Holsteen who previously identified that I benefitted from the help that my sessions with Casey Portner afforded.

**Disability Case**

Lawrence Almagno, Jr., Attorney, 401-946-4529

The hearing is now scheduled for May. However, it will likely be adjourned because Attorney Almagno is getting an updated report from a vocational expert to show my working limitations. The District Court's recent opinion confirms important and substantial legal limitations on my employment in addition to the existing medical, psychological, and emotional limitations. The vocational expert's report will cover all of this.

I have to help with this case. If I can get a disability award, I am entitled to $733 a month plus back-payment since my April 2021 application ($17,592 to date), less attorneys and expert fees and costs.

**Sick Grandmother  -Primary Caretaker**

My grandmother is currently in and out of the hospital and is ill. She is 90 years old. She has masses in her colon that may be malignant. I am one of her primary caretakers, along with my mother and my stepfather.

**Knights of Columbus, Altar Service, and Catholic Faith**

I joined the Knights of Columbus, and I have trained as an altar server at Saint Williams Roman Catholic Church in Naples, FL. See the attached. I regularly attend mass and church events.

**Sobriety**

I have endeavored to live a sober lifestyle, and I attend AA meetings.

**Pending Motions on NYS Case**

I have a videographic conference scheduled for tomorrow, April 4, 2023, in my New York case, People v. Luthmann. There is a pending motion to set aside the indictment based upon unprecedented prosecutorial misconduct and perjury by the Special Prosecutor, a sitting NYS Supreme Court Justice, and others. See the attached.

3

There may be several appearances in the case, including in-court hearings. I am seeking to represent myself, and I will need to be present in the New York State court to conduct the hearing, confront and question witnesses, offer evidence, etc.

If the indictment is dismissed, the case is over. If the conviction is overturned, I go back to pre-trial status, and I have to defend the case.

Because I am trying to clear my name and represent myself, this case is taking substantial time and energy every week, and I already have limitations.

There is also a pending NYS Appeal that I may have to perfect, and I am proceeding *Pro Se* in that case, which will also take substantial time and effort.

## Collections Cases

I owe the US Government over $600,000 in restitution and close to $1 million, all debts considered. I have over half a million dollars in uncollected legal billables that can be used to satisfy these debts. I file the first two of these cases – Luthmann et al v. Hanks and Luthmann et al. v. Castorina. The US Government gets the proceeds of these cases. See the attached.

Attorney Lawrence Almagno, Jr. – 401-946-4529 - is representing me on these cases.

The problem is, that substantial work needs to be done on these cases to get them ready to be put into suit. They all grow stale THIS YEAR, and I lose the right to sue because of the statute of limitations.

Attorney Almagno wanted me to work for him to get these cases together so I could put them into suit. USPO Amadori said that there were US Probation policies that said I couldn't work for him, even though Judge Weinstein's Judgement of Conviction specifically said I could work as an attorney but not for attorneys.

Judge Polster-Chappell's recent Decision didn't address these issues at all. I had hoped I would have been given an oral argument to explain all these nuances.
The best chance that the victims of my case and the US Federal Government and its taxpayers have in getting made whole is through these earned and uncollected billables. I need to work on them, or I lose the right to collect. This is a far better use of my time in paying the US Government and my victims back than working any $ 15-an-hour wage job, which will ultimately ensure that the US Government, its taxpayers, and my victims will never get paid back.

I would ask for permission to work for Mr. Almagno, solely on my own cases, so I can make the US Government, its taxpayers, and the victims in my case whole, consonant with 18 U.S.C. § 3553(a). If there are specific US Probation Policies and Procedures that are problematic, please give me written copies of them. I want to make this work, but Government action precluding me from collecting monies that would satisfy my debts when Judge Weinstein said that I could do this

4

work constitutes a taking under the Fifth and Fourteen Amendments. Talk to the US Attorney on this. They will tell you that I have an argument here.

Please allow me to help collect the debts that I am owed so that I can pay back restitution. At $15 an hour, it will take me 40,000 hours to pay back just the restitution, with no living expenses factored in. That would be approximately 770 weeks or almost 15 years. Assuming I had a 40 hour week at $15 an hour and was paid $600 weekly, the statutory formula excludes the first $225 from collection. Of the remaining $375, twenty (20) percent is subject to Government attachment according to the gross income level. That number becomes approximately $75.

With a $ 75-a-week amount going to the Government, it will take me approximately 8,000 weeks or 154 years to pay back the Government, looking only to wage-paying jobs, and not developing any education or craft to develop my skills to command a higher wage.

## Law of the Case and Sentencing Disparity

The docket from the US v. Luthmann EDNY case is fully included in the MDFL docket and is part of the case. The law of the case doctrine fully applies.

In addition to the Judgement of Conviction, where I am specifically allowed to work for attorneys, the following is squarely relevant:

| 05/21/2018 | 116 | Minute Entry for proceedings held before Magistrate Judge Ramon E. Reyes, Jr: Pleading as to Michael Beck held on 5/21/2018. Michael Beck (3) withdraws not guilty plea and enters a GUILTY PLEA to Counts 7, 8, 9, 10 and 11. Order of bond conditions continued for deft. Deft's counsel is directed to submit the requested bond modification by 5/22/2018. (Sentencing set for 9/13/2018 at 10:30 AM in Courtroom 10B South before Judge Jack B. Weinstein.) (FTR Log # 5:09:14-5:39:54.) (Barrett, C) (Entered: 05/23/2018) |

My co-defendant Michael Beck pleaded guilty to kidnapping charges enhanced by the use of a firearm in the commission of the crime. Beck was allowed the travel allowances in the orders contained herein, many AFTER his admission to his commission of a crime of violence using a firearm. He also received only two (2) years of supervision from the Court.

| 07/09/2021 | 295 | JUDGMENT as to George Padula, III (2), Count(s) 1, 10, 11, 2, 3, 3s, 4, 4s, 5s, 6s, 7, 8, 8s, 9, Dismissed on Motion of the United States; Count(s) 1s, 2s, 7s, Imprisonment: Count 1: 42 months; Count 7: 42 months to run concurrently to the term imposed in Count 1; Count 2: 24 months, to run consecutively to the terms imposed in Counts 1 and 7; Supervised Release with Special Conditions: 2 years; Special Assessment: $300; Restitution: $559,911.26; Forfeiture Order. The Court recommends |

| | | designation to the MDC and placement in the CADRE Program. So Ordered by Judge Raymond J. Dearie on 6/28/2021. (Attachments: # 1 Forfeiture Order) (Lee, Tiffeny) (Entered: 07/09/2021) |
|---|---|---|

My other co-defendant, George Padula, III, also only received two (2) years of supervision from the Court, having been convicted of a crime of violence enhanced by the use of a firearm.

I never used a firearm and did not commit a crime of violence.

Judge Polster-Chappell clearly erred in her recent ruling in this and other important areas, because the Court does not mention or consider the law of the case doctrine, the application of the law of the jurisdiction of judgment (EDNY, Second Circuit), or sentencing disparity, and as such, I am considering a motion for reconsideration and, if warranted, an appeal to the Eleventh Circuit. See the attached.

## Conclusion

I look forward to continuing to work with US Probation to further the purposes of my supervision, including but not limited to the penological goals and congressional commands embodied in 18 U.S.C. § 3553(a).

The foregoing is all true to the best of my knowledge and belief.

Dated: Naples, Florida
April 3, 2023                                          /S/ Richard Luthmann
                                                        Richard Luthmann

CC:    File
        Lawrence P. Almagno, Jr., Esq.
        Mario Romano, Esq.
        Stephanie Jones, Esq.
        USPO Supervisor Officer Scott Fanelli (scott_fanelli@flmp.uscourts.gov)

6






The Law Office of
James M. Branden
551 Fifth Avenue
New York, New York 10176
Tel. 212-286-0173
Fax 212-286-0495

May 8, 2018

Hon. Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Michael Beck
      Cr. Docket No. 17-664 (JBW)

Dear Judge Weinstein:

I represent Mr. Beck in the above-referenced matter.   In early
January 2018, Mr. Beck was released pending trial on a fully secured bond
and the condition of, *inter alia*, home confinement.   Over the past five
months, he has twice been permitted to leave his residence for social
events, specifically, a Broadway show and a cousin's wedding.   He enjoyed
both events without incident.

Mr. Beck will turn 60 on Tuesday, May 15, 2018.   His wife, Phyllis,
a registered nurse at NYU Hospital, and a co-signer on the bond, would
like to take him out to dinner at a restaurant on Staten Island (where
they live) to celebrate the milestone.   She wants to invite family
members as well, including all of the remaining co-signers on the bond.
In order to attend, Mr. Beck will need to leave the residence at 5:30 and
he will return no later than 10:30 p.m.

In an email yesterday, Mr. Beck's Pretrial Services Officer, USPSO
Jeannine Quijije, opposed this request, but she did not provide an
explanation.   The government did not take a position but it has in the
past deferred to Pretrial Services.

Especially in light of the fact that Mr. Beck has been compliant
with all terms of his release to date and because this is a "big" day
worth celebrating, I request that the condition of home confinement be
released for 5 hours on May 15, 2018, so that he can attend a birthday
dinner out at a local restaurant.

Respectfully submitted,

_____/s/_____
James M. Branden

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAY 15 2018 ☆

BROOKLYN OFFICE

The Law Office of
James M. Branden
551 Fifth Avenue
New York, New York 10176
Tel. 212-286-0173
Fax 212-286-0495

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 1 5 2018 ☆

BROOKLYN OFFICE

June 13, 2018

Hon. Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*approved
So ordered
[signature]
6/14/18*

        Re:   United States v. Michael Beck
              Cr. Docket No. 17-664 (JBW)

Dear Judge Weinstein:

        I represent Mr. Beck in the above-referenced matter. As part of
the conditions of pretrial release Mr. Beck, who has pleaded guilty and
is awaiting sentencing, has been confined to his residence with
electronic monitoring.

        On June 17, 2018, Mr. Beck's cousin, John Linane, is hosting a
Father's Day Party, at the VFW Post, 18 Davern Place, Hazlet, New
Jersey. The Party starts at 3 and ends at 9 p.m. Mr. Beck would like
to attend the Party, which requires a temporary modification of his
bail conditions so that he may leave his residence at 1:30 and return
at 10:30 p.m. Mr. Beck's entire family will be present, including his
parents, both in their 80s, and all of the co-signers on the release
bond.

        Mr. Beck was arrested in this matter in December 2017 and
released in early January 2018. Since then, this Court has twice
permitted him to attend social events (a wedding and a Broadway show).
He attended those events without incident and he has been otherwise
fully compliant with release conditions to date.

        The government consents to this application. Though I emailed
Pretrial Services about this application earlier today, I have not yet
received a response to the email.

        It is therefore requested that Mr. Beck be permitted to attend
the Father's Day Party and leave his residence this Sunday from 1:30
to 10:30 p.m.

                        Respectfully submitted,


                        James M. Branden

The Law Office of
James M. Branden
551 Fifth Avenue
New York, New York 10176
Tel. 212-286-0173
Fax 212-286-0495

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 1 3 2018 ☆

BROOKLYN OFFICE

September 5, 2018

Hon. Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*approved*
*[signature]*
*9/12/18*

Re:   United States v. Michael Beck
      Cr. Docket No. 17-664 (JBW)

Dear Judge Weinstein:

I represent Mr. Beck in the above-referenced matter. As part of
the conditions of pretrial release, Mr. Beck, who has pleaded guilty
and is awaiting sentencing, is confined to his residence and subject
to electronic monitoring with certain exceptions, including permission
to work Monday through Saturday and to attend church.

On Sunday, September 9, 2018, Mr. Beck has a work event. He is
providing refreshments to a charity event at the Amazon Distribution
Center in Obbinsville, New Jersey. He will drive a beverage truck to
and from the event, which takes place from 2 to 7:00 p.m. As such, he
will need to leave from church services and drive to the event and
return to his residence by 10:30 p.m.

In addition, on September 27, 2018, Mr. Beck has a doctor visit
on Staten Island at 4:00 p.m. He may not return to his residence until
6:30 that evening.

I have conferred with the government and pretrial services about
both events. They have no objection to this Sunday's work event. As
to the doctor visit, pretrial services only requests that Mr. Beck
provide the particulars so that the visit can be confirmed. Mr. Beck
will do so promptly.

For the foregoing reasons, Mr. Beck requests permission to attend
the work event and see his doctor as set forth herein.

Respectfully submitted,

*[signature]*

James M. Branden

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 0 2 2019  ★

**BROOKLYN OFFICE**

The Law Office of
James M. Branden
551 Fifth Avenue
New York, New York 10176
Tel. 212-286-0173
Fax 212-286-0495

June 24, 2019

Hon. Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:  United States v. Michael Beck
            Cr. Docket No. 17-664 (JBW)

Dear Judge Weinstein:

    I represent Mr. Beck in the above-referenced matter. Mr. Beck
was arrested in December 2017 and released in early January 2018.
He surrendered his passport upon arrest. When first released he
was subject to home detention and travel within New York City only.
Last fall, the home confinement condition was removed and he was
granted permission to travel freely in NY, NJ and PA.

    Mr. Beck would like to travel with his wife, three kids, their
spouses, and two grandchildren to the Bahamas from July 13 through
18, 2019. In order to do so, he will need Pretrial Services to
give him his passport, which he will return promptly upon his
return to the New York area.

    Mr. Beck has abided by all condition of release to date. I
make this request with the consent of USPSO Celine Ferguson and
AUSA James McDonald. The suretors, all family, also consent.

    As such, on consent, it is requested that Mr. Beck be
permitted to travel to Nassau, Bahamas with family from July 13-18,
2019 and that his passport be returned to him for that purpose. In
the event this request is granted, Mr. Beck will forward his flight
and lodging information immediately to USPSO Ferguson.

                         Respectfully submitted,


                         James M. Branden

*[Handwritten note in right margin: Permission granted. Mr. Beck shall report to Probation within 4 days of his return to United States and surrender his passport. Defendant as directed by probation. So ordered. J. Weinstein 6/28/19]*

FILED
U.S.___ IN CLERK'S OF___ .Y.

☆  APR 17 2019  ★

BROOKLYN OFFICE.

The Law Office of
James M. Branden
551 Fifth Avenue
New York, New York 10176
Tel. 212-286-0173
Fax 212-286-0495

April 9, 2019

Permission
Granted so
ordered
JBWeinstein
4/11/19

Hon. Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Michael Beck
      Cr. Docket No. 17-664 (JBW)

Dear Judge Weinstein:

I represent Mr. Beck in the above-referenced matter. Mr. Beck was arrested in December 2017 and released in early January 2018. When first released he was subject to home detention and travel within New York City only. Last fall, the home confinement condition was removed and he was granted permission to travel freely in NY, NJ and PA.

Mr. Beck has parents in their 80s. They live in Staten Island but own a time share in Ft. Lauderdale, Florida. They visit Ft. Lauderdale a week or two a year, mostly to check up on the place. They have asked that Mr. Beck and his wife escort them on a trip later this month, from April 28 to May 4. USPSO Celine Ferguson approves of the travel request. AUSA Moira Penza deferred to USPSO Ferguson. The suretors, all family, also-consent.

As such, on consent, it is requested that Mr. Beck be permitted to travel to Florida, with his wife and parents from April 28 to May 4.

Respectfully submitted,

James M. Branden

**Additional Orders as to USA v. Luthmann and Michael Beck**

| 04/15/2021 | ELECTRONIC ORDER as to Michael Beck re 275 Consent Letter from defense counsel requesting bond modification to permit defendant to travel to Florida April 22, 2021 to April 27, 2021. Application Granted. Conditions of release are temporarily modified, defendant is permitted to travel to Florida as requested. Defendant is directed to submit to his Pre Trial Officer a written detailed itinerary, not later than 3:00pm on April 19, 2021. So Ordered by Judge Raymond J. Dearie on 4/15/2021. (Mulqueen, Ellen) (Entered: 04/15/2021) |
|---|---|

| 05/06/2021 | ELECTRONIC ORDER as to Michael Beck re 286 Letter from defense counsel requesting permanent modification of bond to include travel to Florida. The Court confirmed with government counsel and Pre Trial Services that they have no objection to modifying the conditions of release to include travel to Florida. Accordingly, the bond is hereby modified to include travel to Florida. So Ordered by Judge Raymond J. Dearie on 5/6/2021. (Mulqueen, Ellen) (Entered: 05/06/2021) |
|---|---|



**Richard A. Luthmann**
338 Sugar Pine Lane
Naples, FL 34108
Tel: (239) 631-5957
richard.luthmann@gmail.com

<u>Via Certified U.S. Mail RRR with Certificate of Mailing</u>

Personal and Confidential to Addressee

October 27, 2022

Hon. Ronald Castorina, Jr.
Justice of the Supreme Court
26 Central Avenue
Staten Island, NY 10301

RE:    Outstanding Account with Luthmann Law Firm, PLLC

Dear Ronald:

I am winding up the affairs of the Luthmann Law Firm, PLLC ("LLF") on behalf of its assignees, successors in interests, and creditors, the largest of which is the United States Government.  This communication is an attempt to collect on debts Ronald Castorina, Jr. owes to LLF.  All the work performed and the related costs and expenditures were authorized by Ronald Castorina, Jr.

In accordance with jurisdictional requirements, please see the enclosed notices under Part 137 of the Rules of the Chief Administrator.  Further, please note that LLF and I are represented by counsel, and all communications should be had with Lawrence P. Almagno, Jr., Esq. of Almagno Law, Inc.  His details are included in the enclosed package. I implore you to reach out to my lawyers before this gets messy.  I further implore you not to try to contact me or have others contact me on your behalf.  Please note that I am making a record of any and all conversations and communications related to this matter. Moreover, please do not engage in any further communications that may be construed as witness tampering.  Upon information and belief, you have already been acting very poorly and dishonestly with potential witnesses. I have directed my attorneys that this tampering must be fully explored if this matter proceeds to litigation.

You owe LLF substantial fees, costs, and expenses.  If it were up to Luthmann alone, Luthmann would let sleeping dogs lie.  Alas, it's not up to Luthmann but to the LLF and its successors, assigns, and creditors, particularly the United States Government. Thank the McMahons, the Clintons, the Vitalianos, and Chuck Schumer the next time you see them.

1

<u>Crisis Management and Political "Fixing"</u>

Luthmann spent many hours advising you and "fixing" things for you.   When Luthmann went away, you thought you could skip out on your bill.  But the law does not allow such conduct.  Please see the letter from my attorneys, ALMAGNO LAW, INC., to that effect, attached as **EXHIBIT "A"** ("Lawyer Letter").  Ron, you're a judge.  You should know better.

I don't want to get into it. Still, you are going to have much explaining to do both in this fee collection case and in *People v. Luthmann*, once I win my appeal pending in the Supreme Court Appellate Division: Second Department (unless, of course, you, the McMahons, or your other minions try to "fix" things.)  To quote the unparalleled eloquence of Mr. Dennis Quirk:

- You F-ING LIED TO ME.
- You're A RAT.
- You're A LOWLIFE RAT.
- You're a LOWLIFE SCUMBAG.
- You're A SHITHEAD.

The Quirk-isms aside, you have big problems with perjury and lying under oath that will come out in this case.  I don't know how you will be able to continue to be a New York Supreme Court Justice.

<u>Perjury and Lying Under Oath</u>

You testified before a Grand Jury convened by Richmond County Special District Attorney Eric A. Nelson beginning on August 1, 2018.  In that testimony, you perjured yourself innumerable times.  A copy of the Transcript is attached as **"EXHIBIT "B"** (the "Transcript").  I have taken the liberty of highlighting some (for old times' sake) that you can give to your criminal attorneys so they can save your ass.

The statements that you made are demonstrably false.   The Grand Jury subpoenaed my telephone records.  I have enclosed the records between July 20, 2017, and September 10, 2017.  A copy of the Phone Records is attached as **"EXHIBIT "C"** (the "Phone Records").  On those thirty-six pages of records alone (spanning about a month and a half), you and I spoke over the phone **dozens of times**.  And you called me on many occasions.  You and I talked more than I did with my wife at the time.

In your Grand Jury Testimony, you said:

2

```
 4      Q.   And how do you know Mr. Luthmann?

 5      A.   Mr. Luthmann is, I believe currently and was, a member

 6   of the New York State bar.  He was an attorney, and so I knew of

 7   him from just appearing in the courts; you know, going to bar

 8   association functions where he would regularly be.

 9           He was hard to -- to miss and hard to not -- he was

10   hard to miss because he was always very -- a very boisterous

11   guy, a very big personality, and so he was somebody that I would

12   typically like to avoid.
```

How do you have dozens of conversations in a 45-day period with "somebody that [you] would typically like to avoid"?  If this were true, why would you call me?  And why would you be on the phone with me for extended periods of time on numerous occasions?  (8/1, 10:50AM - 15 minutes; 8/17, 3:28PM - 11 minutes; 8/21 7:27PM - 37 minutes).  When you were in private practice, did you bill clients for phone calls?

Additionally, it won't take a Former FBI Agent from the Organized Crime Task Force to decipher what we were doing from the phone records.  You notice that many of our calls come in short 1-minute or less communications, and many of them come in pairs.  We were operating like members of La Cosa Nostra concerning what we said on the phone because when there was a call, it was part of a scheme to evade detection and records.  The first call would set up a meeting place between you and me.  Then, a little bit later, there would be a call saying I was at the meeting place.  In between, I sometimes called my former driver, Larry Gilder, to come and pick me up and bring me to our meetings.  You are a former prosecutor.  This evidence would stand up in Federal Court as part of a warrant application for drug dealers or organized crime members:

- 8/1 10:50AM (set up) - 1:19PM (arrival)
- 8/4 12:07PM (set up) - 5:31PM (arrival)
- 8/7 6:06PM / 6:09PM (set up) - 6:58PM (arrival)
- 8/31 10:48AM / 12:18PM (set up) - 5:03PM (arrival)
- 9/1 12:19PM (set up) - 1:09PM (arrival)
- 9/10 1:13PM (set up) - 2:55PM (arrival)

Larry Gilder drove me to every one of these meetings.  If you look at the records on 9/10, I called him at 2:09 PM to pull the car around so I could get to the meeting.

This evidence, which is part of the Grand Jury record, establishes, at the very least, that you and I had a business relationship that was much more than what you stated in your sworn testimony:

3

> 3    · But any communications that he had with me were
> 4    unwanted communications, and as an elected official, at times
> 5    people contact you that probably you don't want them to, but you
> 6    have to kind of placate them.
> 7         And we have crazy people that contact me.  There are
> 8    people that are just, you know, complainers.  There are all
> 9    kinds of people when you're in the public eye.  They will
> 10   gravitate to you for whatever reason and they will seek you out.

You were trying to "placate" me.  I like that.  Maybe I'll call Joe Tacopina and tell him to use the "placate" defense in his next Organized Crime trial in Federal Court when the US Attorneys introduce phone records.  I wonder how that would go.

In reality, we had an attorney-client relationship, and I was your "fixer."  The reality is squarely at odds with your sworn testimony:

> 5    He'd be somebody that was looking to create problems,
> 6    issues.  He -- he kind of enjoyed this type of situation.

I didn't create problems.  I worked to "fix" your problems.  And when the Democrat Party threw me to the FEDS, you ran away and threw me under the bus with them.  You are a disloyal piece of shit. In your sworn testimony, you said:

> 8    He was posting publicly terrible things about
> 9    Mr. Gulino that was clear -- I think everybody saw it.  He was
> 10   calling him a lizard; just such -- it was juvenile, ridiculous
> 11   stuff.
> 12        And I also recall him posting pictures of him posing
> 13   with a cardboard cutout of Mr. Gulino as well.

But behind closed doors, in Facebook Messenger communications that are part of the Grand Jury record, attached as **EXHIBIT "D"** (the "Borelli conversation"), you and NYC Council Minority Leader Joe Borelli get a real kick out of my "juvenile, ridiculous stuff." Borelli says: "[w]e were talking about it…we all loved it."

Ron, you further testified about our Private Messenger conversations, attached as **EXHIBIT "E"** (the "Castornia Messenger conversations").  You stated under oath:

4

> 14          And then on the private messenger side that wasn't
> 15    public, he would send all kinds of lewd, really disgusting
> 16    pornographic-in-nature-at-times, racially-biased-at-times images
> 17    that, you know, I would just kind of ignore or placate in some
> 18    way, and, you know, just to -- to get this person away.
> 19          I don't want to deal with this person, I don't want to
> 20    talk to this person, I want nothing do with this person, but
> 21    this person just keeps coming back.

But in the Messenger Conversations, you appear to be enjoying my "side-show," particularly when I called Steve Richman a "Jew-rat":



However, I appear to have come close to the mark with the remainder, as Steve Richman has been proven to be a pervert and a "human cum-stain" on the NYC Board of Elections.

In your sworn Grand Jury testimony, you alleged that you had no attorney-client relationship with me, and I had no attorney-client relationship with you:

```
3            Mr. Castorina, in terms of the attorney-client
4    privilege, in this document number ten he refers to you as his
5    lawyer.
6            Were you ever counsel to Mr. Luthmann in any matter
7    civil or criminal?
8        A.   I have never been Mr. Luthmann's attorney and
9    Mr. Luthmann has never been my attorney.
10       Q.   So, therefore, any reference to you and the term
11   "attorney-client privilege" is not accurate, is that correct?
12       A.   It's completely ludicrous.
```

So Ron, what were we doing at our meetings together if there was no attorney-client relationship?  Were we there to jerk off?  Or maybe we played a game to see who could "placate" the other one first?  The attached Phone Records don't lie; they get this matter past a motion to dismiss and into discovery.

Moreover, you know very well how much I loved to make "tapes."  I loved making tapes almost as much as Richard Nixon.  What do you think is going to get released when we get into discovery?  Everyone knows I have MCMAHON TAPES about how WARRANTS GOT SENT TO CERTAIN JUDGES.  Don't you think I have CASTORINA TAPES too?  And what I didn't get, I can assure you the FEDS have.  They have hours and hours of surveillance.  But it's not time for show-and-tell just yet.

The worst part of this whole thing is what a disloyal price of crap you are.  Eric Nelson is a corrupt prosecutor who has aided and abetted the unauthorized practice of law by getting bad advice from a disbarred attorney who went to Federal Prison on how to violate the Grand Jury Clause of the Sixth Amendment.  See the attached EXHIBIT "F."  If what you said is true and I'm crazy, and there wasn't any business relationship between us, then all of my "offensive" social media activity was purely political activity protected by the First Amendment.  Eric Nelson failed to mention anything about the First Amendment to the Grand Jury in violation of my rights under the United States and New York State Constitutions, thus rendering the indictment fatally defective and a legal nullity.  Five years have passed, and the statute has run, so Eric Nelson can't return to the Grand Jury.

Suppose what Luthmann says is true, and there was a business relationship between us.  You are an unindicted co-conspirator in my "heinous" violations of the First Amendment.  The statute of limitations has run on the underlying crimes, but there is still plenty of time to indict you for your perjury before the Grand Jury.  So, when we get to the depositions, be prepared to be asked whether you got your current judgeship in exchange for throwing me to the wolves.  Or so that Eric Nelson didn't indict you?  Or so that Mike McMahon could clean up his witch of a wife's mess in systematically denying criminal defendants their constitutional rights to bolster her husband's prosecution stats?  You're a Public Official.  What do you say to the woman who gets mugged or the father whose son died of a fentanyl overdose because there was just not enough money in the budget for those extra cops or those extra doses of naloxone?  The Eric Nelson-Mike McMahon

6

vanity case against me has cost the NYC Taxpayers over $1 million and counting.  And all they can prove is that I used "Cum-Shot Editor" to make a few dick pics with some politicians.  Great job.

You know your involvement with me.  And some real shit is about to get strewn across the public square.  You testified:

```
 6      Is that what it states on the second page in the fourth

 7   paragraph of this document?

 8      A.   I believe so.  And that whole notion of dirty trick is

 9   some -- it's some political -- political thing that he refers

10   to, I believe, that has something to do with Roger Stone and

11   this notion of dirty tricks or some -- that -- that anything

12   goes in the political arena, that -- that there's no morals or

13   ethics.  That's what I believe he's referring to.
```

Roger Stone.  Dirty tricks.  No morals or ethics.  When you threw me under the bus, I knew immediately that you were an asshole.  But it took me until very recently – when I read the attached transcripts - to realize that you and your political butt-buddy Joe Borelli are fucking RINOs.  Remember the Grand Jury question about what I said:

```
15      Q.   And then in the sixth paragraph he states, quote:

16           I am the guilty party.  I'm guilty of being a

17   prick and I'm guilty of being a friend.  Anyone who knows me

18   I am overzealous at both.  At times I am also vulgar and

19   crass.

20           But Ron Castorina is a better person than I am.

21   And he is a good friend.  He could have thrown me under the

22   bus and even I told him to but he wouldn't.  Ron is loyal

23   and a man of principle.

24   Is that what it states in this document, Mr. Castorina?
```

Do you remember how you responded?:

```
 7      A.   I guess Mr. Luthmann can be right sometimes.  You

 8   know, I am loyal.  I am a man of principle.
```

Newsflash, Ron – you are not loyal or principled.  In the words of DENNIS QUIRK: YOU'RE A SHITHEAD.

Ron, you're in the box.  And I wish you the best in finding someone willing to help you "fix" all these new problems.  Call my lawyer to resolve this.  Or not.  It's no skin off my ass either way.

Take care of yourself,

Richard A. Luthmann

CC:     File
        Lawrence P. Almagno, Jr., Esq.

ENCL:   September 1, 2022, Letter from Lawrence P. Almagno, Jr., Esq.
        Transcript of Grand Jury Testimony
        Luthmann's Phone Records
        Miscellaneous Exhibits
        Part 137 Notices

# EXHIBIT A

# Almagno Law, Inc.

Lawrence P. Almagno Jr., Esq
Licensed in RI NY & MA

**VIA U.S. Mail**

**Advance copy sent to: richard.luthmann@gmail.com**

September 1, 2022

Luthmann Law Firm, PLLC
c/o Almagno Law, Inc.
42 W. 43rd Street, Ste. 169
New York, NY 10036

Richard Luthmann
338 Sugar Pine Lane
Naples, FL 34108

      **Re:**   **Debt Collection – Luthmann Law Firm, PLLC ("LLF")**
              **Richard Luthmann as successor to LLF and for the benefit**
              **of the successors, assigns, and creditors of LLF**

Dear Mr. Luthmann:

    You have engaged Almagno Law, Inc. (the "Law Firm") to prosecute collections matters against former clients of the now defunct Luthmann Law Firm, PLLC ("LLF") on behalf of the entity as a successor in interest. You have several creditors, the most significant of which is the United States Government.

    This Law Firm has reviewed the underlying paperwork and we are of the opinion that you have several valid claims against former LLF clients.

**Breach of Contract**

    Although not required in New York, it was standard practice of the LLF to have signed engagement letters on file for its clients. As such, given the billing records and other evidence, you have claims for breach of contract against former LLF clients with outstanding accounts. There was an agreement between LLF and the former client; LLF performed under the agreement; the former client failed to make payment; and LLF has suffered damages as a result. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181-82 (2011); *Heijung Park v. Nam*

---

**Rhode Island Office**
10 Rangeley Road
Cranston, Rhode Island 02920

**New York Office**
43 W 43rd St. Ste 169
New York, NY 10036

Tel: (401) 946-4529 | Fax: (401) 464-4529
Email: LA@Almagno-Law.com

**Luthmann Law Firm, PLLC – Collections f/b/o creditors including the United States Government**

*Young Kim*, 205 A.D. 3d 429, 438 (1st Dep't 2022); *Core Dev. Grp. LLC v. Spaho*, 199 A.D. 3d 447, 449 (1st Dep't 2021); *Alloy Advisory, LLC v. 503 West 33rd Street Associates, Inc*., 195 A.D.3d 436, 144 N.Y.S.3d 854 (1st Dept. 2021); *Markov v. Katt*, 176 A.D. 3d 401, 401-02 (1st Dep't 2019).

Additionally, the contracts between the LLF and its former clients are all implied in fact. The case files as well as court filings and other materials show conduct by the parties consonant with the existence of a contract. A contract implied in fact rests upon the conduct of the parties and not their verbal or written words. *Parsa v. State*, 64 N.Y.2d 143, 148 (1984). An implied in fact contract requires: Mutual assent; Consideration; Legal capacity; and Legal subject matter. *See Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999); *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503-4 (1975); *Mirchel v. R.M.J. Sec. Corp.*, 205 A.D.2d 388, 390 (1st Dep't 1994). All of these elements are present here.

## Account Stated

"Under federal and New York law, an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *See Nat'l Econ. Research Assocs. v. Purolite "C" Corp.*, No. 08 Civ. 7600(PGG), 2011 U.S. Dist. LEXIS 24458, at *6 (S.D.N.Y March 10, 2011); *see also Interman Indus. Prods.*, Ltd. v. R. S. M. Electron Power, Inc., 37 N.Y.2d 151, 153 (1975); *Ryan Graphics, Inc. v. Bailin*, 39 A.D.3d 249, 250 (1st Dep't 2007). LLF has valid claims for an account stated against all former LLF clients.

## Unjust Enrichment

Similarly, LLF has claims for Unjust Enrichment. The former LLF clients benefitted at LLF's expense, and equity and good conscience require restitution. *Columbia Mem'l Hosp. v. Hinds*, 2022 WL 1572408, *6 (2022); *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 (2018); *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012).

## Statute of Limitations

Under C.P.L.R. § 213(2), the statute of limitations of contracts, debt collection, and accounts stated is six (6) years. All of the former LLF client accounts were on the books as of December 15, 2017, so we are will within the applicable statutory period.

**Luthmann Law Firm, PLLC – Collections f/b/o creditors including the United States Government**

Additionally, under C.P.L.R. § 214(6), the statute of limitations for legal malpractice is three (3) years. Richard Luthmann was legally disabled and unable to practice law on and after December 15, 2017. The statutory time to interpose a legal malpractice claim or counterclaim has long passed. Also, unlike other former LLF clients who made claims against Richard Luthmann and the LLF, none of these clients have had any issues with the services rendered.

## Part 137 Notices

A legal precondition to the collection of legal fees earned in the State of New York is compliance with Part 137 of the Rules of the Chief Administrator. The law requires that you must send a Notice of Client's Right to Arbitrate a Dispute Over Attorney's Fees to each and every client who has an outstanding account and from whom you wish to collect.

Accordingly, you must provide written notice to all former clients of LLF of their right to elect to resolve the dispute by arbitration under Part 137. You must also provide said former LLF clients with a copy of the written instructions and procedures of the approved local bar association-sponsored fee dispute resolution program ("Local Program") having jurisdiction over your dispute. Since the business address of the LLF for the winding up of its affairs in New York County, the Local Program is administered by the New York County Lawyers Association. You must also provide former LLF clients with the "Request for Fee Arbitration" form and advise that said former LLF clients must file their Request for Fee Arbitration with the Local Program within 30 days of the receipt of the notice. Thereafter, you will be free to bring a lawsuit in court to seek to obtain payment of the fee.

It is advisable that you send these notices by Registered U.S. Mail and U.S. Mail with a Certificate of Mailing. In this way, you will be able to prove the delivery of the notice by the actual return of the Registered Mail and/or by the presumption of regularity of the delivery of the U.S. Mails.

Please refrain from any further contact with former LLF clients to whom you are sending Part 137 notices. As you well know, any conversations with these parties may become relevant and discoverable in a court proceeding. Additionally, please report to us any information that you may have about former LLF clients seeking to improperly coax potential witnesses. Such information is clearly discoverable.

You may wish to disclose this letter to the former LLF clients so that they have this Law Firm's address if they seek to contact me so as to resolve any outstanding accounts prior to the initiation of a lawsuit in a court of competent jurisdiction.

**Luthmann Law Firm, PLLC – Collections f/b/o creditors including the United States Government**

However, this Law Firm is prepared to proceed with litigation as soon as the 30-day period under Part 137 is complete as per your request, given the interests of the United States Government as creditors.  If former LLF clients wish to quickly and discreetly resolve their accounts, they may do so by calling this Law Firm.  My direct line is 401-255-8201.  Otherwise, you have directed us to proceed to judgment in these cases to satisfy the interests of the United States Government.

     If you have any questions or concerns, please do not hesitate to contact me.


    Regards,
    ALMAGNO LAW, INC.

    /s/ Lawrence P. Almagno Jr.
    Lawrence P. Almagno Jr.

LPA/lc

CC:   File



**Richard A. Luthmann**
338 Sugar Pine Lane
Naples, FL 34108
Tel: (239) 631-5957
richard.luthmann@gmail.com

<u>Via Certified U.S. Mail RRR with Certificate of Mailing</u>

Personal and Confidential to Addressee

October 12, 2022

Kamillah Hanks
37 Tappen Court
Staten Island, NY 10304

Kamillah Hanks 2017
c/o Kamillah Hanks
37 Tappen Court
Staten Island, NY 10304

Kevin Barry Love
37 Tappen Court
Staten Island, NY 10304

RE:     Outstanding Account with Luthmann Law Firm, PLLC

Dear Kamillah Hanks and Kevin Barry Love:

I am winding up the affairs of the Luthmann Law Firm, PLLC ("LLF") on behalf of its assignees, successors in interests, and creditors, the largest of which is the United States Government.  This communication is an attempt to collect on debts Kamillah Hanks and the Kamillah Hanks Campaign Committee (the "Campaign Committee") owe to LLF. All the work performed and the related costs and expenditures were authorized by Kamillah Hanks and/or Kevin Barry Love, the <u>*de facto*</u> access agent for Kamillah Hanks and the Campaign Committee.

In accordance with jurisdictional requirements, please see the enclosed notices under Part 137 of the Rules of the Chief Administrator.  Further, please note that LLF and I are represented by counsel and all communications should be had with Lawrence P. Almagno, Jr., Esq., of Almagno Law, Inc.  His details are included in the enclosed package.  I implore you to reach out to my lawyers before this gets messy.  I further

1

implore you not to try to contact me or have others contact me on your behalf.  Please take notice that I am making a record of any and all conversations and communications that I have related to this matter.  Moreover, please do not engage in any further communications that may be construed as witness tampering.  Upon information and belief, you have already been acting very poorly and dishonestly with potential witnesses and I have directed my attorneys that this tampering must be fully explored if this matter proceeds to litigation.

You owe LLF substantial fees, costs, and expenses.  If it were up to Luthmann alone, Luthmann would let sleeping dogs lie.  Alas, it's not up to Luthmann, but to the LLF and its successors, assigns, and creditors, particularly the United States Government.  Thank the McMahons, the Clintons, the Vitalianos, and Chuck Schumer the next time you see them.


## 2017 Campaign: Partial Payment of LLF Fees, Costs, and Expenses

You only made a partial payment of LLF fees, costs, and expenses.  Frankly, when Luthmann went away, you thought you can skip out on your bill.  But neither the law nor the New York City Campaign Finance Board (CFB) allows such conduct.  Please see the Campaign Committee's Expenditures from 2017 to the present as reported to and by the CFB, attached as **EXHIBIT "A"** ("CFB Report").

In 2017, you reported a payment of $1,650.00 to LLF/Luthmann for Petition Expenses/Petition Filing. See page 22.  In 2021, you paid Howard Graubard, Esq., in excess of $10,000.00 for the same work.  See page 19.

In addition, the record is clear that you agreed to all of the work to be performed in getting Phil Marius thrown off the ballot in 2017.  See the attached **EXHIBIT "B."** Luthmann, along with other (unpaid to date) consultants (one a former State Committeeman), caused 747 of the 1,189 signatures on Phil Marius' Designating Petition to be invalidated.  The Campaign Committee neither reported nor paid for any of this work.


## 2017 Campaign: Failure to Report to the Campaign Finance Board

Make any arguments that you would like, but agreements with lawyers and consultants must be reported and they must be paid under the CFB Rules.  You have a big problem here, and maybe one of your current consultants, Scott Levenson (The Advance Group, CFB Report pages 38-41), is a seasoned veteran consultant in New York City Politics.  He was fined and his candidate was fined for not properly reporting and being remunerated for work performed. See the attached **EXHIBIT "C",** available at: https://nypost.com/2016/01/06/melissa-mark-viverito-to-pay-7k-fine-for-campaign-finance-shenanigans/.  Scott Levenson has also been engaged in serious battles with batshit crazy sore losers over his properly-earned consulting fees.  See the attached **EXHIBIT "D."**  Maybe you should talk to Scott Levenson about paying your people

because Scott Levenson is very good at getting paid.  If this matter ends up in litigation, Scott Levenson will surely be a witness that needs to be deposed.

Also, Howard Graubard, Esq. and even the esteemed Jerry Goldfeder, Esq. (he literally wrote the book on New York Election Law), may be called as witnesses to establish the reasonableness of the fees, costs, and expenses involved in reviewing, "scrubbing," packaging and file Designating Petitions, as well as reviewing opposing candidates' Designating Petitions filed at the NYC Board of Elections, filing General and Specific Objections to Opponents' Designating Petitions, preparing and filing Election Law litigation in the New York Courts, serving the opposing candidates and proper parties, and all the appurtenant fees, costs, and expenses.  And don't forget gas and tolls back and forth from the Board of Elections, and all the coffee, pizza, and donuts to keep everyone going.  You know about all of this because you decided to report these expenditures in 2021 (I like Cafe Milano, Katz's Delicatessen, and Ruddy & Dean too).   These expenditures should all have been reported and paid.  And there is ample evidence that details the many hours upon hours spent in completing this process.

Additionally, the fact that you don't pay your loyal consultants but paid others who ran away from you in 2017 (e.g., JMT Media, LLC) further establishes a pattern of failure to report and failure to pay.  If this matter goes to litigation, others who didn't get paid will be deposed and crystal clear facts will be established.  Outgoing State Senator Diane Savino was witness to these occurrences on several instances, particularly by the Campaign Office on Bay Street in 2017, when she was worried that Tom McGinley alleged that she was homophobic.


### Kevin Barry Love is the *De Facto* Access Agent for Kamillah Hanks and the Campaign Committee; Nadia Hanks Graduation Case

There is no need to go into this unless there is full-blown litigation.  I don't wish a Federal Prosecution on my worst enemies.  But the factual record will establish that Kevin Barry Love was everywhere: coordinating, negotiating deals, "allowing" access, and "fixing" problems.  Kevin Barry Love served as a *de jure* access agent for Kamillah Hanks and the Campaign Committee.  It is a very grey area between a "gatekeeper" and public corruption.  But I will note that Kevin Barry Love's name appears nowhere in the CFB Report.  Also, what is the deal with KPH Consulting Inc. filed in New York State on February 25, 2019?  See the attached **EXHIBIT "E."** Kamillah Payne-Hanks?  Kevin Barry Love?  This smells an awful lot like a place where Pay-to-Play and "access" money gets parked.  I hope I'm wrong.  The Feds can make a case out of a lot less.

Also, I don't want to drudge up Nadia's graduation case.  I was happy to see her walk.  But the conversations had with Kevin Barry Love and Kamillah Hanks were about the potential poor reflection on Kamillah that her daughter wasn't graduating high school, and it was suggested that the lawsuit would be paid from Campaign Committee funds.  Obviously, if you are interested in a resolution, we can get his invoice covered as well in a package deal.

**CFB Fines for Failure to Report and Failure to Pay**

I would also point out that given the CFB's normal imposition or treble damages for violations, given the amounts involved in this matter and others related to non-payment and/or misuse of campaign funds for non-campaign purposes would effectively cripple any chances that you would have in a 2023 race.  This is yet another reason to make good on all your outstanding obligations.  You know this all too well.  See the attached **EXHIBIT "F."**  But knowing you, I don't think that you will.  Your middle name is "crime," and crime never pays.

Finally, let it be known that I harbor no ill will towards you or anyone who ran away from me in my tough times.  The last great New York City Party Boss, the Honorable Frank Seddio, once gave me a piece of advice that has stuck with me.  He explained that the Wheel of Fortune was a big deal in Medieval Europe, particularly Italy.  Life's ebbs and flows are dictated by the *Rota Fortunae*, and an important takeaway from that is an inherent sense of divine justice: how you treat people when you are on top is how you hope they treat you when you're on the bottom.  Obviously, there is no such hope with you people, and the fault is mine.  I got into bed with scorpions.

I look forward to your payment.

Hugs and kisses,

Richard A. Luthmann

CC:   File
      Lawrence P. Almagno, Jr., Esq.

ENCL: Part 137 Notices
      September 1, 2022, Letter from Lawrence P. Almagno, Jr., Esq.

4

# EXHIBIT A

| Name | Address | Candidate/Office | Date | Amount | Purpose/Explanation | Type |
|------|---------|------------------|------|--------|---------------------|------|
| Butterfield, Kevin | Greenport, NY 11944 | Hanks, Kamillah M City Council (2017 ) | 9/10/2017 | $414.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0001963 |
| Butterfield, Kevin | Greenport, NY 11944 | Hanks, Kamillah M City Council (2017 ) | 9/1/2017 | $222.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0001901 |
| Butterfield, Kevin | Greenport, NY 11944 | Hanks, Kamillah M City Council (2017 ) | 9/12/2017 | $144.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0002087 |
| Butterfield, Kevin | Greenport, NY 11944 | Hanks, Kamillah M City Council (2017 ) | 9/11/2017 | $135.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0002020 |
| C Town | Staten Island, NY | Hanks, Kamillah M City Council (2021 ) | 11/2/2021 | $2.50 | Other: explntion / Water? | Expenditure Payments St#: 14 ID: R0006614 |
| Cafe Milano | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 6/20/2021 | $26.96 | Other: explntion / Staff/Volunteer Meal | Expenditure Payments St#: 10 ID: R0005337 |
| Cafe Milano | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 5/29/2021 | $34.84 | Other: explntion / Volunteer Meals | Expenditure Payments St#: 9 ID: R0005050 |
| Camacho, Shaliayah | | Hanks, Kamillah M City Council (2021 ) | 5/10/2021 | $75.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 8 ID: R0004880 |
| Carruthers, Russell | Staten Island, NY 10301 | Hanks, Kamillah M City Council (2017 ) | 8/10/2017 | $24.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001685 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 8/10/2021 | $5,000.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 11 ID: R0005531 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 10/20/2021 | $2,500.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 14 ID: R0006401 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 9/28/2021 | $2,500.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 13 ID: R0006400 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 5/15/2021 | $4,000.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 9 ID: R0005031 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 3/20/2021 | $4,000.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 8 ID: R0004849 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 4/15/2021 | $4,000.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 8 ID: R0004851 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 6/15/2021 | $4,000.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 10 ID: R0005180 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 11/15/2021 | $5,000.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 15 ID: R0006708 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 10/15/2021 | $2,500.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 15 ID: R0006710 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 1/21/2021 | $4,000.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 7 ID: R0004317 |
| Casali Keller Consulting | Staten Island, NY 10303 | Hanks, Kamillah M City Council (2021 ) | 2/25/2021 | $4,000.00 | Campgn Consuls. / Campaign Management | Expenditure Payments St#: 7 ID: R0004377 |

| Name | Address | Candidate/Office | Date | Amount | Purpose/Explanation | Type |
|------|---------|------------------|------|--------|---------------------|------|
| Herrera, Evelyn | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2017 ) | 8/12/2017 | $204.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001719 |
| Hewling, Nataki | Staten Island, NY 10301 | Hanks, Kamillah M City Council (2021 ) | 11/28/2020 | $350.00 | Other: explntion / Campaign Photoshoot | Expenditure Payments St#: 6 ID: R0003834 |
| Hicks, Kenyetta | Bronx, NY 10462 | Hanks, Kamillah M City Council (2017 ) | 9/13/2017 | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002167 |
| Hicks, Latoya | Staten Island, NY 10301 | Hanks, Kamillah M City Council (2017 ) | 9/13/2017 | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002170 |
| Hobrah | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 9/15/2021 | $93.64 | Other: explntion / Meet & Greet | Expenditure Payments St#: 12 ID: R0005969 |
| Hobrah | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 12/10/2020 | $32.12 | Other: explntion / Meet & Greet | Expenditure Payments St#: 6 ID: R0003827 |
| Home Depot | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 1/28/2021 | $45.70 | Other: explntion / Ties for Lawn Signs | Expenditure Payments St#: 7 ID: R0004277 |
| Home Depot | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 2/12/2021 | $32.56 | Office Expenses / Office Tools | Expenditure Payments St#: 7 ID: R0004518 |
| Honor, Lorraine | Staten Island, NY 10301 | Hanks, Kamillah M City Council (2017 ) | 2/1/2017 | $106.49 | Fundraising / Entrance Fee | In Kind Contributions St#: 7 ID: R0000356 |
| Howard Graubard, Esq. | Brooklyn, NY 11217 | Hanks, Kamillah M City Council (2021 ) | 7/15/2021 | $75.00 | Prof. Srvcs. / Legal Services | Expenditure Payments St#: 11 ID: R0005462 |
| Howard Graubard, Esq. | Brooklyn, NY 11217 | Hanks, Kamillah M City Council (2021 ) | 3/6/2021 | $2,500.00 | Petition Expns. / Lawyer-Petition | Expenditure Payments St#: 7 ID: R0004449 |
| Howard Graubard, Esq. | Brooklyn, NY 11217 | Hanks, Kamillah M City Council (2021 ) | 10/12/2020 | $1,000.00 | Prof. Srvcs. / Legal Fees/Retainer | Expenditure Payments St#: 6 ID: R0003778 |
| Howard Graubard, Esq. | Brooklyn, NY 11217 | Hanks, Kamillah M City Council (2021 ) | 3/19/2021 | $2,500.00 | Petition Expns. / Petitions Legal | Expenditure Payments St#: 8 ID: R0004879 |
| Howard Graubard, Esq. | Brooklyn, NY 11217 | Hanks, Kamillah M City Council (2021 ) | 6/23/2021 | $4,000.00 | Prof. Srvcs. / Legal Services | Expenditure Payments St#: 10 ID: R0005193 |
| Howard Graubard, Esq. | Brooklyn, NY 11217 | Hanks, Kamillah M City Council (2021 ) | 7/12/2021 | ($1,608.50) | | Expenditure Refunds St#: 11 ID: R0005427 |
| Hunt, Lorline | Staten Island, NY 10314 | Hanks, Kamillah M City Council (2017 ) | 8/10/2017 | $108.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001699 |
| Hunt, Lorline | Staten Island, NY 10314 | Hanks, Kamillah M City Council (2017 ) | 8/12/2017 | $228.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001721 |
| Hunt, Lorline | Staten Island, NY 10314 | Hanks, Kamillah M City Council (2017 ) | 8/19/2017 | $297.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001759 |
| Hunt, Lorline | Staten Island, NY 10314 | Hanks, Kamillah M City Council (2017 ) | 8/26/2017 | $438.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001835 |
| Hunt, Lorline | Staten Island, NY 10314 | Hanks, Kamillah M City Council (2017 ) | 9/1/2017 | $132.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0001911 |

| Name | Address | Candidate/Office Date | Amount | Purpose/Explanation | Type |
|---|---|---|---|---|---|
| Hyter, Wuan L | Staten Island, NY 10301 | Hanks, Kamillah M  9/13/2017 City Council (2017 ) | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002172 |
| J&J Printing Company | Bayonne, NJ 07002 | Hanks, Kamillah M  10/5/2021 City Council (2021 ) | $320.27 | Campgn Lit. / Palm Cards | Expenditure Payments St#: 13 ID: R0006479 |
| J&J Printing Company | Bayonne, NJ 07002 | Hanks, Kamillah M  11/22/2021 City Council (2021 ) | $511.40 | Campgn Lit. / Palm Cards | Expenditure Payments St#: 14 ID: R0006683 |
| J&J Printing Company | Bayonne, NJ 07002 | Hanks, Kamillah M  6/9/2021 City Council (2021 ) | $495.90 | Campgn Mlngs / Palm Cards | Expenditure Payments St#: 10 ID: R0004987 |
| J&J Printing Company | Bayonne, NJ 07002 | Hanks, Kamillah M  1/21/2021 City Council (2021 ) | $2,455.69 | Campgn Lit. / Lawn Signs | Expenditure Payments St#: 7 ID: R0004299 |
| J&J Printing Company | Bayonne, NJ 07002 | Hanks, Kamillah M  1/19/2021 City Council (2021 ) | $2,400.00 | Campgn Lit. / Lawn Signs | Expenditure Payments St#: 7 ID: R0004118 |
| J&J Printing Company | Bayonne, NJ 07002 | Hanks, Kamillah M  2/10/2021 City Council (2021 ) | $511.40 | Campgn Lit. / Campaign Lit | Expenditure Payments St#: 7 ID: R0004516 |
| J&J Printing Company | Bayonne, NJ 07002 | Hanks, Kamillah M  5/12/2021 City Council (2021 ) | $578.55 | Campgn Lit. / Palm Cards | Expenditure Payments St#: 8 ID: R0004707 |
| J's On the Bay Luncheonette & | Staten Island, NY 10305 | Hanks, Kamillah M  1/5/2021 City Council (2021 ) | $66.47 | Other: explntion / Meet & Greet | Expenditure Payments St#: 6 ID: R0003863 |
| Jac Mao | Staten Island, NY 10305 | Hanks, Kamillah M  4/23/2021 City Council (2021 ) | $73.04 | Other: explntion / Meet & Greet | Expenditure Payments St#: 8 ID: R0004746 |
| Jameen, Petty | | Hanks, Kamillah M  5/7/2021 City Council (2021 ) | $150.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 8 ID: R0004867 |
| Jenkins, Latisha | Staten Island, NY 10301 | Hanks, Kamillah M  9/13/2017 City Council (2017 ) | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002175 |
| Jenkins, Trestan A | Staten Island, NY 10301 | Hanks, Kamillah M  9/19/2017 City Council (2017 ) | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 13 ID: R0002103 |
| JMT Media LLC | Staten Island, NY 10305 | Hanks, Kamillah M  11/6/2020 City Council (2021 ) | $2,500.00 | Office Expenses / Website, Logo | Expenditure Payments St#: 6 ID: R0003855 |
| JMT Media LLC | Staten Island, NY 10305 | Hanks, Kamillah M  12/19/2020 City Council (2021 ) | $5,000.00 | Office Expenses / Website, Logo | Expenditure Payments St#: 6 ID: R0003857 |
| JMT Media LLC | Staten Island, NY 10305 | Hanks, Kamillah M  1/25/2021 City Council (2021 ) | $1,500.00 | Office Expenses / Website, Logo | Expenditure Payments St#: 7 ID: R0004052 |
| Johnson, Lacey | Staten Island, NY 10304 | Hanks, Kamillah M  3/12/2021 | $157.50 | Petition Expns. / Wages Petitioning | Expenditure Payments St#: 8 ID: R0004490 |
| Just Yard Signs | Azalea Park, FL 32807 | Hanks, Kamillah M  4/5/2021 City Council (2021 ) | $426.38 | Campgn Lit. / Lawn Signs | Expenditure Payments St#: 8 ID: R0004791 |
| Just Yard Signs | Azalea Park, FL 32807 | Hanks, Kamillah M  10/12/2021 City Council (2021 ) | $487.50 | Campgn Lit. / Yard Signs | Expenditure Payments St#: 13 ID: R0006502 |
| Just Yard Signs | Azalea Park, FL 32807 | Hanks, Kamillah M  10/2/2021 City Council (2021 ) | $464.00 | Campgn Lit. / Yard Signs | Expenditure Payments St#: 13 ID: R0006504 |

| Name | Address | Candidate/Office Date | Amount | Purpose/Explanation | Type |
|------|---------|----------------------|--------|---------------------|------|
| K Woods Foundation | Staten Island, NY 10304 | Hanks, Kamillah M  9/30/2021 City Council (2021 ) | $641.40 | Other: explntion / Community Event Tix | Expenditure Payments St#: 13 ID: R0006510 |
| Kareem Moody Photography | | Hanks, Kamillah M  6/23/2020 City Council (2021 ) | $300.00 | Prof. Srvcs. / Campaign Photos | Outstanding Liabilities St#: 16 ID: R0002940 |
| Katz's Delicatessen | New York, NY 10002 | Hanks, Kamillah M  8/17/2021 City Council (2021 ) | $83.62 | Other: explntion / Staff Meals | Expenditure Payments St#: 11 ID: R0005523 |
| Key Food | Staten Island, NY 10301 | Hanks, Kamillah M  11/2/2021 City Council (2021 ) | $9.76 | Other: explntion / Vol Refreshments | Expenditure Payments St#: 14 ID: R0006618 |
| Key Food | Staten Island, NY 10301 | Hanks, Kamillah M  11/1/2021 City Council (2021 ) | $21.12 | Other: explntion / Refreshments | Expenditure Payments St#: 14 ID: R0006620 |
| Key Food | Staten Island, NY 10301 | Hanks, Kamillah M  4/21/2021 City Council (2021 ) | $26.01 | Other: explntion / Staff Meals | Expenditure Payments St#: 8 ID: R0004757 |
| Key Food | Staten Island, NY 10301 | Hanks, Kamillah M  6/22/2021 City Council (2021 ) | $3.46 | Other: explntion / Chafing Fuel-Meals | Expenditure Payments St#: 10 ID: R0005165 |
| Key Food | Staten Island, NY 10301 | Hanks, Kamillah M  6/22/2021 City Council (2021 ) | $8.70 | Other: explntion / Volunteer Meals | Expenditure Payments St#: 10 ID: R0005166 |
| Key Food | Staten Island, NY 10301 | Hanks, Kamillah M  6/22/2021 City Council (2021 ) | $14.98 | Other: explntion / Water/Volunteers | Expenditure Payments St#: 10 ID: R0005167 |
| Keyes, Brian | Staten Island, NY 10301 | Hanks, Kamillah M  9/12/2017 City Council (2017 ) | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002119 |
| Keyes, Brian | Staten Island, NY 10301 | Hanks, Kamillah M  9/11/2017 City Council (2017 ) | $72.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0002030 |
| Keyes, Brian | Staten Island, NY 10301 | Hanks, Kamillah M  9/10/2017 City Council (2017 ) | $126.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0001973 |
| Kings Arms Diner | Staten Island, NY 10310 | Hanks, Kamillah M  9/10/2021 City Council (2021 ) | $76.10 | Other: explntion / Meet & Greet | Expenditure Payments St#: 12 ID: R0005956 |
| Kings Arms Diner | Staten Island, NY 10310 | Hanks, Kamillah M  8/29/2021 City Council (2021 ) | $49.42 | Other: explntion / Meet & Greet | Expenditure Payments St#: 12 ID: R0005921 |
| Kingsale, Thelma | Stony Point, NY 10980 | Hanks, Kamillah M  3/31/2017 City Council (2017 ) | $100.00 | Campgn Consuls. / Catering | Expenditure Payments St#: 8 ID: R0000981 |
| Lance J., Reha | Staten Island, NY 10303 | Hanks, Kamillah M  1/14/2021 City Council (2021 ) | $200.00 | Other: explntion / Candidate Headshots | Outstanding Liabilities St#: 16 ID: R0004115 |
| Lewis-Clinton, Scherisce | Staten Island, NY 10305 | Hanks, Kamillah M  9/12/2017 City Council (2017 ) | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002121 |
| Liberty Tavern | Staten Island, NY 10301 | Hanks, Kamillah M  3/3/2017 City Council (2017 ) | $134.00 | Fundraising / Food, Drinks | Expenditure Payments St#: 7 ID: R0000634 |
| Littman, Ronnie | Staten Island, NY 10302 | Hanks, Kamillah M  6/25/2021 City Council (2021 ) | $105.00 | Campgn Wrkrs $$ / Canvassing | Expenditure Payments St#: 10 ID: R0005275 |
| Littman, Ronnie | Staten Island, NY 10302 | Hanks, Kamillah M  3/20/2021 City Council (2021 ) | $435.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 8 ID: R0004873 |

| Name | Address | Candidate/Office | Date | Amount | Purpose/Explanation | Type |
|------|---------|------------------|------|--------|---------------------|------|
| Lopez, Aaron | Staten Island, NY 10314 | Hanks, Kamillah M City Council (2021 ) | 6/22/2021 | $105.00 | Campgn Wrkrs $$ / Canvassing | Expenditure Payments St#: 10 ID: R0005287 |
| Lopez, Dania | Bronx, NY 10455 | Hanks, Kamillah M City Council (2021 ) | 6/22/2021 | $105.00 | Campgn Wrkrs $$ / Canvassing | Expenditure Payments St#: 10 ID: R0005285 |
| Love, Stephen | Sayreville, NJ 08872 | Hanks, Kamillah M City Council (2017 ) | 9/19/2017 | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 13 ID: R0002096 |
| Luthmann, Richard | Staten Island, NY 10301 | Hanks, Kamillah M City Council (2017 ) | 7/1/2017 | $1,650.00 | Petition Expns. / Petition Filing | Expenditure Payments St#: 9 ID: R0001384 |
| Marco, Priscilla | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 6/15/2021 | $500.00 | Campgn Consuls. / Field Consultant | Expenditure Payments St#: 11 ID: R0005454 |
| Marco, Priscilla | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 3/20/2021 | $240.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 8 ID: R0004875 |
| Marco, Priscilla | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 4/17/2021 | $500.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 8 ID: R0004878 |
| Marco, Priscilla | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 3/10/2021 | $420.00 | Petition Expns. / Wages Petitioning | Expenditure Payments St#: 7 ID: R0004493 |
| Martin Hughes Funeral Home | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 8/11/2021 | $239.07 | Other: explntion / Funeral Florals | Expenditure Payments St#: 11 ID: R0005501 |
| Martin, Tara | NY | Hanks, Kamillah M City Council (2021 ) | 9/29/2021 | $450.00 | Other: explntion / DJ Services | Expenditure Payments St#: 13 ID: R0006462 |
| McAfee | Santa Clara, CA 95054 | Hanks, Kamillah M City Council (2017 ) | 2/9/2017 | $43.54 | Office Expenses / Anti Virus Software | Expenditure Payments St#: 7 ID: R0000376 |
| McDonald's | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 11/2/2021 | $38.65 | Other: explntion / Staff Meals | Expenditure Payments St#: 14 ID: R0006622 |
| McDonald's | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 4/19/2021 | $6.53 | Other: explntion / Staff Meals | Expenditure Payments St#: 8 ID: R0004763 |
| McFadden, Shavar | Far Rockaway, NY 11691 | Hanks, Kamillah M City Council (2017 ) | 8/19/2017 | $84.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001761 |
| McFadden, Shavar | Far Rockaway, NY 11691 | Hanks, Kamillah M City Council (2017 ) | 8/12/2017 | $36.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001723 |
| McFadden, Shavar | Far Rockaway, NY 11691 | Hanks, Kamillah M City Council (2017 ) | 9/10/2017 | $120.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0001975 |
| McFadden, Shavar | Far Rockaway, NY 11691 | Hanks, Kamillah M City Council (2017 ) | 9/1/2017 | $60.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0001913 |
| McFadden, Shavar | Far Rockaway, NY 11691 | Hanks, Kamillah M City Council (2017 ) | 8/26/2017 | $132.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001837 |
| McFadden, Shavar | Far Rockaway, NY 11691 | Hanks, Kamillah M City Council (2017 ) | 8/10/2017 | $78.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001693 |
| McFadden, Shavar | Far Rockaway, NY 11691 | Hanks, Kamillah M City Council (2017 ) | 9/11/2017 | $30.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0002032 |

10/14/2022 10:46:11 AM     Case 2:22-cr-00021-SPC-NPM   Document 22-2   Filed 08/01/23   Page 100 of 138 PageID 685      Page: 31 of 47

CFB ITM Search

| Name | Address | Candidate/Office | Date | Amount | Purpose/Explanation | Type |
|---|---|---|---|---|---|---|
| Rogers, Jamie | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2017 ) | 9/13/2017 | $84.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002182 |
| Rose Sign Art | | Hanks, Kamillah M City Council (2021 ) | 2/24/2021 | $700.00 | Campgn Lit. / Window Vinyl Poster | Expenditure Payments St#: 7 ID: R0004453 |
| Ross, Charmiane | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2017 ) | 9/13/2017 | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002186 |
| Ruddy & Dean | Staten Island, NY 10301 | Hanks, Kamillah M City Council (2021 ) | 10/20/2021 | $257.56 | Other: explntion / Staff Meals/Meeting | Expenditure Payments St#: 14 ID: R0006281 |
| Sailors Snug Harbor Little Lea | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 11/29/2021 | $60.00 | Other: explntion / Community Event | Expenditure Payments St#: 15 ID: R0006706 |
| Santinos Gourmet Deli | Staten Island, NY 10301 | Hanks, Kamillah M City Council (2021 ) | 6/22/2021 | $157.35 | Other: explntion / Staff/Vol Meals | Expenditure Payments St#: 10 ID: R0005173 |
| Santos, Samantha | Staten Island, NY 10305 | Hanks, Kamillah M City Council (2017 ) | 9/15/2017 | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002231 |
| Santos, Samantha | Staten Island, NY 10305 | Hanks, Kamillah M City Council (2017 ) | 9/11/2017 | $54.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 12 ID: R0002046 |
| Santos, Samantha | Staten Island, NY 10305 | Hanks, Kamillah M City Council (2017 ) | 8/10/2017 | $360.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001681 |
| Santos, Samantha | Staten Island, NY 10305 | Hanks, Kamillah M City Council (2017 ) | 8/12/2017 | $135.00 | Campgn Wrkrs $$ / Canvasser | Expenditure Payments St#: 11 ID: R0001733 |
| Sawires, Antoun | Staten Island, NY | Hanks, Kamillah M City Council (2021 ) | 6/22/2021 | $2,250.00 | Campgn Consuls. / Field Consultant | Expenditure Payments St#: 10 ID: R0005196 |
| Sawires, Antoun | Staten Island, NY | Hanks, Kamillah M City Council (2021 ) | 5/20/2021 | $2,250.00 | Campgn Consuls. / Campaign Consultant | Expenditure Payments St#: 9 ID: R0005039 |
| Scale to Win | Santa Ana, CA 92703 | Hanks, Kamillah M City Council (2021 ) | 5/20/2021 | $585.14 | Other: explntion / Text Services | Expenditure Payments St#: 9 ID: R0005025 |
| Scale to Win | Santa Ana, CA 92703 | Hanks, Kamillah M City Council (2021 ) | 6/11/2021 | $4.10 | Other: explntion / Text Services | Expenditure Payments St#: 10 ID: R0005027 |
| Scale to Win | Santa Ana, CA 92703 | Hanks, Kamillah M City Council (2021 ) | 11/5/2021 | $16.66 | Other: explntion / Text Services | Expenditure Payments St#: 14 ID: R0006647 |
| Scale to Win | Santa Ana, CA 92703 | Hanks, Kamillah M City Council (2021 ) | 11/8/2021 | $332.24 | Other: explntion / Text Services | Expenditure Payments St#: 14 ID: R0006654 |
| Scale to Win | Santa Ana, CA 92703 | Hanks, Kamillah M City Council (2021 ) | 11/8/2021 | $1,661.46 | Other: explntion / Text Services | Expenditure Payments St#: 14 ID: R0006656 |
| Scale to Win | Santa Ana, CA 92703 | Hanks, Kamillah M City Council (2021 ) | 7/8/2021 | $323.57 | Other: explntion / Text Services | Expenditure Payments St#: 11 ID: R0005447 |
| Scale to Win | Santa Ana, CA 92703 | Hanks, Kamillah M City Council (2021 ) | 7/15/2021 | $472.04 | Other: explntion / Text Services | Expenditure Payments St#: 11 ID: R0005451 |
| Scale to Win | Santa Ana, CA 92703 | Hanks, Kamillah M City Council (2021 ) | 6/21/2021 | $91.92 | Other: explntion / Text Services | Expenditure Payments St#: 10 ID: R0005329 |

10/14/2022 10:46:11 AM    Case 2:22-cr-00021-SPC-NPM    Document 22-2    Filed 08/01/23    Page 101 of 138 PageID 686    Page: 38 of 47

CFB FTM Search

| Name | Address | Candidate/Office | Date | Amount | Purpose/Explanation | Type |
|------|---------|------------------|------|--------|---------------------|------|
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 4/6/2021 | $320.09 | Campgn Mlngs / Postcard Mailing | Expenditure Payments St#: 8 ID: R0004786 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 4/13/2021 | $49.00 | Campgn Mlngs / Postcard | Expenditure Payments St#: 8 ID: R0004779 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 4/23/2021 | $55.48 | Campgn Mlngs / Post Card Mailing | Expenditure Payments St#: 8 ID: R0004748 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 11/23/2021 | $49.00 | Campgn Mlngs / Postcard Membership | Expenditure Payments St#: 14 ID: R0006662 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 7/13/2021 | $49.00 | Campgn Mlngs / Postcard Service | Expenditure Payments St#: 11 ID: R0005436 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 6/14/2021 | $49.00 | Campgn Mlngs / Postcard Membership | Expenditure Payments St#: 10 ID: R0005336 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 8/13/2021 | $49.00 | Campgn Mlngs / Postcard Service | Expenditure Payments St#: 11 ID: R0005508 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 9/13/2021 | $49.00 | Campgn Mlngs / Post Card Mail Svc | Expenditure Payments St#: 12 ID: R0005954 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 9/30/2021 | $76.46 | Campgn Mlngs / Postcard Mailing | Expenditure Payments St#: 13 ID: R0006506 |
| thanks.io | Two Rivers, AK | Hanks, Kamillah M City Council (2021 ) | 10/13/2021 | $49.00 | Campgn Mlngs / Postcard Service | Expenditure Payments St#: 13 ID: R0006500 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 10/18/2021 | $2,900.00 | Campgn Mlngs / Pre Election Mailer | Expenditure Payments St#: 13 ID: R0006517 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 10/5/2021 | $1,000.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 13 ID: R0006507 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 10/12/2021 | $22,100.00 | Campgn Mlngs / General Mailing | Expenditure Payments St#: 13 ID: R0006498 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 11/9/2021 | $3,000.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 14 ID: R0006564 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 10/26/2021 | $9,018.10 | Campgn Mlngs / General Mailing | Expenditure Payments St#: 14 ID: R0006531 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 10/21/2021 | $8,460.21 | Campgn Mlngs / Pre Election Mailer | Expenditure Payments St#: 14 ID: R0006395 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 6/14/2021 | $5,878.40 | Campgn Mlngs / Campaign Mailer | Expenditure Payments St#: 10 ID: R0005324 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 6/15/2021 | $9,675.68 | Campgn Mlngs / Campaign Mailer | Expenditure Payments St#: 10 ID: R0005325 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 5/30/2017 | $754.50 | Campgn Lit. / Palm Cards | Expenditure Payments St#: 9 ID: R0001108 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 5/30/2017 | $646.72 | Campgn Lit. / Window Signs | Expenditure Payments St#: 9 ID: R0001110 |

CFB FTM Search

| Name | Address | Candidate/Office | Date | Amount | Purpose/Explanation | Type |
|------|---------|------------------|------|--------|---------------------|------|
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 5/15/2017 | $2,500.00 | Campgn Consuls. / April Fees | Expenditure Payments St#: 9 ID: R0001078 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 5/15/2017 | $520.00 | Campgn Lit. / Palm cards | Expenditure Payments St#: 9 ID: R0001080 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 3/23/2017 | $2,500.00 | Campgn Consuls. / Consulting Fee | Expenditure Payments St#: 8 ID: R0000874 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 3/23/2017 | $2,500.00 | Campgn Consuls. / March Fees | Expenditure Payments St#: 8 ID: R0000875 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 1/19/2017 | $2,500.00 | Campgn Consuls. / Consulting Fee | Expenditure Payments St#: 7 ID: R0000218 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 2/22/2017 | $650.00 | Campgn Lit. / Palm cards | Expenditure Payments St#: 7 ID: R0000400 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 2/22/2017 | $200.00 | Campgn Lit. / Business Cards | Expenditure Payments St#: 7 ID: R0000402 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 12/16/2016 | $5,000.00 | Campgn Consuls. / Monthly Consulting | Expenditure Payments St#: 6 ID: R0000025 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 12/28/2016 | $10,000.00 | Campgn Consuls. / Consulting fees | Expenditure Payments St#: 6 ID: R0000066 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 1/5/2018 | $1,750.00 | Campgn Mlngs / Holiday Thank You's | Expenditure Payments St#: 16 ID: R0002310 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 9/12/2017 | $700.00 | Prof. Srvcs. / Printing Expense | Expenditure Payments St#: 12 ID: R0002012 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 8/28/2017 | $845.14 | Campgn Mlngs / Postage & Mailing | Expenditure Payments St#: 11 ID: R0001868 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 8/28/2017 | $5,490.10 | Campgn Mlngs / Postage & Printing | Expenditure Payments St#: 11 ID: R0001870 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 8/28/2017 | $7,306.06 | Campgn Mlngs / Postage & Prnting | Expenditure Payments St#: 11 ID: R0001872 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 8/28/2017 | $986.68 | Campgn Mlngs / Printing Exp | Expenditure Payments St#: 11 ID: R0001874 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 9/10/2017 | $583.36 | Prof. Srvcs. / Auto & Live calls | Expenditure Payments St#: 12 ID: R0001995 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 9/10/2017 | $1,260.00 | Prof. Srvcs. / GOTV Robo Call | Expenditure Payments St#: 12 ID: R0001997 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 7/18/2017 | $1,500.00 | Prof. Srvcs. / Campaign Mgt | Expenditure Payments St#: 10 ID: R0001525 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 7/25/2017 | $1,500.00 | Prof. Srvcs. / Campaign Mgt | Expenditure Payments St#: 10 ID: R0001526 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017 ) | 7/25/2017 | $1,500.00 | Prof. Srvcs. / Campaign Mgt | Expenditure Payments St#: 10 ID: R0001527 |

CFB FTM Search

| Name | Address | Candidate/Office | Date | Amount | Purpose/Explanation | Type |
|------|---------|------------------|------|--------|---------------------|------|
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/4/2017 | $7,827.89 | Print Ads / Postage and Printing | Expenditure Payments St#: 10 ID: R0001547 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/11/2017 | $135.00 | Campgn Mlngs / Mail Flyers | Expenditure Payments St#: 11 ID: R0001608 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/11/2017 | $845.14 | Office Expenses / Palm Carda | Expenditure Payments St#: 11 ID: R0001610 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/11/2017 | $7,767.78 | Postage / Postage & Printing | Expenditure Payments St#: 11 ID: R0001612 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/8/2017 | $5,500.00 | Prof. Srvcs. / Consulting Service | Expenditure Payments St#: 11 ID: R0001581 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/8/2017 | $797.05 | Campgn Mlngs / Copies,Envelopes,Pos | Expenditure Payments St#: 11 ID: R0001583 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/8/2017 | $754.50 | Campgn Lit. / Palm Card | Expenditure Payments St#: 11 ID: R0001585 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/24/2017 | $335.38 | Campgn Mlngs / Mailing out flyer | Expenditure Payments St#: 11 ID: R0001792 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/24/2017 | $3,302.94 | Campgn Lit. / PBA Mailer | Expenditure Payments St#: 11 ID: R0001794 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/24/2017 | $760.00 | Campgn Lit. / Flyers | Expenditure Payments St#: 11 ID: R0001796 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/24/2017 | $2,597.81 | Campgn Lit. / Mailers | Expenditure Payments St#: 11 ID: R0001798 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2017) | 8/24/2017 | $2,500.00 | Prof. Srvcs. / Consulting Serv | Expenditure Payments St#: 11 ID: R0001800 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021) | 11/4/2021 | $3,000.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 14 ID: R0006660 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021) | 4/20/2021 | $1,000.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 8 ID: R0004775 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021) | 4/14/2021 | $1,000.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 8 ID: R0004776 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021) | 4/14/2021 | $1,000.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 8 ID: R0004777 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021) | 5/18/2021 | $14,476.00 | Campgn Mlngs / Campaign Mailer | Expenditure Payments St#: 9 ID: R0004940 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021) | 6/4/2021 | $9,994.51 | Campgn Mlngs / Campaign Mailer | Expenditure Payments St#: 9 ID: R0004946 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021) | 6/9/2021 | $1,000.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 10 ID: R0004974 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021) | 6/8/2021 | $7,622.07 | Campgn Mlngs / Campaign Mailer | Expenditure Payments St#: 10 ID: R0004977 |

10/14/2022 10:46:11 AM    Case 2:22-cr-00021-SPC-NPM   Document 22-2   Filed 08/01/23   Page 104 of 138 PageID 689     Page: 41 of 47

CFB FTM Search

| Name | Address | Candidate/Office | Date | Amount | Purpose/Explanation | Type |
|------|---------|------------------|------|--------|---------------------|------|
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 3/3/2021 | $15,227.14 | Campgn Mlngs / Campaign Mailer | Expenditure Payments St#: 7 ID: R0004423 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 12/16/2020 | $1,072.51 | Campgn Mlngs / Holiday Post Card | Expenditure Payments St#: 6 ID: R0003946 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 9/8/2020 | $2,500.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 6 ID: R0003967 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 11/13/2020 | $2,500.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 6 ID: R0003969 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 12/22/2020 | $2,500.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 6 ID: R0003971 |
| The Advance Group | New York, NY 10006 | Hanks, Kamillah M City Council (2021 ) | 12/22/2020 | $2,500.00 | Campgn Consuls. / Political Consultant | Expenditure Payments St#: 6 ID: R0003973 |
| The Kettle Black | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 4/30/2021 | $56.09 | Other: explntion / Meet & Greet | Expenditure Payments St#: 8 ID: R0004725 |
| The Kettle Black | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 5/10/2021 | $64.25 | Other: explntion / Meet & Greet | Expenditure Payments St#: 8 ID: R0004721 |
| The Kettle Black | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 3/6/2021 | $105.19 | Other: explntion / Volunteer Meals | Expenditure Payments St#: 7 ID: R0004406 |
| The Kettle Black | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 5/31/2021 | $143.03 | Other: explntion / Meet & Greet | Expenditure Payments St#: 9 ID: R0004950 |
| The Kettle Black | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 4/21/2021 | $57.52 | Other: explntion / Meet & Greet | Expenditure Payments St#: 8 ID: R0004753 |
| The Kettle Black | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 4/21/2021 | $33.96 | Other: explntion / Meet & Greet | Expenditure Payments St#: 8 ID: R0004755 |
| The Kettle Black | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 4/13/2021 | $47.09 | Other: explntion / Meet & Greet | Expenditure Payments St#: 8 ID: R0004781 |
| The Kettle Black | Staten Island, NY 10310 | Hanks, Kamillah M City Council (2021 ) | 6/18/2021 | $38.76 | Other: explntion / Meet & Greet | Expenditure Payments St#: 10 ID: R0005323 |
| The Richmond | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 9/25/2021 | $370.08 | Other: explntion / Meet & Greet | Expenditure Payments St#: 12 ID: R0005989 |
| The Richmond | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 9/14/2021 | $20.84 | Fundraising / Catering/Bev. | Expenditure Payments St#: 12 ID: R0005963 |
| The Richmond | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 9/14/2021 | $3,995.13 | Fundraising / Catering | Expenditure Payments St#: 12 ID: R0005965 |
| The Richmond | Staten Island, NY 10304 | Hanks, Kamillah M City Council (2021 ) | 11/2/2021 | $1,056.98 | Other: explntion / Election Celebration | Expenditure Payments St#: 14 ID: R0006634 |
| The Twisted Vine | Staten Island, NY 10301 | Hanks, Kamillah M City Council (2021 ) | 8/12/2021 | $24.90 | Other: explntion / Meet & Greet Meal | Expenditure Payments St#: 11 ID: R0005515 |
| Thomas, Crystal | Staten Island, NY 10312 | Hanks, Kamillah M City Council (2017 ) | 9/13/2017 | $144.00 | Campgn Wrkrs $$ / GOTV | Expenditure Payments St#: 12 ID: R0002198 |

# EXHIBIT B

Subscribe

**News never stops. Neither do we. Support SILive.com**

Advertisement

News

# Marius is off the ballot, North Shore primary between Rose, Hanks

Updated: Aug. 01, 2017, 7:10 p.m. | Published: Aug. 01, 2017, 6:10 p.m.

221
shares

NEW!

By **Rachel Shapiro | rshapiro@siadvance.com**

STATEN ISLAND, N.Y. -- Phil Marius, one of two Democratic primary challengers to Councilwoman Debi Rose, won't be on the September ballot because his campaign didn't collect enough valid signatures for his designating petition, the city Board of Elections found Tuesday.

A clerk's report issued Monday found that Marius had 442 valid signatures, falling eight short of the required 450 to get on the primary ballot.

Advertisement

He had collected 1,189 but 747 were invalid for illegible signatures, illegible addresses, no address or wrong address, signers living outside the district, witnesses to signatures in the wrong county and more.

Advertisement

More than 300 signatures were from people not registered as Democrats.

After Marius filed his petition with the Board of Elections, an objection was filed, as is typical in most races. Objections were filed to Hanks and Rose too.

Conservative Michael Penrose, who also has the Republican Party line in the November general election for the North Shore council seat, didn't have any objections filed against his petitions.

The objections against Marius' petitions had been filed in the name of Tammara Moore, the wife of Richard Luthmann.

Advertisement

Luthmann is Hanks' personal attorney and is law chairman for the Reform Party, a line that Hanks has in the general election.

He represented the objections to the Board of Elections Tuesday, which voted unanimously to invalidate Marius' petition.

The objections also included the allegation that 185 additional signatures were fraudulent, a matter that the Board of Elections didn't rule on because it doesn't have jurisdiction, they would have to be brought to court.

Advertisement

Marius argued he counted 510 valid signatures, but didn't have a line-by-line counter to the clerk's report that found 442 signatures. He said he didn't have time to look through the clerk's report released on Monday.

He could still opt to run as an independent if he collects 450 valid signatures from registered voters in the district, a less burdensome process than collecting from registered Democrats only.

Marius would not say whether he's considering that option and offered no other comment on the board's ruling Tuesday.

Hanks, who has a better chance of winning in a one-on-one primary against Rose, said, "Running for elected office is not easy. It takes a lot of courage, hard-work, and dedication -- all values I have seen in Phil Marius. Phil has been a true role model for the young people of Staten Island and I hope he continues to inspire our communities. He is a natural leader and I look forward to the opportunity to work with him in the future."

Advertisement

Bob Olivari, a Rose campaign spokesman, said, "As the petitioning process winds down, the Debi Rose re-election campaign can now focus all our efforts on voter contact. Debi has a great record for Staten Island."

If you purchase a product or register for an account through one of the links on our site, we may receive compensation.



Registration on or use of this site constitutes acceptance of our User Agreement, Privacy Policy and Cookie Statement, and Your California Privacy Rights (User Agreement updated 1/1/21. Privacy Policy and Cookie Statement updated 7/1/2022).

**Cookies Settings**

© 2022 Advance Local Media LLC. All rights reserved (About Us).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Advance Local.

Community Rules apply to all content you upload or otherwise submit to this site.

Ad Choices

# EXHIBIT C



# NEW YORK POST

LOG IN

RECOMMENDED

    

METRO

# Melissa Mark-Viverito to pay $7K fine for campaign-finance shenanigans

By Michael Gartland                                    January 6, 2016 | 12:46pm



Melissa Mark-Viverito

William Farrington

**MORE ON:**
*MELISSA MARK-VIVERITO*

**'More like a political hiring hall':
Adams pays off 'political debt'**

City Council Speaker Melissa Mark-Viverito has agreed to pay a $7,000 fine to settle charges that she violated the city's campaign finance law by accepting free consulting advice from a lobbyist to land her post in 2013.

As part of a settlement with the Conflicts-of-Interest Board, Mark-Viverito (D-Manhattan) also had to pay the consultant, The Advance Group, $3,796 for its

Case 1:22-cr-00021-SPC-NPM    Document 22-2    Filed 08/01/22    Page 111 of 138 PageID 696



## NEW YORK POST

LOG IN

**RECOMMENDED**

Blasio after mayor rips Michael Bloomberg

Melissa Mark-Viverito among protesters arrested at MoMA

was acceptance of free consulting services."

Mark-Viverito told reporters she considers the outcome a "positive resolution."

"I'm happy it's resolved and I'm moving forward. I've got a lot of work to do," she said. "It's concluded, it's done, moving forward."

Scott Levenson, the Advance Group's president and a registered lobbyist, was fined $4,000 for his role.

Mark-Viverito took on Levenson to help with her campaign to come speaker in September 2013. Two other Advance Group honchos — vice president Joanthan Yedin and chief of staff Katie Franger — then "volunteered their efforts to further my speaker campaign," she said in the settlement.

For the next two months, they devoted two or three hours a week to her campaign. The Advance Group also shelled out $1,796 to have 3,000 fliers printed for use at the 2013 Somos El Futuro Conference in Puerto Rico promoting Mark-Viverito.

But the consultant — who has extensive dealings with city government –never invoiced Mark-Viverito's campaign.

The Advance Group was previously fined $15,000 by the city's Campaign finance Board and $10,800 by the state for other violations in the 2013 elections.

**FILED UNDER**   CAMPAIGN FINANCE , CITY COUNCIL , CITY HALL , MELISSA MARK-VIVERITO   1/6/16

**READ NEXT** ❯   Jury will decide fate of cop who fatally shot unarmed man ...

## AROUND THE WEB





# EXHIBIT D

Case 2:22-cr-00021-SPC-NPM    Document 22-2    Filed 08/01/23    Page 113 of 138 PageID 698

ADVERTISEMENT

HOME

# Candidate and Consultant Feud, Police Called

Not so much post-election etiquette on the South Shore of Staten Island, reports Tom Wrobleski: Democrat Janine Materna's campaign is

By Azi Paybarah • 11/09/09 6:55pm



Not so much post-election etiquette on the South Shore of Staten Island, reports Tom Wrobleski:

Democrat Janine Materna's campaign is considering suing its consulting firm, the Advance Group, for $1 million, and claimed that consultant Scott Levenson's position with the controversial ACORN group was among the reasons Ms. Materna lost the South Shore City Council race.

ADVERTISEMENT

Candidate and Consultant Feud; Police Called | Observer



## OBSERVER

She said the campaign did not know of Levenson's ACORN affiliation and if it had, "we never would have hired him."

[skip]

ADVERTISEMENT

Levenson said the campaign on Thursday paid him about $35,000, with $5,000 still owed. But Jodi Materna said Levenson is due nothing else and that some campaign costs are still "in dispute."

The two sides had a heated meeting in Levenson's Manhattan office on Thursday, with police eventually being called in. No arrests were made.

Said Levenson, "The lies and erratic behavior of the Materna family are nothing more than a scam to avoid paying their bills. It is an extreme case of sore loser."

ADVERTISEMENT

**Filed Under:** Home, Politics, Scott Levenson, Tom Wrobleski, Janin Materna

**SEE ALSO**: Inside LA's Star Garden Strike: Strippers Are Organizing Whether You Like It or Not

# EXHIBIT E

# Department of State
## Division of Corporations

## Entity Information

Return to Results    Return to Search

### Entity Details

| | |
|---|---|
| **ENTITY NAME:** KPH CONSULTING INC. | **DOS ID:** 5500256 |
| **FOREIGN LEGAL NAME:** | **FICTITIOUS NAME:** |
| **ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION | **DURATION DATE/LATEST DATE OF DISSOLUTION:** |
| **SECTIONOF LAW:** 402 BCL - BUSINESS CORPORATION LAW | **ENTITY STATUS:** ACTIVE |
| **DATE OF INITIAL DOS FILING:** 02/25/2019 | **REASON FOR STATUS:** |
| **EFFECTIVE DATE INITIAL FILING:** 02/25/2019 | **INACTIVE DATE:** |
| **FOREIGN FORMATION DATE:** | **STATEMENT STATUS:** PAST DUE DATE |
| **COUNTY:** NEW YORK | **NEXT STATEMENT DUE DATE:** 02/28/2021 |
| **JURISDICTION:** NEW YORK, UNITED STATES | **NFP CATEGORY:** |

| ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |
|---|---|---|---|---|

#### Service of Process Name and Address

**Name:** KAMILLAH PAYNE-HANKS

**Address:** 37 TAPPEN COURT, STATEN ISLAND, NY, UNITED STATES, 10304

#### Chief Executive Officer's Name and Address

**Name:**

**Address:**

#### Principal Executive Office Address

**Address:**

#### Registered Agent Name and Address

**Name:**

**Address:**

#### Entity Primary Location Name and Address

**Name:**

**Address:**

#### Farmcorpflag

**Is The Entity A Farm Corporation:** NO

#### Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|
| NO PAR VALUE | 200 | $0.00 |

# EXHIBIT F



**New York City Campaign Finance Board**
100 Church Street, 12th Floor, New York, NY 10007
212.409.1800 | www.nyccfb.info

Frederick P. Schaffer
Chair

Gregory T. Camp
Richard J. Davis
Marianne Camille Spraggins
Naomi B. Zauderer
Members

Amy M. Loprest
Executive Director

November 26, 2019

<u>**By First Class Mail and C-ACCESS**</u>

Kamillah Payne-Hanks
██████████

Kamillah Hanks 2017
██████████

<u>**FINAL BOARD DETERMINATION – EC2017 CAMPAIGN**</u>

The New York City Campaign Finance Board (the "Board"), at a meeting held on November 21, 2019, determined that the Kamillah Payne-Hanks 2017 Campaign (the "Campaign") violated the Act and Board rules and the Candidate, the Treasurer, and the Committee are jointly and severally liable for paying $1,329 in penalties as follows:

1.      A violation with no penalty for filing a late disclosure statement. *See* N.Y.C. Charter § 1052(a)(8); Admin. Code §§ 3-703(6), (12), 3-708(8); Board Rules 1-09, 3-02. The Campaign filed Disclosure Statement #14 on October 30, 2017, three days after the filing deadline of October 27, 2017. The Board assessed a violation with no penalty because the Campaign submitted only one statement untimely, no more than 10 days late.

2.      A penalty of $1,000 for accepting contributions from corporations. *See* N.Y.C. Charter § 1052(a)(13); Admin. Code §§ 3-702 (8), 3-703(1)(l); Board Rules 1-02, 1-04(c)(1), (e), (g)(4), (5), 1-05. The Campaign accepted in-kind contributions from Casa Belvedere and Cornerstone Realty, both of which are corporations. The Board assessed a penalty of $750 ($250 plus the amount of the contribution) for Casa Belvedere and $250 for Cornerstone Realty.

Candidate ID #: 1996-P

3.       A penalty of $329 for failing to demonstrate that spending was in furtherance of the campaign. *See* Admin. Code §§ 3-702(21)(a), (b); 3-703(1)(d), (g), (6), (11); Board Rules 1-03(a), 1-08(p), 4-01(e). The Campaign paid $372 to a campaign worker, $72 in excess of the amount accounted for in the individual's timesheet provided by the Campaign. The Campaign also paid $2,145 to a consultant, $895 in excess of the amount provided for in the consultant's contract with the Campaign. The Campaign also made a $350 payment to Shore to Shore Realty, which was not accounted for in the Campaign's lease with Shore to Shore Realty. The Board assessed a penalty equal to 25% of the amount of the expenditures.

You must pay to the Board the full amount due of $1,329 no later than December 26, 2019. Checks should be made payable to the "New York City Election Campaign Finance Fund," and mailed to the attention of Jason Yee, Associate Counsel, New York City Campaign Finance Board, 100 Church Street, 12th Floor, New York, NY 10007 or delivered to the offices of the Board.

If the Board is not in receipt of the full $1,329 by December 26, 2019, the candidate's name and the unpaid amount will be posted on the Board's Website and the Board may initiate a civil action against the Committee, the Candidate, and the Treasurer to compel payment. In addition, you will be ineligible for public funds in any future election until this debt is paid in full.

**The Campaign will receive a Final Audit Report containing additional information regarding the matters listed herein, as well as any audit-only findings, which are not associated with any violation and are thus not included in this determination.**

You may challenge this final determination, within four months, in the New York State Supreme Court pursuant to Article 78 of the Civil Practice Law and Rules.

If you need additional time to pay this amount or if you have any questions concerning this Final Board Determination, please contact Jason Yee, Associate Counsel, at (212) 409-1765 or JYee@nyccfb.info.

Signature on original

Hillary Weisman
General Counsel

**NEW YORK CITY
CAMPAIGN FINANCE BOARD**

2

# Almagno Law, Inc.

Lawrence P. Almagno Jr., Esq
Licensed in RI NY & MA

**VIA U.S. Mail**

**Advance copy sent to: richard.luthmann@gmail.com**

September 1, 2022

Luthmann Law Firm, PLLC
c/o Almagno Law, Inc.
42 W. 43rd Street, Ste. 169
New York, NY 10036

Richard Luthmann
338 Sugar Pine Lane
Naples, FL 34108

> **Re:** **Debt Collection – Luthmann Law Firm, PLLC ("LLF")**
> **Richard Luthmann as successor to LLF and for the benefit**
> **of the successors, assigns, and creditors of LLF**

Dear Mr. Luthmann:

You have engaged Almagno Law, Inc. (the "Law Firm") to prosecute collections matters against former clients of the now defunct Luthmann Law Firm, PLLC ("LLF") on behalf of the entity as a successor in interest. You have several creditors, the most significant of which is the United States Government.

This Law Firm has reviewed the underlying paperwork and we are of the opinion that you have several valid claims against former LLF clients.

**Breach of Contract**

Although not required in New York, it was standard practice of the LLF to have signed engagement letters on file for its clients. As such, given the billing records and other evidence, you have claims for breach of contract against former LLF clients with outstanding accounts. There was an agreement between LLF and the former client; LLF performed under the agreement; the former client failed to make payment; and LLF has suffered damages as a result. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181-82 (2011); *Heijung Park v. Nam*

---

**Rhode Island Office**
10 Rangeley Road
Cranston, Rhode Island 02920

**New York Office**
43 W 43rd St. Ste 169
New York, NY 10036

Tel: (401) 946-4529 | Fax: (401) 464-4529
Email: LA@Almagno-Law.com

*Young Kim*, 205 A.D. 3d 429, 438 (1st Dep't 2022); *Core Dev. Grp. LLC v. Spaho*, 199 A.D. 3d 447, 449 (1st Dep't 2021); *Alloy Advisory, LLC v. 503 West 33rd Street Associates, Inc*., 195 A.D.3d 436, 144 N.Y.S.3d 854 (1st Dept. 2021); *Markov v. Katt*, 176 A.D. 3d 401, 401-02 (1st Dep't 2019).

Additionally, the contracts between the LLF and its former clients are all implied in fact. The case files as well as court filings and other materials show conduct by the parties consonant with the existence of a contract. A contract implied in fact rests upon the conduct of the parties and not their verbal or written words. *Parsa v. State*, 64 N.Y.2d 143, 148 (1984). An implied in fact contract requires: Mutual assent; Consideration; Legal capacity; and Legal subject matter. *See Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999); *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503-4 (1975); *Mirchel v. R.M.J. Sec. Corp.*, 205 A.D.2d 388, 390 (1st Dep't 1994). All of these elements are present here.


## Account Stated

"Under federal and New York law, an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *See Nat'l Econ. Research Assocs. v. Purolite "C" Corp.*, No. 08 Civ. 7600(PGG), 2011 U.S. Dist. LEXIS 24458, at *6 (S.D.N.Y March 10, 2011); *see also Interman Indus. Prods.*, Ltd. v. R. S. M. Electron Power, Inc., 37 N.Y.2d 151, 153 (1975); *Ryan Graphics, Inc. v. Bailin*, 39 A.D.3d 249, 250 (1st Dep't 2007). LLF has valid claims for an account stated against all former LLF clients.


## Unjust Enrichment

Similarly, LLF has claims for Unjust Enrichment. The former LLF clients benefitted at LLF's expense, and equity and good conscience require restitution. *Columbia Mem'l Hosp. v. Hinds, 2022 WL 1572408, *6 (2022); E.J. Brooks Co. v. Cambridge Sec. Seals, 31 N.Y.3d 441, 455 (2018)*; *Georgia Malone & Co., Inc. v. Rieder, 19 N.Y.3d 511, 516 (2012).*


## Statute of Limitations

Under C.P.L.R. § 213(2), the statute of limitations of contracts, debt collection, and accounts stated is six (6) years. All of the former LLF client accounts were on the books as of December 15, 2017, so we are will within the applicable statutory period.

**Luthmann Law Firm, PLLC – Collections f/b/o creditors including the United States Government**

Additionally, under C.P.L.R. § 214(6), the statute of limitations for legal malpractice is three (3) years.  Richard Luthmann was legally disabled and unable to practice law on and after December 15, 2017.  The statutory time to interpose a legal malpractice claim or counterclaim has long passed.  Also, unlike other former LLF clients who made claims against Richard Luthmann and the LLF, none of these clients have had any issues with the services rendered.

**Part 137 Notices**

A legal precondition to the collection of legal fees earned in the State of New York is compliance with Part 137 of the Rules of the Chief Administrator.  The law requires that you must send a Notice of Client's Right to Arbitrate a Dispute Over Attorney's Fees to each and every client who has an outstanding account and from whom you wish to collect.

Accordingly, you must provide written notice to all former clients of LLF of their right to elect to resolve the dispute by arbitration under Part 137.  You must also provide said former LLF clients with a copy of the written instructions and procedures of the approved local bar association-sponsored fee dispute resolution program ("Local Program") having jurisdiction over your dispute.  Since the business address of the LLF for the winding up of its affairs in New York County, the Local Program is administered by the New York County Lawyers Association.
You must also provide former LLF clients with the "Request for Fee Arbitration" form and advise that said former LLF clients must file their Request for Fee Arbitration with the Local Program within 30 days of the receipt of the notice.  Thereafter, you will be free to bring a lawsuit in court to seek to obtain payment of the fee.

It is advisable that you send these notices by Registered U.S. Mail and U.S. Mail with a Certificate of Mailing.  In this way, you will be able to prove the delivery of the notice by the actual return of the Registered Mail and/or by the presumption of regularity of the delivery of the U.S. Mails.

Please refrain from any further contact with former LLF clients to whom you are sending Part 137 notices.  As you well know, any conversations with these parties may become relevant and discoverable in a court proceeding.  Additionally, please report to us any information that you may have about former LLF clients seeking to improperly coax potential witnesses.  Such information is clearly discoverable.

You may wish to disclose this letter to the former LLF clients so that they have this Law Firm's address if they seek to contact me so as to resolve any outstanding accounts prior to the initiation of a lawsuit in a court of competent jurisdiction.

**Luthmann Law Firm, PLLC – Collections f/b/o creditors including the United States Government**

However, this Law Firm is prepared to proceed with litigation as soon as the 30-day period under Part 137 is complete as per your request, given the interests of the United States Government as creditors.  If former LLF clients wish to quickly and discreetly resolve their accounts, they may do so by calling this Law Firm.  My direct line is 401-255-8201.  Otherwise, you have directed us to proceed to judgment in these cases to satisfy the interests of the United States Government.

        If you have any questions or concerns, please do not hesitate to contact me.


                            Regards,
                            ALMAGNO LAW, INC.

                            /s/ Lawrence P. Almagno Jr.
                            Lawrence P. Almagno Jr.


LPA/lc

CC:   File

UCS 137-1 (11/01)

## NOTICE OF CLIENT'S RIGHT TO ARBITRATE

## A DISPUTE OVER ATTORNEYS FEES

The amount of $ _43,232.14_ is due and owing for the provision of legal services with

respect to:   General Legal Representation and the appurtenant fees, costs, expenses, and other expenditures including but not limited to:

*Representation related to NY Election Law and 2017 City Council Campaign Including advice, petition filings, and getting PHIL MARIUS Knocked off the ballot.*

If you dispute that you owe this amount, you have the right to elect to resolve this dispute by

arbitration under Part 137 of the Rules of the Chief Administrator of the Courts.  To do so, you must

file the attached Request for Fee Arbitration within 30 days from the receipt of this Notice, as set

forth in the attached instructions.      If you do not file a Request for Fee Arbitration within 30 days

from the receipt of this Notice, you waive the right to resolve this dispute by arbitration under Part

137, and your attorney will be free to bring a lawsuit in court to seek payment of the fee.

Dated:   October 12, 2022

_____
(Attorney's Signature)
[print Attorney's name, address and telephone number below]

Luthmann Law Firm, PLLC
By Richard Luthmann, successor in interest
c/o Almagno Law, Inc.
43 West 43rd Street, Ste. 169
New York, NY 10036

UCS 137-1 (11/01)

## NOTICE OF CLIENT'S RIGHT TO ARBITRATE

## A DISPUTE OVER ATTORNEYS FEES

The amount of $ _17,893.24_ is due and owing for the provision of legal services with

respect to:   **General Legal Representation and the appurtenant fees, costs, expenses,
and other expenditures including but not limited to:**

*Nadia Hinkes v. The City of New York
151389/2017 (Sup Ct: Rich Cty)*

If you dispute that you owe this amount, you have the right to elect to resolve this dispute by

arbitration under Part 137 of the Rules of the Chief Administrator of the Courts.  To do so, you must

file the attached Request for Fee Arbitration within 30 days from the receipt of this Notice, as set

forth in the attached instructions.       If you do not file a Request for Fee Arbitration within 30 days

from the receipt of this Notice, you waive the right to resolve this dispute by arbitration under Part

137, and your attorney will be free to bring a lawsuit in court to seek payment of the fee.

Dated:   October 12, 2022

_____
(Attorney's Signature)
[print Attorney's name, address and telephone number **below**]

Luthmann Law Firm, PLLC
By Richard Luthmann, successor in interest
c/o Almagno Law, Inc.
43 West 43rd Street, Ste. 169
New York, NY 10036



**Richard A. Luthmann**
338 Sugar Pine Lane
Naples, FL 34108
Tel: (239) 631-5957
richard.luthmann@gmail.com

<u>Via Certified U.S. Mail RRR with Certificate of Mailing</u>

Personal and Confidential to Addressee

October 27, 2022

John Tabacco
120 Bayview Terrace
State Island, NY 10312-6327

RE:    Outstanding Account with Luthmann Law Firm, PLLC

Dear John,

I hope this letter finds you well.  I am winding up the affairs of the Luthmann Law Firm, PLLC ("LLF") on behalf of its assignees, successors in interests, and creditors, the largest of which is the United States Government.  I am obligated to send this letter to try to settle out your outstanding balances on the LLF's books. If it were up to me, I would let sleeping dogs lie.  But you know how the FEDS can be, particularly when an American Patriot like you is involved.

In accordance with jurisdictional requirements, please see the enclosed notices under Part 137 of the Rules of the Chief Administrator.  Further, please note that LLF and I are represented by counsel and all communications should be had with Lawrence P. Almagno, Jr., Esq., of Almagno Law, Inc.  His details are included in the enclosed package.  Save yourself a headache and call Larry directly at 401-255-8201 and make an offer to resolve this whole thing before it blows up.  The Dirty Feds can try to piss on the Constitution all they want, but they can't impair the obligation of contracts - like a bona fide settlement agreement.  At least not yet anyway.

1

Give my best to your mom, your brothers, and Johnny Colt.  And keep up the great work on TV!  Great American Patriots need to know what is happening to their country before it's too late.

Regards,

Richard A. Luthmann

CC:    File
       Lawrence P. Almagno, Jr., Esq.

ENCL:  Part 137 Notices
       September 1, 2022, Letter from Lawrence P. Almagno, Jr., Esq.

P.S.-  Say hello to Roger for me the next time you see him.  The Dirty Feds asked me all about him and I kept my mouth shut!

*Johnny Tobacco*

UCS 137-1 (11/01)

## NOTICE OF CLIENT'S RIGHT TO ARBITRATE

## A DISPUTE OVER ATTORNEYS FEES

The amount of $ _48,232.47_ is due and owing for the provision of legal services with

respect to:     General Legal Representation and the appurtenant fees, costs, expenses, and other expenditures including but not limited to:

- Real Property and Foreclosures
- Political and Election Law
- Business Law

 If you dispute that you owe this amount, you have the right to elect to resolve this dispute by

arbitration under Part 137 of the Rules of the Chief Administrator of the Courts.  To do so, you must

file the attached Request for Fee Arbitration within 30 days from the receipt of this Notice, as set

forth in the attached instructions.     If you do not file a Request for Fee Arbitration within 30 days

from the receipt of this Notice, you waive the right to resolve this dispute by arbitration under Part

137, and your attorney will be free to bring a lawsuit in court to seek payment of the fee.

Dated: _October 12, 2022_

_____
(Attorney's Signature)
[print Attorney's name, address and telephone number below]

Luthmann Law Firm, PLLC
By Richard Luthmann, successor in interest
c/o Almagno Law, Inc.
43 West 43rd Street, Ste. 169
New York, NY 10036

# Almagno Law, Inc.

Lawrence P. Almagno Jr., Esq
Licensed in RI NY & MA

**VIA U.S. Mail**

**Advance copy sent to: richard.luthmann@gmail.com**

September 1, 2022

Luthmann Law Firm, PLLC
c/o Almagno Law, Inc.
42 W. 43rd Street, Ste. 169
New York, NY 10036

Richard Luthmann
338 Sugar Pine Lane
Naples, FL 34108

> **Re:  Debt Collection – Luthmann Law Firm, PLLC ("LLF")**
> **Richard Luthmann as successor to LLF and for the benefit**
> **of the successors, assigns, and creditors of LLF**

Dear Mr. Luthmann:

You have engaged Almagno Law, Inc. (the "Law Firm") to prosecute collections matters against former clients of the now defunct Luthmann Law Firm, PLLC ("LLF") on behalf of the entity as a successor in interest. You have several creditors, the most significant of which is the United States Government.

This Law Firm has reviewed the underlying paperwork and we are of the opinion that you have several valid claims against former LLF clients.

**Breach of Contract**

Although not required in New York, it was standard practice of the LLF to have signed engagement letters on file for its clients. As such, given the billing records and other evidence, you have claims for breach of contract against former LLF clients with outstanding accounts. There was an agreement between LLF and the former client; LLF performed under the agreement; the former client failed to make payment; and LLF has suffered damages as a result. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181-82 (2011); *Heijung Park v. Nam*

---

**Rhode Island Office**
10 Rangeley Road
Cranston, Rhode Island 02920

**New York Office**
43 W 43rd St. Ste 169
New York, NY 10036

Tel: (401) 946-4529 | Fax: (401) 464-4529
Email: LA@Almagno-Law.com

**Luthmann Law Firm, PLLC – Collections f/b/o creditors including the United States Government**

*Young Kim*, 205 A.D. 3d 429, 438 (1st Dep't 2022); *Core Dev. Grp. LLC v. Spaho*, 199 A.D. 3d 447, 449 (1st Dep't 2021); *Alloy Advisory, LLC v. 503 West 33rd Street Associates, Inc*., 195 A.D.3d 436, 144 N.Y.S.3d 854 (1ˢᵗ Dept. 2021); *Markov v. Katt*, 176 A.D. 3d 401, 401-02 (1st Dep't 2019).

Additionally, the contracts between the LLF and its former clients are all implied in fact. The case files as well as court filings and other materials show conduct by the parties consonant with the existence of a contract. A contract implied in fact rests upon the conduct of the parties and not their verbal or written words. *Parsa v. State*, 64 N.Y.2d 143, 148 (1984). An implied in fact contract requires: Mutual assent; Consideration; Legal capacity; and Legal subject matter. *See Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999); *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503-4 (1975); *Mirchel v. R.M.J. Sec. Corp.*, 205 A.D.2d 388, 390 (1st Dep't 1994). All of these elements are present here.

## Account Stated

"Under federal and New York law, an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *See Nat'l Econ. Research Assocs. v. Purolite "C" Corp.*, No. 08 Civ. 7600(PGG), 2011 U.S. Dist. LEXIS 24458, at *6 (S.D.N.Y March 10, 2011); *see also Interman Indus. Prods.*, Ltd. v. R. S. M. Electron Power, Inc., 37 N.Y.2d 151, 153 (1975); *Ryan Graphics, Inc. v. Bailin*, 39 A.D.3d 249, 250 (1st Dep't 2007). LLF has valid claims for an account stated against all former LLF clients.

## Unjust Enrichment

Similarly, LLF has claims for Unjust Enrichment. The former LLF clients benefitted at LLF's expense, and equity and good conscience require restitution. *Columbia Mem'l Hosp. v. Hinds*, 2022 WL 1572408, *6 (2022); *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 (2018); *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012).

## Statute of Limitations

Under C.P.L.R. § 213(2), the statute of limitations of contracts, debt collection, and accounts stated is six (6) years. All of the former LLF client accounts were on the books as of December 15, 2017, so we are will within the applicable statutory period.

**Luthmann Law Firm, PLLC – Collections f/b/o creditors including the United States Government**

Additionally, under C.P.L.R. § 214(6), the statute of limitations for legal malpractice is three (3) years. Richard Luthmann was legally disabled and unable to practice law on and after December 15, 2017. The statutory time to interpose a legal malpractice claim or counterclaim has long passed. Also, unlike other former LLF clients who made claims against Richard Luthmann and the LLF, none of these clients have had any issues with the services rendered.

**Part 137 Notices**

A legal precondition to the collection of legal fees earned in the State of New York is compliance with Part 137 of the Rules of the Chief Administrator. The law requires that you must send a Notice of Client's Right to Arbitrate a Dispute Over Attorney's Fees to each and every client who has an outstanding account and from whom you wish to collect.

Accordingly, you must provide written notice to all former clients of LLF of their right to elect to resolve the dispute by arbitration under Part 137. You must also provide said former LLF clients with a copy of the written instructions and procedures of the approved local bar association-sponsored fee dispute resolution program ("Local Program") having jurisdiction over your dispute. Since the business address of the LLF for the winding up of its affairs in New York County, the Local Program is administered by the New York County Lawyers Association. You must also provide former LLF clients with the "Request for Fee Arbitration" form and advise that said former LLF clients must file their Request for Fee Arbitration with the Local Program within 30 days of the receipt of the notice. Thereafter, you will be free to bring a lawsuit in court to seek to obtain payment of the fee.

It is advisable that you send these notices by Registered U.S. Mail and U.S. Mail with a Certificate of Mailing. In this way, you will be able to prove the delivery of the notice by the actual return of the Registered Mail and/or by the presumption of regularity of the delivery of the U.S. Mails.

Please refrain from any further contact with former LLF clients to whom you are sending Part 137 notices. As you well know, any conversations with these parties may become relevant and discoverable in a court proceeding. Additionally, please report to us any information that you may have about former LLF clients seeking to improperly coax potential witnesses. Such information is clearly discoverable.

You may wish to disclose this letter to the former LLF clients so that they have this Law Firm's address if they seek to contact me so as to resolve any outstanding accounts prior to the initiation of a lawsuit in a court of competent jurisdiction.

**Luthmann Law Firm, PLLC – Collections f/b/o creditors including the United States Government**

However, this Law Firm is prepared to proceed with litigation as soon as the 30-day period under Part 137 is complete as per your request, given the interests of the United States Government as creditors.  If former LLF clients wish to quickly and discreetly resolve their accounts, they may do so by calling this Law Firm.  My direct line is 401-255-8201.  Otherwise, you have directed us to proceed to judgment in these cases to satisfy the interests of the United States Government.

If you have any questions or concerns, please do not hesitate to contact me.

Regards,
ALMAGNO LAW, INC.

/s/ Lawrence P. Almagno Jr.
Lawrence P. Almagno Jr.

LPA/lc

CC:   File

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| *Plaintiff* | ) | Civil Action No. 2:22-cr-0021-SPC-NPM |
| v. RICHARD LUTHMANN | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

CHRISTOPHER AMBROSE, OF MADISON, CONNECTICUT

To: _____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: ALL MATERIALS, COMMUNCIATIONS, COMPLAINTS, AND/OR RECORDS WITHOUT LIMITATION RELATED TO RICHARD LUTHMANN FROM 10/1/2022 TO PRESENT INCLUDING ALL "WRITINGS," " RECORDINGS," AND/OR "PHOTOGRAPHS" AS DEFINED UNDER § 1001 OF THE FRE.

| Place: TO RICHARD LUTHMANN AT EMAIL ADDRESS: RICHARD.LUTHMANN@GMAIL.COM | Date and Time: 09/01/2023 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
RICHARD LUTHMANN _____ , who issues or requests this subpoena, are:
RICHARD LUTHMANN, PRO SE, 338 SUGAR PINE LANE, NAPLES, FL 34108; (239) 631-5957;
RICHARD.LUTHMANN@GMAIL.COM

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:22-cr-0021-SPC-NPM |
| RICHARD LUTHMANN | ) |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

RONALD CASTORINA, STATEN ISLAND (RICHMOND COUNTY), NEW YORK

To:

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: ALL MATERIALS, COMMUNCIATIONS, COMPLAINTS, AND/OR RECORDS WITHOUT LIMITATION RELATED TO RICHARD LUTHMANN FROM 10/1/2022 TO PRESENT INCLUDING ALL "WRITINGS," " RECORDINGS," AND/OR "PHOTOGRAPHS" AS DEFINED UNDER § 1001 OF THE FRE.

| Place: TO RICHARD LUTHMANN AT EMAIL ADDRESS: RICHARD.LUTHMANN@GMAIL.COM | Date and Time: 09/01/2023 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
RICHARD LUTHMANN_____, who issues or requests this subpoena, are:
RICHARD LUTHMANN, PRO SE, 338 SUGAR PINE LANE, NAPLES, FL 34108; (239) 631-5957;
RICHARD.LUTHMANN@GMAIL.COM

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:22-cr-0021-SPC-NPM |
| RICHARD LUTHMANN | ) |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

KAMILLAH HANKS, STATEN ISLAND (RICHMOND COUNTY), NEW YORK

To: _____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: ALL MATERIALS, COMMUNCIATIONS, COMPLAINTS, AND/OR RECORDS WITHOUT LIMITATION RELATED TO RICHARD LUTHMANN FROM 10/1/2022 TO PRESENT INCLUDING ALL "WRITINGS," " RECORDINGS," AND/OR "PHOTOGRAPHS" AS DEFINED UNDER § 1001 OF THE FRE.

| Place: TO RICHARD LUTHMANN AT EMAIL ADDRESS: RICHARD.LUTHMANN@GMAIL.COM | Date and Time: 09/01/2023 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ RICHARD LUTHMANN _____, who issues or requests this subpoena, are: RICHARD LUTHMANN, PRO SE, 338 SUGAR PINE LANE, NAPLES, FL 34108; (239) 631-5957; RICHARD.LUTHMANN@GMAIL.COM

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Middle District of Florida ▢

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:22-cr-0021-SPC-NPM |
| RICHARD LUTHMANN | ) |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

### KEVIN BARRY LOVE, STATEN ISLAND (RICHMOND COUNTY), NEW YORK

To:

_____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: ALL MATERIALS, COMMUNCIATIONS, COMPLAINTS, AND/OR RECORDS WITHOUT LIMITATION RELATED TO RICHARD LUTHMANN FROM 10/1/2022 TO PRESENT INCLUDING ALL "WRITINGS," " RECORDINGS," AND/OR "PHOTOGRAPHS" AS DEFINED UNDER § 1001 OF THE FRE.

| Place: TO RICHARD LUTHMANN AT EMAIL ADDRESS: RICHARD.LUTHMANN@GMAIL.COM | Date and Time: 09/01/2023 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
RICHARD LUTHMANN_____, who issues or requests this subpoena, are:
RICHARD LUTHMANN, PRO SE, 338 SUGAR PINE LANE, NAPLES, FL 34108; (239) 631-5957;
RICHARD.LUTHMANN@GMAIL.COM

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:22-cr-0021-SPC-NPM |
| RICHARD LUTHMANN | ) |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

ERIC NELSON, STATEN ISLAND (RICHMOND COUNTY), NEW YORK

To:

_____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: ALL MATERIALS, COMMUNCIATIONS, COMPLAINTS, AND/OR RECORDS WITHOUT LIMITATION RELATED TO RICHARD LUTHMANN FROM 10/1/2022 TO PRESENT INCLUDING ALL "WRITINGS," "RECORDINGS," AND/OR "PHOTOGRAPHS" AS DEFINED UNDER § 1001 OF THE FRE.

| Place: TO RICHARD LUTHMANN AT EMAIL ADDRESS: RICHARD.LUTHMANN@GMAIL.COM | Date and Time: 09/01/2023 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|                CLERK OF COURT |  |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
RICHARD LUTHMANN _____, who issues or requests this subpoena, are:
RICHARD LUTHMANN, PRO SE, 338 SUGAR PINE LANE, NAPLES, FL 34108; (239) 631-5957;
RICHARD.LUTHMANN@GMAIL.COM

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:22-cr-0021-SPC-NPM |
| RICHARD LUTHMANN | ) |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

JOHN TOBACCO, STATEN ISLAND (RICHMOND COUNTY), NEW YORK

To: _____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: ALL MATERIALS, COMMUNCIATIONS, COMPLAINTS, AND/OR RECORDS WITHOUT LIMITATION RELATED TO RICHARD LUTHMANN FROM 10/1/2022 TO PRESENT INCLUDING ALL "WRITINGS," " RECORDINGS," AND/OR "PHOTOGRAPHS" AS DEFINED UNDER § 1001 OF THE FRE.

| Place: TO RICHARD LUTHMANN AT EMAIL ADDRESS: RICHARD.LUTHMANN@GMAIL.COM | Date and Time: 09/01/2023 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
RICHARD LUTHMANN _____, who issues or requests this subpoena, are:
RICHARD LUTHMANN, PRO SE, 338 SUGAR PINE LANE, NAPLES, FL 34108; (239) 631-5957;
RICHARD.LUTHMANN@GMAIL.COM

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).